UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WYE OAK TECHNOLOGY, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 10-1182 (RCL) |
| REPUBLIC OF IRAQ, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is a breach of contract action brought by an American defense contractor, Wye Oak Technology, against the Republic of Iraq. Defendant Iraq moves for partial reconsideration of an opinion issued by Judge Trenga of the Eastern District of Virginia concerning the adequacy of service of process. Def.'s Mot. for Reconsideration, ECF No. 64. Iraq also moves to dismiss the action on grounds of *forum non conveniens*, naming Iraq as the proper forum. Def.'s Mot. to Dismiss, ECF No. 66. The Court denies both motions.

**I.   BACKGROUND[1]**

**A. Factual Background**

In 2004, Wye Oak, an American defense contractor, entered into agreements with the Iraqi Ministry of Defense to buy and sell arms. *Wye Oak Tech., Inc. v. Republic of Iraq*, 2010 WL 2613323, at *1–2 (E.D. Va. June 29, 2010), *aff'd*, 666 F.3d 205 (4th Cir. 2011). Wye Oak undertook a variety of actions in Iraq and the United States to perform its obligations under the

---

[1] The Court summarizes only those facts essential to this opinion. For additional background, see *Wye Oak Tech., Inc. v. Republic of Iraq*, 2010 WL 2613323, at *1–2 (E.D. Va. June 29, 2010), *aff'd*, 666 F.3d 205 (4th Cir. 2011).

contract,[2] and sought payment of roughly $24 million.  *Id.* at *2.  In December 2004, while traveling by car to Baghdad to collect payment on this contract, two Wye Oak personnel including the president of the company, Dale Stoffel, were killed by unidentified gunmen.  *Id.*  Both parties agree that the murders remain unsolved.  Pl.'s Opp'n 4, ECF No. 70; Def.'s Reply 8, ECF No. 71.  Wye Oak refers to the killings as "assassination[s]," and suggests that they were linked to Wye Oak's work as a defense contractor.  Pl.'s Opp'n 4.  Iraq notes that the FBI has not "linked [Dale Stoffel's] death to a known terrorist group or to this contract dispute with the Iraqi government."  Def.'s Reply 8.  The current president of the company is Dale Stoffel's brother, David Stoffel.  He claims to have received death threats following his brother's murder in 2005.  Decl. of David J. Stoffel ¶¶ 5–8 & Exs. 1–3.

Wye Oak continued to perform under the agreements after the murders but claims that it never received payment.  *Wye Oak Tech*, 2010 WL 2613323, at *1–2.

### B. Procedural Background

Wye Oak filed this action in 2009 in the Eastern District of Virginia.  *Id.* at *1.  On October 8, 2009, Wye Oak attempted mail service on Iraq pursuant to 28 U.S.C. § 1608(a)(3) by

---

[2] Judge Trenga described Wye Oak's performance under the agreements as follows:
> Between August 16, 2004 and January 2005, Wye Oak performed under the [agreements] in connection with the repair and refurbishing of several armored battalions and by identifying and arranging for the sale of scrap metal from military equipment.  Beginning in mid-August 2004, Wye Oak, through offices in the United States and employees and subcontractors in the field in Iraq, inventoried depots in Iraq for scrap, evaluated whether the equipment was worth refurbishing, estimated scrap tonnage, and identified potential foreign buyers.  All potential buyer nations were approved by a United States military office.
>
> Wye Oak performed multiple tasks in the United States related to its work in Iraq including accounting, running computer programs for tracking military equipment, meeting with Department of Defense officials regarding coordination of the refurbishment program in light of the reconstruction activities in Iraq, monitoring employees, contacting potential foreign buyers, ensuring that all necessary licenses were up to date, creating spreadsheet systems to ensure that pricing of scrap equipment and salvageable equipment could be compared, creating and making maintenance preparations for an [Iraqi Military Equipment Recovery Project] website, and maintaining and monitoring Wye Oak's United States-based bank accounts.

*Wye Oak Tech.*, 2010 WL 2613323, at *2.

causing the clerk of the court to issue a summons to the "Head of the Ministry of Foreign Affairs" of Iraq, which was delivered, along with a copy of the complaint, to the Iraqi Embassy in Washington, D.C., via FedEx. *Id.* at *4. As no signed receipt was ever returned from this mailing, Wye Oak then commenced service via diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4). This service was made on December 27, 2009. *See* Return of Service, ECF No. 14.

Iraq moved to dismiss arguing, *inter alia*, that Wye Oak "did not satisfy the mandatory service requirements set forth in 28 U.S.C. § 1608(a)." *Id.* at *3. Iraq did not dispute that it was actually served via diplomatic channels. *Id.* at *4. Instead, it argued that Wye Oak never properly attempted mail service under § 1608(a)(3) because it sent the package to the Iraqi embassy in Washington, D.C., rather than to Iraq, and, since the Foreign Sovereign Immunities Act (FSIA) authorizes diplomatic service under 1608(a)(4) *only* where a party has first properly attempted mail service under § 1608(a)(3), the diplomatic service was invalid. *Id.* at *4–5.

Judge Trenga rejected this argument and found that "attempted service through the Embassy [did] not render service ineffective." *Id.* at *5. He reasoned that (1) "Wye Oak was not serving the Embassy itself or personnel within the Embassy, but rather attempting to use the Embassy as a conduit"; (2) Wye Oak reasonably believed that the insecurity in Iraq rendered service of a government official there impossible; and (3) § 1608(a)(3) does not prohibit this method of delivery. *Id.*[3]

## II.   IRAQ'S MOTION FOR RECONSIDERATION IS DENIED

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment . . . ." Fed. R. Civ. P. 54(b). "Interlocutory orders are not subject

---

[3] Judge Trenga also transferred the case to this district. *Id.* at *10. It was reassigned by consent to the undersigned judge from Judge Roberts on April 15, 2013. ECF No. 72.

to the law of the case doctrine and may always be reconsidered prior to final judgment" even when a case is reassigned to a new judge. *Langavine v. Dist. of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997). Courts in this district grant reconsideration "as justice requires." *See Cobell v. Norton,* 355 F. Supp. 2d 531, 539 (D.D.C. 2005).

Iraq's motion to reconsider will be denied. The Court takes no position regarding Judge Trenga's analysis. Even if Judge Trenga's analysis was incorrect and Wye Oak's mail service attempt was invalid, no injustice would result here since Iraq has received adequate process through diplomatic channels.

### III.     IRAQ'S MOTION TO DISMISS BASED ON *FORUM NON CONVENIENS* IS ALSO DENIED

While there is a "*substantial presumption*" in favor of a plaintiff's chosen forum, a court "may nonetheless dismiss a suit for *forum non conveniens* if the defendant shows there is an alternative forum that is both available and adequate and, upon a weighing of public and private interests, the *strongly preferred* location for the litigation." *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 571 (D.C. Cir. 2010) (emphases added). "A court first determines whether there is an adequate alternative forum and, if so, then proceeds to balance both private interest factors and public interest factors in favor of the respective forums." *Jackson v. Am. Univ. in Cairo*, 52 F. App'x 518, 518 (D.C. Cir. 2002).

The Supreme Court has explained that, ordinarily, the requirement of an adequate alternative forum "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, "where the remedy offered by the other forum is clearly unsatisfactory," for example "where the alternative forum does not permit litigation of the subject matter of the dispute," the other forum may not be

4

an adequate alternative. *Id.* Also, "[a]n alternative forum is inadequate if the plaintiff will be 'treated unfairly' there." *MBI Grp.*, 616 F.3d at 571 (quoting *Piper Aircraft*, 454 U.S. at 255).

A court will not force plaintiffs to litigate in a forum where they would face a particularized and "serious risk to their safety." *Doe v. Exxon Mobil Corp.,* 393 F. Supp. 2d 20, 29 (D.D.C. 2005) (rejecting a motion to dismiss for *forum non conveniens* in a case concerning the Indonesia military where plaintiffs showed that they faced "a genuine risk of reprisals" if they litigated in Indonesia); *see also HSBC USA, Inc. v. Prosegur Paraguay, SA*, 2004 WL 2210283, at *3–4  (S.D.N.Y. Sept. 30, 2004) (holding that Paraguay was an inadequate alternative forum because the Paraguayan Government was implicated in the alleged wrongdoing and individuals investigating the case had been murdered); *Cabiri v. Assasie–Gyimah*, 921 F. Supp. 1189 (S.D.N.Y. 1996) (holding that Ghana was an inadequate alternative forum for a former Ghanian Trade Counselor suing a Ghanian security official for alleged torture because plaintiff would be put in "grave danger" if forced to litigate there); *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854 (S.D.N.Y.1983) (Iran was an inadequate alternative forum for an Iranian refugee in part because of risks to his personal safety).  However, mere general indications of dangerous conditions, such as a State Department travel advisory, might not suffice to demonstrate the inadequacy of the forum. *See, e.g.*, *Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1075 (C.D. Cal. 2012); *Ismail v. Am. Univ. of Beirut*, 246 F. Supp. 2d 330, 331 (S.D.N.Y. 2003).

If the alternative forum is adequate, a court should turn to balance the public and private interests laid out by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See MBI Grp.* 616 F.3d at 576. The private interests include "ease of access to sources of proof"; "availability of compulsory process for attendance of unwilling" witnesses; "the cost of obtaining attendance of willing" witnesses; the "possibility of view of premises" by the court and

jury if needed; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508; *see also MBI Grp.* 616 F.3d at 576. "There may also be questions as to the enforcibility of a judgment if one is obtained." *Gilbert*, 330 U.S. at 508. The public interest factors include the "local interest in having localized controversies decided at home"; the possibility of holding the trial in a forum "at home with the law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself"; and avoiding the imposition of jury duty on "people of a community which has no relation to the litigation" and other "administrative difficulties" that flow from foreign litigation congesting local courts. *Id.*; *see also MBI Grp.* 616 F.3d at 576.

### A. Iraq is an Inadequate Forum

Wye Oak cites a U.S. Department of State Travel Warning to show that Iraq is unsafe for U.S. Citizens generally. Pl.'s Opp'n 3 (citing U.S. Department of State Travel Warning for Iraq, Aug. 9, 2012[4]). Wye Oak also identifies evidence of more particularized risks posed to its employees and representatives. It points to the unsolved 2004 murder Dale Stoffel and another Wye Oak employee, which occurred while they were traveling to Baghdad on behalf of the company to collect on the same contract at issue in this case. Pl.'s Opp'n 4–6. Wye Oak also points to death threats current Wye Oak president David Stoffel received following the murder. Pl.'s Opp'n 4–6.

In response, Iraq provides a declaration from an Iraqi lawyer who states that "[t]he Courts in Baghdad have been open without disruption from attacks since late 2003"; that he is not aware of "any instance in which there has been an attack on any litigants or witnesses"; and that, in the court where this case would be filed, "there have been approximately 225–300 hearings a week

---

[4] A more recent travel advisory continues to warn U.S. Citizens "against all but essential travel to Iraq given the security situation." *See* U.S. Department of State Travel Warning for Iraq, Feb. 25, 2013, *available at* http://travel.state.gov/travel/cis_pa_tw/tw/tw_5758.html (last visited Apr. 17, 2013).

during the course of at least the past five years, all without any security incident inside the Courts." See Decl. of Tarik Al Jibori ¶ 6.D, ECF No. 68-2.

Despite this declaration, the Court finds that Wye Oak's particularized evidence regarding the "serious risk to the[] safety" of its employees and representatives in Iraq convincing. *See Exxon Mobil,* 393 F. Supp. 2d at 29.  Iraq is not an adequate alternative forum for this litigation.

### B. In Any Event, The Public and Private Factors Also Weigh Against Dismissal

Because the Court has determined that Iraq is not an adequate alternative forum, it need not proceed to balance the private and public interest factors.  *See Jackson*, 52 F. App'x at 518. Nonetheless, it does so here since the Court finds that only one of these factors weighs in Iraq's favor, and is not enough to overcome the "'substantial presumption' in favor of a plaintiff's chosen forum."  *See MBI Grp.,* 616 F.3d at 571.

#### 1. *Private Interests*

##### i. *Ease of Access to Sources of Proof; Compulsory Process; Cost of Attendance*

Iraq states that it intends to call "important trial witnesses who are in Iraq or only subject to process in Iraq," Def.'s Reply 19 (listing witnesses); that "[c]ompelling trial testimony from Iraqi witnesses . . . is out of the question in this Court," Def.'s Mem. 24; that "[t]rying the case . . . based on depositions or responses to letters rogatory will be unfair and ineffective at ferreting out the truth," *id.*; and that "[e]ven assuming all Iraqi fact witnesses stated that they were willing to attend and testify, self-evidently, the cost of travel and hotel accommodations would run into thousands of dollars for each," *id.* at 25.  Iraq also states that many documents are in Iraq, including official military records which cannot be easily transmitted to the United States. Def.'s Reply 20–21.

In response, Wye Oak insists that the "vast majority" of witnesses that it intends to call are located in the United States or subject to federal courts' subpoena power. *See* Pl.'s Opp'n 13–15 (listing witnesses). It also states that the "records regarding contract formation, contract implementation, and payment issues" that it will "principally rely upon in proving its case" are already in its possession in the United States. *Id.* at 15.

It appears that wherever the litigation occurs, some inconvenience and delay caused will be unavoidable. Because neither side has a clear advantage on this argument, these factors do not weigh in favor of dismissal.

### ii.     *Possibility of View of the Premises*

Iraq speculates that access to "work sites and numerous refurbished vehicles that are in Iraq" *may* be necessary for the case. Def.'s Mem. 25. The Court finds that this claim is too speculative to be credited and that this factor does not weigh in favor of dismissal.

### iii.    *Practical Problems*

Iraq argues that it may need to implead a party in this case which "cannot be done here because personal jurisdiction over [the party] is lacking" but which could be done in Iraqi courts. Def.'s Mem. 26, 4; Def.'s Reply 22. The party is the General Investment Group, based in Beirut Lebanon. Iraq asserts that the present case really arises out of a "payment dispute between [the General Investment Group] and Wye Oak" and thus "[i]mpleading [the Group] is imperative to a full and final adjudication of this dispute among all interested parties." Def.'s Mem. 26. Such difficulties are a proper consideration in *forum non conveniens* motions. *See Piper Aircraft*, 454 U.S. at 259.

Wye Oak does not respond to this claim. Therefore, while the Court does not take a position as to whether the Group is a necessary party, or is not amenable to process here, it finds that this factor weighs somewhat in favor of dismissal.

Iraq also insists that the costs and burdens of translation would be extensive if the case proceeded in this Court, as "[c]ountless . . . relevant documents in the possession of Iraq . . . are in Arabic," "[w]itnesses for Iraq are Arabic speakers," and "the official laws of Iraq also are in Arabic." Def.'s Reply 22. Wye Oak counters by insisting that any translation would be "minimal." Pl.'s Opp'n 17 n.20.

The Court notes that some amount of translation (in both directions) would also likely be necessary if the trial were held in Iraq. Accordingly, this factor does not weigh in favor of dismissal.

   iv.  *Enforcement of Judgment*

Iraq asserts that if Wye Oak obtains a judgment in the United States against Iraq, it would be unable to collect on that judgment by attaching assets belonging to any Iraqi Ministry other than the Ministry of Defense, as they are "separate juridical entities." Def.'s Reply 21. In contrast, any judgment issued by an Iraqi court could be enforced "against immediately reachable assets in Iraq." *Id.*

This is not the first time in this litigation Iraq has asserted this theory—that this suit is properly against only the Ministry of Defense, not Iraq as a whole. In its appeal to the Fourth Circuit, Iraq argued that the district court actually lacked subject matter jurisdiction over the case because the plaintiffs had named only Iraq and their only justiciable claim would be against the Iraqi Ministry of Defense ("IMOD"), a separate legal entity. *See Wye Oak Tech., Inc. v. Republic of Iraq,* 666 F.3d 205 (4th Cir. 2011). The Fourth Circuit rejected this argument,

finding that "it is the FSIA, and not Iraqi law, that provides the framework for determining whether Iraq and IMOD are to be treated a[s] separate legal persons" and that, under that statute, "a foreign state and its armed forces are not legally separate for jurisdictional purposes." *Id.* at 213–14.

The issue here involves attachment, not subject matter jurisdiction. Without deciding the issue, the Court notes that Iraq has provided no basis for why a different result should be reached in an attachment proceeding than the one reached by both Judge Trenga and the Fourth Circuit regarding subject matter jurisdiction. Finding Iraq's arguments lacking in this key respect, the Court finds that this factor does not weigh in favor of dismissal.

### 2. *Public Interests*

#### i. *Local Interest in Resolving Controversy at Home*

Iraq asserts that it has a strong national interest in resolving the controversy at home, since it concerns a contract for work "to bring security to its people prior to the 2005 election." Def.'s Reply 24. Wye Oak argues that there is a national interest in the work performed under the contract, which "continues to be of critical importance to the United States foreign policy." Pl.'s Opp'n 18. The Court finds these interests are evenly matched and that this factor does not weigh in favor of dismissal.

#### ii. *Difficulty of Applying Foreign Law*

Iraq asserts that the case will require the application of Iraqi law to "numerous and complex issues." Def.'s Reply. 24; *see also* Def.'s Mem. 29–31 (listing issues). Wye Oak notes that foreign law is "routinely applied" in this jurisdiction, and are quite capable of doing so. Pl.'s Opp'n 20. The Court agrees with Wye Oak and finds that this factor does not weigh in favor of dismissal.

### iii.  *Jury Duty*

The parties agree that Wye Oak would not be entitled to a jury trial in this Court under the FSIA, so this factor does not figure into the *forum non conveniens* decision.  Def.'s Mem. 27; Pl.'s Opp'n 18.

### iv.  *Administrative Difficulties*

Iraq asserts that "[t]he civil courts of Iraq are no more congested than federal courts in the United States."  Def.'s Mem. 27.  Moreover, Iraq argues that if the case proceeds here, additional delays "can be expected as a result of the slow and inefficient means of taking foreign discovery through letters rogatory."  *Id.*

Wye Oak counters by arguing that this foreign discovery process would only have to be used to recover few, if any, documents in the case.  Pl.'s Opp'n 16.

The Court finds that this factor does not weigh in favor of dismissal.

### v.  *Additional "Policy" Concern*

Iraq also alleges that Wye Oak, a Pennsylvania corporation, decided to sue Iraq in the Eastern District of Virginia can "only be explained by Wye Oak's desire to proceed in the 'Rocket Docket'"—in other words, the decision had nothing to do with convenience, and everything to do with an intention to "'vex,' harass,' or 'oppress' the defendant."  Def.'s Mem. 31 (quoting *Gilbert*, 330 U.S. at 508.).  Wye Oak counters that it sued in that district because the Pentagon is located there.  Pl.'s Opp'n 12 & n.13.  The Court finds that Iraq's allegations of litigation harassment are inadequately supported, and that this factor does not weigh in favor of dismissal.

### 3. Analysis

Weighing the public and private interests together, the Court finds that only a single factor weighs in favor of dismissal: the potential need to implead a party. However, as Iraq will be able to proceed with its defense theory without this party's presence, the Court finds that this factor alone does not outweigh the "substantial presumption" in favor of Wye Oak's choice of forum. *MBI Grp.*, 616 F.3d at 571. Accordingly, the Court will not dismiss the case.

## IV.   CONCLUSION

Both of Iraq's motions are denied. An order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on April 23, 2013.