# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WYE OAK TECHNOLOGY, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 10-1182 (RCL) |
| REPUBLIC OF IRAQ, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Wye Oak Technology, Inc. brings suit against the Republic of Iraq for breach of contract. Compl. at 12–13, ECF No. 1. The agreement at issue was executed between Wye Oak and the Iraqi Ministry of Defense (the "Ministry"). Broker Services Agreement at 1, ECF No. 1-2. Jurisdiction in this Court is premised on the Foreign Sovereign Immunities Act ("FSIA"), specifically § 1605(a)(2), the "commercial activity" exception to foreign sovereign immunity, which is triggered by a suit based on commercial activities of a foreign state that are carried on in this country or have "direct effect" in this country. 28 U.S.C. §§ 1330(a), 1605(a)(2). Today, Wye Oak seeks partial judgment on the pleadings on a narrow question: May Iraq be held liable for the alleged breach of the agreement, despite the fact that the signatory to that agreement is the Ministry? Put somewhat differently, the Court must determine whether the Ministry's liability for breach, if any, can be attributed to Iraq.

For the following reasons and after consideration of the parties' briefing and the relevant legal standards, the Court concludes that Wye Oak has not established its entitlement to a partial

judgment on the pleadings with respect to the attribution of liability between the Ministry and Iraq. Wye Oak's motion is **DENIED**.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The motion should be granted "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (internal citation and quotation marks omitted). A court reviewing a Rule 12(c) motion should "accept as true the allegations in the opponent's pleadings and accord the benefit of all reasonable inferences to the non-moving party." *Id.* (internal citation and quotation marks omitted).

## III. LEGAL STANDARD AND DISCUSSION

The FSIA provides federal courts with original jurisdiction over suits against foreign states when the statute's requirements are met. 28 U.S.C. § 1330. The Supreme Court has held, however, that the FSIA does not "affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983) ("*Bancec*"). This conclusion is rooted in the statute's provision that a foreign state against which suit is brought under the FSIA "shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Thus, "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *Bancec*, 462 U.S. at 622 n.11.

2

A wrinkle in this general rule that state substantive law governs FSIA claims arises in the context of attribution of liability among state entities with separate juridical status. The Court observed in *Bancec* that the FSIA is silent "concerning the rule governing the attribution of liability *among* entities of a foreign state." *Id.* (emphasis in original). The Court was considering whether a juridical entity separate from Cuba under Cuban law could be held liable for actions taken by the state. *Id.* at 621–22. After concluding that the FSIA did not govern the matter, the Court held that "principles . . . common to both international law and federal common law" should be applied to determine the instrumentality's liability for the state's actions. *Id.* at 621, 623. Thus, under FSIA causes of action arising out of state substantive law, federal courts apply federal common law to the attribution of liability among state entities. Courts of appeals, including that of this circuit, have interpreted the Court's opinion in *Bancec* similarly. *See, e.g., GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 814 (D.C. Cir. 2012) ("*Bancec* addressed the liability of a foreign, state-owned firm for the acts of its sovereign parent."); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) (describing *Bancec* as "ask[ing] when a state instrumentality can be treated like its state for 'the attribution of liability'").

Under *Bancec*, "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Bancec*, 462 U.S. at 626–28 (describing this as a "presumption" of respect for separate legal status). This presumption may be triggered by an "unequivocal statement in [an entity's] enabling law establishing its independent juridical identity." *DRC, Inc. v. Republic of Honduras*, ---F. Supp. 3d---, Civil Action No. 10-0003, 2014 WL 5390182, at *7 (D.D.C. Oct. 23, 2014); *see also Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed'n*, 361 F.3d 676, 686 (2d Cir. 2004)

3

(holding that, under Russian law, the Russian Government was not a separate party from the Russian Federation, in part, because the Federation had not shown that the "Government is a separate juridical entity that can sue and be sued in Russian courts . . . for any legal obligations"). In this case, the Court holds that the Ministry and Iraq are separate juridical entities as a matter of Iraqi law. According to expert opinion provided to the Court, the Law of Executive Authority (Law Number 50 of 1964) establishes the "legal structure of the State of Iraq and the Ministries of the Government of Iraq." Dr. Ali Kadhum Aziz Decl. ¶ 9, ECF No. 103-1. That law states, in paragraph two, article one, that "[t]he Cabinet and each Ministry of the Ministries has a legal personality to exercise the rights stipulated in the Civil Code and other Laws and each of them shall be regarded as the meaning of the word 'Government.'" Dr. Aziz Decl., Ex. 1 at 17, ECF No. 103-1. The Civil Code at Article 47 states that "juristic persons" include the State—i.e., Iraq—and the "administrations and the public institutions which by virtue of the law are granted a juristic personality independent of the State's personality in accordance with the conditions laid down herein." 1 *Law in Iraq: A Document Companion* 267 (Chibli Mallat & Hiram Chodosh eds., 2012). Article 48 of the Civil Code sets forth the rights of juristic persons, including that each such person has its own patrimonium[1] and the right of litigation. *Id.* at 268. These provisions demonstrate to the Court that the Ministry is a separate juridical entity from Iraq, by operation of the Law of Executive Authority, and that this law further sets out that the Ministry has the right to exercise rights accruing to juridical persons under the Civil Code. Civil Code Article 47 confirms the effect of the Law of Executive Authority—it states that juridical persons include "public institutions which by virtue of the law [i.e. the Law of Executive Authority] are granted a juristic personality independent of the State's personality."

---

[1] Black's Law Dictionary defines patrimony—identified as a synonym of patrimonium—as, within civil law systems, "All of a person's assets and liabilities that are capable of monetary valuation and subject to execution for a creditor's benefit." *Black's Law Dictionary* 1242 (9th ed. 2011).

The Court's understanding of these provisions and their legal effect aligns with the interpretation of Iraqi law by the International Court of Arbitration of the International Chamber of Commerce in *Greek Powder and Cartridge Co. S.A. (Greece) v. the Ministry of Defence (Iraq)*, the only judicial or arbitral authority presented to the Court interpreting the juridical status of Iraqi Ministries as a matter of Iraqi law. *See* Case No. 7094/CK/AER/ACS at 31, ECF No. 103-2 ("The Arbitral Tribunal consequently cannot accept Pyrkal's contention that under Iraqi laws the Ministry of Defence and the State are the same legal person."). It also comports with expert opinions submitted to the Court. Dr. Aziz Decl. ¶ 13.B ("The State of Iraq is not responsible or liable for the contractual acts of the Ministry of Defense with respect to the alleged contract between Wye Oak and the Ministry of Defense, nor for any other Ministries, due to the fact that the State of Iraq is a separate juridical entity in accordance with Iraqi laws . . . ."). Thus, the Ministry is presumed to be a legally separate entity from Iraq for purposes of determining liability in this case.

The separate status accorded by the foreign state's own laws is not the last word on the matter however. The presumption of separate status—and therefore the presumption of non-attribution of liability—will yield "if a foreign 'corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created' . . . or when 'broader equitable principle[s]' dictate that separate treatment 'would work fraud or injustice.'" *GSS Grp. Ltd.*, 680 F.3d at 814 (quoting *Bancec*, 462 U.S. at 629). In general, the test for determining when the presumption of separateness will give way is not a "mechanical formula;" instead, it involves an "equitable" determination in light of the facts presented by the particular case. *See Bancec*, 462 U.S. at 632–34.

5

Under the agency exception described above, a sovereign may assert "complete domination of the subsidiary" such that the entities are not distinct in reality, but instead act as one. *DRC, Inc.*, 2014 WL 5390182, at *9 (quoting *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000)). The exception can also be met when the sovereign exercises sufficient control over the other entity to allow it to be held liable under ordinary principles of agency law. *Id.* (quoting *Transamerica Leasing, Inc.*, 200 F.3d at 849). As to the exception for instances of fraud or injustice, circumstances that might warrant a disregard for the separate juridical status of an entity include, for example, instances where the "foreign sovereign intentionally seeks to gain a benefit while using the legally separate status of its instrumentality as a shield to guard against concomitant costs or risks;" situations where the "sovereign otherwise unjustly enriches itself through the instrumentality;" or cases where the "instrumentality has been cloaked with the apparent authority of the sovereign, and the complaining party reasonably relies upon that manifestation of authority." *Id.* at *12 (citing *Transamerica Leasing, Inc.*, 200 F.3d at 850, 854 and *Bancec*, 462 U.S. at 630–33).

In its answer to Wye Oak's complaint, Iraq has stated that the agreement underlying this suit was made between Wye Oak and the Ministry, that the Ministry is a separate juridical entity, and that it has separate assets to satisfy judgments entered against it. Answer at 1, ECF No. 78. The Court must, on a motion for judgment on the pleadings, accept as true all facts pled by the non-moving party and make all reasonable inferences favorable to the non-movant. *Stewart*, 275 F.3d at 1132. Given that the *Bancec* test for overcoming the presumption of juridical separateness is necessarily fact-dependent, the Court cannot make the determination that the presumption should yield in this case solely on the face of the pleadings. *See* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1367 (3d ed. 2004) ("The motion for a judgment

on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court."). The matter is more appropriately addressed upon a factual record—at summary judgment or trial.

## IV. CONCLUSION

The Court concludes that Wye Oak is not entitled to partial judgment on the pleadings because it has failed to demonstrate, at this stage of proceedings, that the Ministry's liability for its alleged breach of contract can be attributed to Iraq. Wye Oak's motion is denied.

An Order consistent with this Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on November 5, 2014.