IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Wye Oak Technology, Inc., | ) | Civil Action |
| | ) | No. 10-cv-1182 |
| Plaintiff, | ) | |
| | ) | MOTIONS HEARING |
| vs. | ) | |
| | ) | Washington, DC |
| Republic of Iraq, | ) | September 13, 2017 |
| | ) | Time:  11:00 a.m. |
| Defendant. | ) | |

_____

TRANSCRIPT OF MOTIONS HEARING
HELD BEFORE
THE HONORABLE JUDGE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

_____

A P P E A R A N C E S

For the Plaintiff:        **Charles Allen Foster**
                          WHITEFORD TAYLOR & PRESTON LLP
                          1025 Connecticut Avenue, Suite 400
                          Washington, DC 20036
                          (202) 689-3153
                          Email: Cafoster@wtplaw.com
                          **John Harvey Quinn, Jr.**
                          QUINN RACUSIN & GAZZOLA CHARTERED
                          910 17th Street, NW
                          Suite 200
                          Washington, DC 20006-2603
                          (202) 842-9300
                          Email: Jhq@qrglawfirm.com
                          **John J. Pavich**
                          PAVICH LAW GROUP, P.C.
                          20 S. Clark Street
                          Suite 700
                          Chicago, IL 60603
                          (312) 782-8500
                          Email: Jpavich@pavichlawgroup.com
                          **Adrian Snead**
                          WHITEFORD TAYLOR PRESTON
                          Associate Counsel
                          1800 M Street, NW
                          Suite 450N
                          Washington, DC 20036
                          Phone: (202)659-6771
                          Email: Asnead@wtplaw.com

1      For the Defendant:      No appearance

2      Also appearing:         **Timothy B. Mills**
                               MAGGS & MCDERMOTT LLC
3                              910 17th Street, NW
                               Suite 800
4                              Washington, DC 20006
                               (202) 457-8090
5                              Email: Timothybmills@aol.com

6      _____

       Court Reporter:         Janice E. Dickman, RMR, CRR
7                              Official Court Reporter
                               United States Courthouse, Room 6523
8                              333 Constitution Avenue, NW
                               Washington, DC  20001
9                              202-354-3267

10                                *   *   *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Good morning.  We have

2     civil action 10-1182, Wye Oak Technology, Inc., versus the

3     Republic of Iraq.  If counsel will please approach the

4     lectern and identify yourselves for the record.

5          MR. FOSTER:  Good morning, Your Honor, Allen

6     Foster for the plaintiff.  Also, John Quinn, Robert Pavich,

7     and Adrian Snead.  And I would like to introduce to the

8     Court Alexander Tepper, who is a law student at the

9     University of Heidelberg and he's with us for a month this

10    summer.  We guaranteed him he was going to see American

11    justice.

12         THE COURT:  Good.  Glad to have you, Mr. Tepper.

13         Mr. Mills, I take it, is in the audience.  If Mr.

14    Mills would come forward.

15         I take it you've delivered a copy to the

16    plaintiffs of the letter you just dropped by chambers?

17         MR. MILLS:  That is correct, Your Honor.  Good

18    morning.

19         THE COURT:  Good morning.  I'm delighted to see

20    you here and delighted to have the letter from the

21    Ambassador.  Could you come up to the podium and tell me a

22    little more about how you were able to do this?

23         And I will say up front, to both sides, the Court

24    always prefers reaching the merits of the case and not going

25    by default.  So I'm still hopeful that can happen in this

1     case, and I'm hopeful, in light of the Ambassador's letter,

2     that that's going to be possible in this case.  I never want

3     to end up, as I have in so many cases with Iran, with

4     getting to the posture of having to go by default.

5            The Courts always prefer to resolve cases on the

6     merits, and that's the way Courts would prefer to do, with

7     both parties before the Court and both parties -- reaching

8     the merits of the case and the Court deciding, based on the

9     facts and the law, what really happened in the case.  And

10    that's what I hope we can do here.

11           I have no interest in this going by default, but I

12    also have no interest in letting one party dictate, as what

13    appeared to be happening here, to the other one.  That party

14    is refusing to appear before me and not even paying counsel,

15    so I finally had to let counsel out.  Tell me a little more

16    about whatever you can.

17           MR. MILLS:  Yes, Your Honor.  Without getting into

18    any privileged communications, I'll be happy to.

19           First, I want to assure Your Honor that this

20    matter -- meaning this action and Your Honor's orders in

21    this action -- have reached the highest level.  They've been

22    escalated to the Minister of Justice himself, also to the

23    Prime Minister's office, to a deputy within that office.

24    And that escalation --

25           THE COURT:  In the Russia case, I made it all the

1   way to Mr. Putin.  Because one of the values of my whole

2   career has been Mr. Putin had a press conference and said he

3   didn't have to obey some cowboy judge in America.  And that

4   is one of the highlights of my life, actually, to have the

5   Prime Minister of Russia calling me some cowboy judge from

6   America.

7          So, I have taken that as a great compliment.  I

8   shouldn't say that, I guess, on the record, but I have

9   always taken that as a great compliment.  But I didn't have

10  any great desire to get into that posture with the Premier

11  of Russia, but I do know I got his attention.

12         MR. MILLS:  Yes.  And I have represented Iraq in

13  litigation in the United States since 2004.  And only

14  following the ISIS crisis have we had any problems with

15  fulfilling Iraq's obligations to the courts, the various

16  courts.

17         THE COURT:  And I understood for an extended

18  period there that was a real crisis in Iraq's ability to

19  deal with anything.

20         MR. MILLS:  That correct, Your Honor.  While that

21  crisis has abated a little bit, there's been a lot of

22  turmoil in staffing at the Ministry of Justice.  There's

23  been two director generals of the legal department in the

24  last three months.  The new director general of the legal

25  department is just getting his feet on the ground and, you

1     might say, getting his toes wet in international litigation,

2     particularly U.S. litigation, for which he has no experience.

3             However, when we received Your Honor's order and

4     we were asked by Your Honor to communicate the transcript in

5     the order, we did.  And we emphasized, of course, as we

6     always do, the need to respond and respect the Court.  And

7     this is how it escalated up and this is how the Ambassador

8     was instructed to provide a letter to you.

9             Every representation in that letter, to my

10    knowledge, is absolutely accurate and absolutely in good

11    faith.  The Iraq and the Ministry of Defense wish to

12    litigate this case.  They wish to litigate this case, they

13    understand, in this court, and not in an Iraqi court.  They

14    have already taken steps to cancel the hearing on the 17th.

15    The reason it says cancel -- taking all steps necessary to

16    cancel is because that letter was issued in the evening,

17    Baghdad time, and they have to take some steps today and

18    tomorrow.  Since it involves an Iraqi court, just as, you

19    know, if we vacate a date -- we, lawyers, don't vacate

20    anything, Your Honor does.

21            They've also told me that -- and this isn't

22    privileged because it's in the letter -- but that within

23    three weeks they will complete the arrangements for engaging

24    counsel, whether that's myself or whether that's somebody

25    else, to appear in this action to represent their interests.

1    And they're committed to fulfilling their obligations to the

2    Court, including responses to plaintiff's discovery

3    requests, propounding discovery requests, going through the

4    normal litigation process.  And because the attention is at

5    the highest levels, I feel comfortable representing to the

6    Court that these are -- these are accurate representations.

7         THE COURT:  Thank you very much, Mr. Mills.  And I

8    hope you'll transmit to the Iraqi government how delighted I

9    am with that approach.  I'm not delighted with what's gone

10   on for this extended period or with what their Court had

11   done, but I'm certainly delighted with that approach.

12        MR. MILLS:  And if I might, Your Honor, Mr.

13   Foster, in the hearing last week, made an absolutely

14   accurate representation of my knowledge of this proceeding

15   in Iraq, which is to say when my colleague called me in late

16   August and said what do you know about this? and he said he

17   had some papers, I said, "Mr. Foster" -- actually, because

18   we were partners together at Patton, Boggs, I said, "Allen,

19   I only know what you're telling me.  I'm sorry, I don't know

20   anything more."

21        But, I really only know at this point about that

22   action, that they will withdraw it.  That's the extent of my

23   knowledge.

24        THE COURT:  Okay.  Thank you very much, Mr. Mills.

25        Mr. Foster, you may not be as delighted as I am,

1    but, nevertheless.

2              MR. FOSTER:  Well, Your Honor, as my father used

3    to say, "As the old maid said, I love the rumor."  So, we

4    have yet another representation from Iraq.  But with all

5    respect to Mr. Mills, and as he says, we go back a long time

6    together, on -- in May of 2016 they made the same

7    representations.

8              THE COURT:  I recall.

9              MR. FOSTER:  And in June of 2016 they made the

10   same representations, including the representation you've

11   heard this morning, that there had been turmoil, that there

12   was a new director of the legal department who was just

13   getting his feet wet and just learning about litigation in

14   American courts.  This is one and the same.  Your order --

15   Your Honor ordered them to appear or you were going to enter

16   a default.  They haven't appeared.

17             But more important, in May of 2016 Your Honor

18   ordered them, number one, to hire counsel, and, number two,

19   to begin discovery by the 13th day of May in 2016.  They've

20   done neither.  They have a lot of status reports.  They told

21   us over a year ago that they had 59 pages of documents that

22   were -- that could be responsive to our discovery request

23   and they were being translated.  Well, it doesn't take 16

24   months to translate 59 pages of documents.

25             They've blatantly violated Your Honor's order.

1    We, of course, will be asking for sanctions, regardless of

2    what goes forward with regard to the merits of this case.

3    But, they've blatantly ignored the Court's orders and we

4    honestly don't think that now is the time to cut them some

5    slack, Your Honor.  They -- I think we will see -- in fact,

6    I'm confident we will see that if they appear, that it will

7    be more delay, more excuses, and we won't have even the 59

8    pages that have been in existence for 16 months, we won't

9    even have those.

10          We would ask, Your Honor, number one, to enter the

11   anti-suit injunction because what the Lord giveth, the Lord

12   can also taketh away.  And we're not going to be comfortable

13   unless we know that there is an order in place that Iraq

14   cannot reinstitute some procedure in Iraq that tries to end-

15   run procedures in this Court.  So we need that for -- to go

16   forward at all.

17          Secondly, as I say, we are going to file a motion

18   for sanctions.  It will be, you know, a few weeks, but we'll

19   get that done.  But insofar as their going forward

20   representation, if they ever have it, we believe that in the

21   absence of Your Honor making some strong, strong rules, that

22   we're going to be back before Your Honor in two or three or

23   four weeks or five weeks and saying here we are again, Your

24   Honor, what are we going to do now?

25          I don't believe they have any intention of

1    responding.  They certainly have demonstrated that they have

2    no intention of responding or respecting this Court's

3    orders.  And we think that something needs to be done about

4    today, rather than giving them yet another opportunity to do

5    that which they have demonstrated they have no intention of

6    doing.

7           For the purpose of the record, Your Honor, we

8    filed a couple of affidavits in support of our motion,

9    particularly the anti-suit injunction.  Mr. David Stoffel is

10   here in the courtroom.  He would like the opportunity to

11   affirm his affidavit, that it is his testimony, for the

12   purposes of the record, and answer any questions that Your

13   Honor might have, as well.  So if we could do that.

14           THE COURT:  That's fine.

15           MR. FOSTER:  If that would be all right.

16           Could we call Mr. David Stoffel, please.  David.

17           The clerk will administer the oath to you.

18                      DAVID STOFFEL,

19   was called as a witness and, having been first duly sworn,

20   was examined and testified as follows:

21                    DIRECT EXAMINATION

22   BY MR. FOSTER:

23   Q.  Now, you're Dave Stoffel?

24   A.  Stoffel.

25   Q.  Stoffel, sorry.  And you're the president of Wye Oak

1    Technology since your bother was assassinated?

2    A.  That's correct.

3    Q.  And you've prepared and we filed an affidavit from you

4    with regard to certain facts in this case?

5    A.  Yes.

6    Q.  And do you adopt that affidavit as your testimony in

7    this case today?

8    A.  Yes, I do.

9          MR. FOSTER:  Please answer any questions the judge

10   might have for you, Mr. Stoffel.

11         THE COURT:  I don't have any questions.  I read

12   your affidavit carefully.  Thank you very much for coming.

13         THE WITNESS:  Thank you.

14         MR. FOSTER:  Nothing further on that score, Your

15   Honor.  We would appreciate -- I would appreciate -- Mr.

16   Pavich has a very short presentation that he would like to

17   make which is in support of the statement that I made

18   earlier, that we would ask Your Honor to do something very

19   definite today.

20         MR. PAVICH:  Thank you, Your Honor.  Fortunately

21   or unfortunately, I have a much greater history in this case

22   than my colleague Allen Foster.  I appreciate very much, as

23   the Court does, Mr. Mills' efforts today.  But I have to, I

24   think, at least bring to the Court's attention what we will

25   be presenting at some point, and that is that despite Mr.

1     Mills' efforts today, we have still very grave reservations

2     about whether Iraq is going to participate in good faith in

3     this case.

4          We will be pointing out to the Court a history in

5     this case from its beginnings in Virginia, through a

6     mediation, through work that was done in New York on a

7     similar case where this case was referenced, where it was

8     clear that Mr. Mills, again, was entreating Iraq, in 2012,

9     to get production of discovery, if not in the New York case,

10    it would come back and haunt them in the Wye Oak case.

11         In the mediation that we had in 2010, a serious

12    proposal was made by us.  Mr. Mills went to Iraq on a number

13    of times to review that.  It's inconceivable to us that they

14    would not have reviewed documents when he was there to

15    respond to that.  I'm not criticizing Mr. Mills, but I'm

16    explaining to the Court why we still have very grave

17    reservations about whether Iraq, from the very beginning in

18    this case, was proceeding in good faith.  And we'll be

19    detailing that in much more detail in support of our motion

20    for sanctions.

21         We appreciate Mr. Mills' efforts, but it seems

22    like it's all more of the same.  His client has been acting

23    not in good faith from the very beginning of this case, and

24    even today's effort by Mr. Mills', who's no longer counsel,

25    is simply an effort again, by Iraq, as it has been made in

1    the past by other cases, to attempt to appease the Court by

2    filing a document that may not technically be proper.  But

3    we all understand at this point, apparently, Iraq is now

4    paying attention to the case.  We, however, have grave

5    reservations about whether they will participate in good

6    faith.  And we will be filing, as Mr. Foster said, a motion

7    to that extent.

8              THE COURT:  I think what I tried to make clear at

9    the last hearing and what I tried to make clear today is for

10   Mr. Mills to transmit to the hierarchy, and I'm sure that he

11   has transmitted, and the reason I referred to the Russian

12   case was I don't play around.  So that to the extent that

13   Iraq has a misimpression of what I'm doing today, they

14   should not have it.

15             MR. PAVICH:  Your Honor, we --

16             THE COURT:  Because I intend to reach a decision

17   in this case based on the facts and the law.  And if Iraq

18   does not have that intention, they are going to have a rude

19   awakening because we are going to get to the bottom of this

20   case and get to a decision in this case and I'm not going to

21   wait for Iraq's response indefinitely, as I have so far.

22             I think the time has come for them to produce the

23   documents and to respond to the discovery.  And I'm hoping

24   on October 4th that counsel will enter their appearance,

25   either Mr. Mills or whoever, so that I can set deadlines and

1     enforce them.

2          And I'm not going to enter the default today, but

3     the time is approaching.  And I have tried to make clear

4     that in the Russia case I did go ahead with the default and

5     enter the judgment.  And I know that they're sometimes

6     difficult, that's why I gave the notice to the United States.

7     The United States indicated they do want to look at the

8     expression of interest, and I probably will give them an

9     opportunity to express their own views to Iraq.

10         MR. PAVICH:  Absolutely, Your Honor, in light of

11    the fact that we've now received a letter from the Embassy.

12         Your Honor, we did pay close attention, of course,

13    to the Russian case and we will supply, with our motion for

14    sanctions -- our position is the circumstances here, and we

15    will develop that, are more egregious, Your Honor, more

16    egregious than what you were dealt with -- what you dealt

17    with.  A default motion at some point may be of some

18    assistance to us, but we've been so prejudiced by the delay,

19    that I think we are constrained to also file a motion for

20    sanctions.

21         THE COURT:  Okay.  I'm going to fiat in the letter

22    from the Ambassador and ask Mr. Mills to transmit to the

23    Ambassador, and the Ministry, as well, the appreciation of

24    the Court for their response.  I'm going to await the

25    October 4th entry of appearance.  But I am going to set a

1   hearing for 9:30 on October 6th.  I will be out of town on

2   the 5th.

3           Are plaintiffs available October 6th at 9:30?

4           MR. FOSTER:  Yes, Your Honor.

5           THE COURT:  I have a trial starting at 10 that

6   day, so I'll set this for 9:30.  If lead counsel has not

7   entered their appearance, we'll see where we are then.  But

8   hopefully Iraq will comply with the Ambassador's

9   representations here and Mr. Mills will appear, or their new

10  counsel will appear on October 4th, and then October 6th

11  we'll be where and we'll talk about what we're going to do

12  next.

13          Anything else the plaintiffs want to do?  I'm not

14  ready to enter any other order today, other than that.

15          Anything else the plaintiffs want me to do today?

16          MR. FOSTER:  No, sir.  Thank you.

17          THE COURT:  Thanks very much, Counsel.

18          MR. FOSTER:  Thank you, sir.

19          MR. MILLS:  Thank you, Your Honor.

20                    *   *   *

21

22

23

24

25

1        CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4          I, JANICE DICKMAN, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of

6     my stenograph notes and is a full, true and complete

7     transcript of the proceedings to the best of my ability.

8                    Dated this 14th day of September, 2017.

9

10

11                    /s/_____

12                    Janice E. Dickman, CRR, RMR
                       Official Court Reporter
13                    Room 6523
                       333 Constitution Avenue NW
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25