**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| WYE OAK TECHNOLOGY, INC. | ) |
|  | ) |
| **Plaintiff** | ) |
|  | )   **Civil No. 10-cv-1182 (RCL)** |
| **v.** | ) |
|  | ) |
| THE REPUBLIC OF IRAQ, et al., | ) |
|  | ) |
| **Defendants.** | ) |

_____)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS FOR DEFENDANTS' FAILURE TO PRODUCE 30(B)(6) WITNESSES FOR DEPOSITION

Plaintiff Wye Oak Technology, Inc. ("Wye Oak") respectfully submits this memorandum of points and authorities in support of its motion for discovery sanctions against Defendants Republic of Iraq ("The Republic" or "Iraq") and Ministry of Defense of the Republic of Iraq ("MOD").  Both parties were properly noticed for depositions pursuant to Federal Rule of Civil Procedure 30(b)(6).  Neither party appeared at its deposition nor timely filed a motion for protective order.  As a result, pursuant to Federal Rules of Civil Procedure 37(d)(1)(A)(i) and 37(d)(3), sanctions should be imposed against both Defendants and the Court should order Defendants to pay attorney's fees.  Specifically, the Court should also deem as admitted the following facts: (1) Wye Oak was owed the sum of $24,714,697.15 in October of 2004, at least some of which would be sent to the United States; (2) Iraq breached the contract by failing to pay that sum to Wye Oak; (3) the Broker Services Agreement and the First Amendment to the Broker Services Agreement (collectively "Agreement") were properly executed and constitute a valid contract under Iraqi law; (4) the August 16, 2004 document appointing Wye Oak as the "sole and exclusive agent" for the Ministry of Defense was properly executed by Bruska N. Shaways, then-

Secretary General of the Iraqi Ministry of Defense and is binding; (5) Mr. Raymond Zayna was Iraq's agent, not Wye Oak's; (6) Wye Oak was Iraq's agent pursuant to the terms in the Broker Services Agreement and its amendment; (7) Iraq did not ban the sale of scrap or, if it did, such a ban did not apply to the government and its agents such as Wye Oak; (8) Iraq had significant quantities of scrap available for sale; (9) Wye Oak would have successfully brokered sales for this scrap but for Iraq's breach; (10) Wye Oak would have performed the contract but for Iraq's breach; and (11) funds Wye Oak received from performance of the Agreement would be held in Wye Oak's bank accounts in the United States.

## **BACKGROUND**

## I.    **THE CONTRACT AND DEFENDANTS' BREACH.**

This case arises out of Iraq's breach of its contract with Wye Oak.  In August 2004, in the aftermath of the war in Iraq and as part of Iraq's reconstruction, Defendants and Wye Oak entered into a contract whereby Wye Oak would, *inter alia*, be Iraq's sole and exclusive broker for the refurbishment of military equipment and vehicles and the sale of Iraqi military scrap. First Amended Complaint ("FAC"), ECF 122, at ¶¶ 15–17; *see also* ECF 122-3.  On October 19, 2004, the parties executed the First Amendment to the Broker Services Agreement, and added the construction of facilities on Iraqi military bases to Wye Oak's responsibilities.  The purpose of the contract was to quickly, efficiently, and cost-effectively rebuild Iraq's military by first refurbishing an armored battalion and military facilities for that battalion, and to continue the refurbishment of Iraqi military equipment thereafter, using the sale of excess scrap to help fund the government.  The project that was the focus of Wye Oak's contract was called the Iraqi Military Equipment Refurbishment Project ("IMERP").

The Agreement was executed and IMERP launched just a few months after control of Iraq was returned to the Iraqi government by the Coalition Provisional Authority.  Both Iraqi

Interim Prime Minister Iyad Allawi and Lt. General David Petraeus, the officer who headed the Multi-National Security Transition Command-Iraq ("MNSTC-I"), made the particular program of fielding an armored Iraqi brigade before the January 30, 2005 election a priority.  Because of the importance of the program, Wye Oak began refurbishing Iraqi armor, surveying Iraqi military bases, and did other work pursuant to its contract even before issuing pro forma invoices to the government.

In direct violation of the Agreement, MOD instructed Wye Oak to work through a middle man—Mr. Raymond Zayna, a Lebanese citizen affiliated with a company named GIG s.a.l. ("GIG")—to receive payment pursuant to the contract.  FAC, ECF 122, at ¶ 19.  MOD required Wye Oak to execute a limited power of attorney with the company, which it did on September 28, 2004.  ECF 122-5.  In October 2004, Wye Oak presented its first three pro forma invoices, totaling $24,714,697.15.   This included two invoices for the construction of facilities pursuant to the First Amendment to the Broker Services Agreement.

MOD's requirement of a middle man was not contained anywhere in the contract.  Wye Oak has since concluded that this requirement was part of a scheme of corruption to divert contract funds into the pockets of Iraqi officials and others.  MOD's then-Chief Procurement Officer, Ziad Cattan, was later tried in absentia for corruption and now sits in an Iraqi jail.  *See* Associated Press, "Report: $800 Million in Funds for Iraqi Army Stolen by Former Iraqi Government Officials" (Oct. 22, 2006)[1]; The Baghdad Post, "Amman hands over to Baghdad Ziyad Cattan wanted for embezzlement" charges (May 8, 2017)[2].

---

[1] *Available at* http://www.foxnews.com/story/2006/10/22/report-800-million-in-funds-for-iraqi-army-stolen-by-former-iraqi-government.html.

[2] Available at http://s.thebaghdadpost.com/en/10271.

Despite having not been paid, Wye Oak refurbished approximately 160 vehicles and did other work to prepare Iraqi armor to deploy for a January parade and the January 30, 2005.  Wye Oak repeatedly attempted to secure payment from Iraq or Iraq's Lebanese agent, but Wye Oak was never paid anything by Defendants.  At a meeting convened by MNSTC-I on December 5, 2004, Iraq stated that the money would be paid to Wye Oak.  However, three days later, while traveling to Baghdad from the Taji military base on December 8, 2004 to collect the money due, Wye Oak President Dale Stoffel was murdered and his records were stolen.  Wye Oak was never paid.  Iraq contends that Mr. Zayna's company was hired to complete Wye Oak's work after Mr. Stoffel's murder, in spite of the fact that Defendants never terminated the Agreement.

Iraq's has proffered a number of defenses and claims that it owes no money to Wye Oak:

- Iraq claims that Wye Oak was paid in full for its work when the MOD paid Mr. Zayna on October 24, 2004.  Defendants contend that Mr. Zayna was Wye Oak's "attorney-in-fact" and agent, such that payment to Mr. Zayna discharged the debt. Ex. A, Iraq's R. 26 Disclosure, at 9.

- Iraq claims that the First Amendment was never executed by the parties, so it is not liable for construction work (despite the fact that the invoices Iraq itself says were paid in full included construction work). MOD Ans. to First Amended Complaint ("FAC"), ECF 129, at ¶ 18 (Apr. 29, 2015); Iraq's Ans. to FAC, ECF 139, at ¶ 18 (Aug. 14, 2015).

- Iraq contends that Wye Oak "abandoned" the contract and that it properly paid Mr. Zayna to complete Wye Oak's work (despite the fact it provided no evidence in support of either argument).  MOD Ans. To FAC, ECF 129, at p. 10; Iraq Ans. To FAC, ECF 139, at p. 14.

- Iraq claims that its government prohibited the sale of scrap metal and, therefore, that Wye Oak could not broker scrap sales under its contract (despite the fact that Iraq also contends that one Ministry has no power over another). MOD Ans. To FAC, ECF 129, at p. 10; Iraq Ans. To FAC, ECF 139, at ¶ 28.

- Iraq further claims that, because of the prohibition, no scrap metal was ever sold during the term of Wye Oak's contract.  *See, e.g.*, Iraq Ans. To FAC, ECF No. 139, at 7–8.

- Iraq further contends that Wye Oak never had the resources to complete the work. *See* Ex. A, Iraq's R. 26 Disclosure, at 17.

These defenses are baseless for many reasons, particularly given Iraq's own statements. For example, Iraq contends that payment to Zayna was payment to Wye Oak, but in the same breath caveats that Mr. Zayna was not actually permitted to pay Wye Oak until given further approval by MOD.  *Compare* Ex. D, MOD Resp. to 1st Interrogs., at 11 ("MoD paid the Wye Oak invoices in full by delivering three MoD checks drawn on the MoD account at Rafidain Bank totaling $24,714,697 to Wye Oak on October 20, 2004, through Wye Oak's appointed attorney-in-fact GIG/Raymond Zayna) *with* Ex. A, Iraq's R. 26 Disclosure, at 11–12 ("The deposited funds could be drawn by Wye Oak only upon the fulfilment of certain conditions precedent, including: (1) the approval of the Ministry of Defense for work actually performed. . . .").  Iraq contends that the First Amendment was never signed, at the same time it contends that it paid Wye Oak in full by paying Zayna for construction work included in the first three pro forma invoices, work covered by the First Amendment.  Defendants contend that they, through their agent Wye Oak, were required to obey the orders of the Ministry of Trade, at the same time they contend that the Republic and its constituent Ministries are all separate juridical persons

who have no power at all over one another.  *Compare* Ex. D*, MOD Resp. to 1ˢᵗ Interrogs., at 7 (selling scrap "became impossible and was excused became the Minister/Ministry of Trade, acting in his/its sovereign capacity on behalf of the State of the Republic of Iraq with the full force and effect of Iraqi law, prohibited all sales and exports of scrap metal from Iraq as a matter of sovereign national policy.") *with* Ex. B, Iraq Resp. to 1ˢᵗ Interrogs., at 2 ("Defendant Republic of Iraq is a separate juridical person from 'any [other] governmental arm, instrumentality, unit, quasi-unit, ministry, office, division, administrative unit, or entity, or any [other] military arm, instrumentality, unit, quasi-unit, ministry, office, division, administrative unit, or entity of Iraq' (the 'Other Entities')").  However deficient, these defenses were the proper subject of discovery in this case.

## II.     WYE OAK SERVED DISCOVERY TO OBTAIN INFORMATION REGARDING DEFENDANTS' DEFENSES, AND DEFENDANTS FAILED TO PROVIDE SUFFICIENT INFORMATION.

Beginning in November 2013, Wye Oak served four sets of Requests for Production upon the Republic of Iraq and three sets of Requests for Production upon the Ministry of Defense. Wye Oak also served two sets of interrogatories to each Defendant.  Defendants provided no substantive information related to any of their defenses in their interrogatory answers, and even failed to identify the source of the majority of the statements the Republic of Iraq made in its Rule 26 disclosure.[3]    In all, Wye Oak asked 20 interrogatories to Defendant Republic of Iraq and 20 interrogatories to Defendant MOD.  Wye Oak also served 101 requests for production to Iraq and 95 requests for production to MOD.  Among the various categories of documents and information Wye Oak sought were the following:[4]

---

[3] The Ministry of Defense failed to provide a Rule 26 disclosure at all.

[4] To comply with LCvR 5.2(b), each of the below exhibits are Defendants' answers to Plaintiff's interrogatories and document request, which contain the verbatim discovery requests

- **Documents and correspondence related to negotiations between Wye Oak, MOD, and Iraq related to the Broker Services Agreement or its amendment;**
  - o Interrogatories: Ex. B, 1st Interrog. to Iraq at Nos. 1, 2; Ex. D, 1st Interrog. to MOD at Nos. 1, 2.
  - o RFPs: Ex. F, 1st RFP to Iraq at Nos. 1–4, 11; Ex. J, 5th RFP to Iraq at Nos. 3, 4 5, 8, 9, 15, 16; Ex. K, 1st RFP to MOD at Nos. 1, 2, 3, 4, 11; Ex. N, 4th RFP to MOD at Nos. 3, 4 5, 8, 9, 15, 16.

- **Payments made to Wye Oak, GIG, or any entity related to the Broker Services Agreement or the IMERP program;**
  - o Interrogatories: Ex. B, 1st Interrog. to Iraq at No. 6; Ex. D, 1st Interrog. to MOD at Nos. 6.
  - o RFPs: Ex. F, 1st RFP to Iraq at No. 1; Ex. G, 2nd RFP to Iraq at Nos. 1, 4; Ex. H, 3rd RFP to Iraq at No. 35; Ex. J, 5th RFP to Iraq at Nos. 10, 18; Ex. K, 1st RFP to MOD at No. 24; Ex. L, 2nd RFP to MOD at No. 35; Ex. N, 4th RFP to MOD at Nos. 10, 18.

- **The Republic and MOD's relationship with Mr. Zayna and GIG;**
  - o Interrogatories: Ex. B, 1st Interrog. to Iraq at Nos. 4, 5; Ex. D, 1st Interrog. to MOD at Nos. 3, 4, 5.
  - o RFPs: Ex. F, 1st RFP to Iraq at Nos. 5, 12, 13, 14, 15, 19, 20–24; Ex. H, 3rd RFP to Iraq at Nos. 37; Ex. J, 5th RFP to Iraq at No. 1, 18, 20; Ex. K, 1st

---

as well as verbatim answers.  However, each document is referred to as Plaintiff's request for ease of understanding in the context of the motion.

RFP to MOD at Nos. 12, 13, 14, 15, 18, 19, 20, 21, 22, 23, 25; Ex. L, 2nd

RFP to MOD at No. 37; Ex. N, 4th RFP to MOD at No. 1, 18, 20.

- **The work performed by Wye Oak and the work Defendants claim was completed by GIG;**

  o Interrogatories: Ex. B, 1st Interrog. to Iraq at No. 5; Ex. D, 1st Interrog. to MOD at No. 5.

  o RFPs: Ex. F, 1st RFP to Iraq at Nos. 13, 18, 19; Ex. G, 2nd RFP to Iraq at Nos. 3, 5;  Ex. H, 3rd RFP to Iraq at Nos. 27, 31, 32, 37, 38, 39; Ex. I, 4th RFP to Iraq at Nos. 5, 6, 7, 8; Ex. L, 2nd RFP to MOD at Nos. 27, 31, 32, 37, 38, 39; Ex. M, 3rd RFP to MOD at Nos. 5, 6, 7, 8.

- **Matters related to the sale of scrap and the purported scrap ban;**

  o Interrogatories: Ex. C, 2nd Interrog. to Iraq at Nos. 15, 18, 19, 20; Ex. E, 2nd Interrog. to MOD at Nos. 15, 18, 19, 20.

  o RFPs: Ex. F, 1st RFP to Iraq at No. 13; Ex. H, 3rd RFP to Iraq at No. 17, Ex. I, 4th RFP to Iraq at Nos. 3, 4, 9, 10; Ex. K, 1st RFP to MOD at No. 13; Ex. L, 2nd RFP to MOD at No. 17; Ex. M, 3rd RFP to MOD at Nos. 3, 4, 9, 10).

- **Matters raised by the Republic in its Rule 26 disclosure among others;**

  o Interrogatories: Ex. B, 1st Interrog. to Iraq at No. 12; Ex. D, 1st Interrog. to MOD at No. 12.

  o RFPs: Ex. H, 3rd RFP to Iraq at Nos. 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39;  Ex. L, 2nd RFP to MOD at Nos. 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39.

After more than four years of delays, Defendants finally began producing documents in December 2017.  The Republic of Iraq produced a grand total of five unique documents comprising only six pages of Arabic text.[5]  The Ministry of Defense produced a grand total of 45 pages.  One of those pages was completely blank.  Seventeen pages purported to be translations of Arabic documents.  Of the remaining 27 pages, 10 pages purported to be bank records and receipts.  Only three documents reference Wye Oak.  Only two documents reference Mr. Zayna.  Nine documents relate to GIG—all but one that, if genuine, appear to be documents submitted by GIG to Defendants.

Defendants did not produce their copy of the Broker Services Agreement, their copy of the First Amendment to the Broker Services Agreement, any internal information or communications about the work Wye Oak accomplished, or the work Defendants claim GIG accomplished, and no other documents at all relating to the Wye Oak contract.  Defendants produced no communications from any member of the Iraqi government to Wye Oak, GIG, or any member of MNSTC-I, which was also involved in the project.  Defendants produced no information related to its inventories of scrap at any time during the term of the Wye Oak contract (which Defendants never cancelled and, by its own terms remained in effect until August 2007).  Nor did Defendants produce any military vehicle inventories over the same period, or even photos, press releases, or other documents showing the work Wye Oak accomplished—the same work Defendants claim GIG accomplished.  Defendants claim not to even know how many armored vehicles they possessed between August 2004 and August 2007.

---

[5] The remainder of the Republic of Iraq's production comprised documents provided to Iraq by Wye Oak, including documents provided during a confidential Fourth Circuit mediation, documents Iraq was not allowed to disclose outside of that mediation. *See* 4th Cir. R. 33.

Nor did Iraq produce any invoices from Wye Oak or GIG or any other party.  In short, there is no support for Defendants' defenses or claims.

### III.     WYE OAK NOTICED 30(B)(6) DEPOSITIONS AND DEFENDANTS FAILED TO APPEAR AND DID NOT TIMELY FILE FOR A PROTECTIVE ORDER.

Without substantive interrogatory responses and with only a few documents produced, Wye Oak sought to take Defendants' 30(b)(6) depositions.  On January 26, 2018, Wye Oak noticed the MOD and the Republic for 30(b)(6) depositions, scheduling them nearly a month later on February 21 and February 22, respectively.  Ex. P, 30(b)(6) notices to Iraq and MOD. Wye Oak asked Defendants' representatives to be prepared to discuss matters pertaining to the issues at the heart of this case, including issues raised as their defenses:

- Communications related to the quantity of Iraqi scrap, the sale of scrap metal and military equipment, and the purported scrap ban instituted by Iraq (Matter Nos. 15, 33, 40);

- Negotiations between Wye Oak and MOD, and the circumstances and communications related to the creation and execution, of the Broker Services Agreement and its amendment (Matter Nos. 18, 19);

- Payments made to Wye Oak, GIG, or any entity related to the Broker Services Agreement or the IMERP program (Matter Nos. 20, 21, 23, 24);

- The MOD's relationship with Mr. Zayna and GIG (Matter Nos. 23, 25, 28);

- The work performed by Wye Oak and the work Defendants' claim was completed by GIG (Matter Nos. 29, 30); matters related to the sale of scrap and the purported scrap ban (Matter Nos. 23, 33, 40); and

- Matters and defenses raised by the Republic in its Rule 26 disclosure among others (32, 34, 35).

Defense counsel Timothy Mills acknowledged receipt of the deposition notices via email on January 29.  Defendants did not seek a protective order under Rule 26(c) prior to their deposition dates.  Defense counsel simply told Plaintiff's counsel that the dates would not work for his clients and that objections would be forthcoming.  Defendants did not provide alternative dates, and Plaintiff did not agree to postpone the noticed depositions.  Defendants, then, simply did not appear for their depositions.

When a party fails to appear for a properly noticed 30(b)(6) deposition, Rule 37(d)(1)(A) permits the imposition of sanctions. Even if legitimate objections exist, Rule 37(d)(2) requires a party to move for a protective order: "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

Having failed to seek a protective order, Defendants cannot be heard to complain that the discovery was objectionable. *Charm Floral v. Wald Imports, Ltd.*, no. C10-1550-RSM, 2012 WL 424581, at *3 (W.D. Wash. 2012) ("Charm Floral properly noticed the Rule 30(b)(6) deposition, and WIL waived any objection to the contents of the deposition by failing to file a motion for protective order"); s*ee also Dime Savings Bank v. Boklan*, no. CV 86-2664, 1987 WL 8057 (E.D.N.Y. 1987) (failure to seek a protective order waives all objections not subject to being raised by the court *sua sponte*); *Lateral Link Group, LLC v. Springut*, no. CV 14-5695-JAK, 2015 WL 12810333, at *2 (C.D. Cal. 2015) ("[Defendant] failed to seek a protective order which means its objections do not excuse the failure to appear.")). Merely stating the intention to seek a protective order is not enough because the rule requires the motion to be pending. *Bosh v. Cherokee County Governmental Building Authority*, no. 11-cv-376-JHP, 2016 WL 128518, at *1 (E.D. Okla. 2016) ("Failure to seek a protective order in advance of the deposition waives any

objections that could have been raised but were not. . . .  Even if Plaintiff was on notice of

CCGBA's intention to file its Motion for Protective Order, CCGBA was under an obligation to

file the motion in advance of the scheduled deposition[.]").

## IV.   DEFENDANTS' BELATED OBJECTIONS DEMONSTRATE THAT THEY HAD NO INTENTION OF PARTICIPATING IN GOOD FAITH.

Defendants' failure to appear for the Rule 30(b)(6) depositions follows on the heels of

their near complete failure to produce documents and their near wholesale objections to

interrogatories, which serve only to show that they have done virtually nothing to comply with

their discovery obligations in this case.

On March 7, 2018, two weeks *after* the depositions were supposed to occur, Defendants

transmitted the names of purported 30(b)(6) designees along with a document containing

Defendants' objections to the deposition topics.  Ex. Q, email from T. Mills to A. Foster (Mar. 7,

2018); Ex. R, Def.'s Object. to 30(b)(6) Topics (Mar. 7, 2018).  Five days later, on March 12,

Defendants filed for a protective order.  ECF No. 210.

Defendants' belated objections sent the clear message that, even if Defendants'

objections had been timely and, even if Defendants had moved for a protective order, Defendants

did not plan to participate in good faith.[6]  Iraq and MOD objected to every single matter for

examination put forward by Wye Oak, including subject matters specifically related to their

defenses and covered by the Republic's own Rule 26 disclosure. *E.g.*, Ex. A, at Matter No. 22

(relating to Murtaza Lakhani), 32 (related to allegations Iraq made that Wye Oak shopped around

---

[6] Despite having the ability to designate anyone, even individuals at the Iraqi Embassy in Washington, D.C., as 30(b)(6) witnesses, Defendants failed to even suggest deposition dates, and informed Wye Oak that the depositions would have to take place in Turkey or Lebanon, with each side bearing the cost of travel.

for a financier), 35 (related to the Iraqi hiring process), 36 (related to the Iraqi purchase order and payment authorization process).[7]

Although Defendants' principal defense is that they paid Wye Oak in full when they paid Mr. Zayna, Defendants objected to providing testimony regarding payments made to any entity related to the Broker Services Agreement or the IMERP program.  Defendants claimed that the term "payments . . . related to the Broker Services Agreement" was ambiguous and did not provide Iraq sufficient notice of the subject matter of the deposition.  *Id.* at Matter Nos. 20, 21, 23.  Defendants objected to having to answer questions related to their relationship with Raymond Zayna and his company GIG, as "not proportional to the needs of the case."  *Id.* at Matter No. 25.  Defendants objected to matters related to the "maintenance and rehabilitation work" of the company Iraq maintains took over Wye Oak's contract—GIG—arguing that the term was "ambiguous" and did not provide sufficient notice.  *See, e.g. id.* at Matter No. 30.

Defendants objected to topics related to quantities and sales of scrap metal and the alleged Iraqi scrap ban which Iraq claims prohibited Wye Oak from funding the contract.  *Id.* at Matter Nos. 24, 33, 40.  Defendants objected to topics related to its communications with the MNSTC-I.  *Id.* at Matter Nos. 14, 15, 16.  Defendants also objected to the topic of communications with Mr. Mills after he withdrew from the case but continued to file status reports on Defendants' behalf, somehow claiming such communications are privileged.  *Id.* at

---

[7] Defendants numbered their opposition beginning with "Matter No. 13."  Wye Oak's notice had consecutively numbered paragraphs beginning with the definitions.  Defendant's "Matter No. 13" is, therefore, the first matter of examination proposed by Wye Oak.  In addition, Wye Oak's notices to Iraq and MOD were nearly identical—the only change being which defendants each question was directed to.  Iraq responded with a single document subdivided into objections by MOD and the Republic.  Wye Oak refers to each objection by noting the corresponding topic number.  Each cited objection should be understood as objections by each Defendant to the same topic number, even though those objections appear on separate pages of the exhibit.

Matter No. 39.  Defense counsel noted that as to these questions, Iraq's representatives would be instructed not to answer.

Further, Defendants made clear that their representatives would not provide answers about any other arm or ministry of the Iraqi government.  *E.g., id.* at Matter No. 13 (objection number "3").  Defendants also circumscribed their witnesses, who would only be prepared to testify "as to matters stated in the Amended Complaint and Iraq's [or MoD's] Answer. . . ."  *E.g., id.* at Matter No. 14 (objection number "4").

## V.   EVEN HAD DEFENDANTS' PARTICIPATED, IT WAS CLEAR THAT THEIR WITNESSES WOULD NOT BE PREPARED TO TESTIFY CONSISTENT WITH THEIR OBLIGATIONS UNDER RULE 30.

Rule 30 imposes specific requirements on 30(b)(6) deponents.  Rule 30 requires designated witnesses to be "sufficiently knowledgeable to testify on the corporation's [or party's] behalf 'about information known or reasonably available to the corporation [or party].'"  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 289 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 30(b)(6)).[8]  "When a party notices topics for deposition, the corporation must 'not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledge[able], and binding answers on behalf of the corporation.'"  *Id.* (citation omitted).

The purpose of Rule 30(b)(6) is to prevent "serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying'. . . the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself."  *Alexander v. F.B.I.*, 186 F.R.D. 137, 141 (D.D.C. 1998) (Lamberth, J.) (citing Fed. R. Civ. P. 30(b)(6) Advisory

---

[8] Rule 30(b)(6) now uses the word "organization" in lieu of "corporation."

Committee Notes, 1970 Amendment).  Rule 30(b)(6) imposes a number of additional duties on

the party providing the deponent:

> First, the deponent has the duty of being knowledgeable on the
> subject matter identified as the area of inquiry. Clearly, a deponent
> that does not know about the subject matter to be inquired about is
> useless as a deponent at all. Second, the designating party is under
> the duty to designate more than one deponent if it would be
> necessary to do so in order to respond to the relevant areas of inquiry
> that are specified with reasonable particularity by the plaintiffs.
> Third, the designating party has a duty to prepare the witness to
> testify on matters not only known by the deponent, but those that
> should be reasonably known by the designating party. Obviously,
> the purpose of a Rule 30(b)(6) deposition is to get answers on the
> subject matter described with reasonable particularity by the
> noticing party, not to simply get answers limited to what the
> deponent happens to know. Fourth, the designating party has a duty
> to substitute an appropriate deponent when it becomes apparent that
> the previous deponent is unable to respond to certain relevant areas
> of inquiry.

*Id.*  The noticed entity has a further responsibility

> to prepare those persons in order that they can answer fully,
> completely, unevasively, the questions posed. . . .  The duty to
> prepare the designee imposed by the rule goes beyond matters
> personally known to the designee or to matters in which that
> designee was personally involved. Such preparation requires a good
> faith effort [by] the designate to find out the relevant facts—to
> collect information, review documents, and interview employees
> with personal knowledge. The duty of preparation may require the
> *interviewing of past employees*.

*United States v. Magnesium Corp. of Am.*, No. 2:01–CV–40 DB, 2006 WL 6924985, at *15–16

(D. Utah Nov. 27, 2006) (emphasis added) (footnote omitted) (internal quotation marks omitted).

Defendants' objections show that they had no intention of properly preparing their witnesses.

Iraq and MOD have taken the position that each one's Rule 30(b)(6) representative "is

not empowered or authorized by Iraqi law to testify on behalf of any separate juridical person

that, under Iraqi law, is separate from Iraq [or MOD]. . . ." *E.g.*, Ex. R, Def.'s Object. to

30(b)(6) Topics, at 7 (obj. 3), 32 (obj. 3). Iraq and MOD contend in this case that the Republic of Iraq and each of its constituent Ministries are separate "juridical persons" such that the statements of one cannot bind another, and even that one has no power even to seek information from another.

At the same time Defendants contend that they are separate entities, both Defendants' supposed 30(b)(6) witnesses are, themselves, employed by the Iraq Ministry of Justice—a separate juridical person unable to bind either The Republic of MOD. The Republic of Iraq was to be represented by Ms. Wafaa M. Muneer (the signatory to Iraq's Interrogatory responses) and MOD was to be represented by Mr. Ali Talib (the signatory to MOD's Interrogatory responses). Accordingly, based upon Iraq's own argument, these MOD employees are not authorized by Iraqi law to speak on behalf of either the MOD or the Republic. Providing witnesses that the Defendants themselves contend are unable to testify violates the duties imposed by Rule 30.

A 30(b)(6) deponent's statements are binding on the party represented by the witness. *See In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) (Hogan, J.) (A ". . . Rule 30(b)(6) deposition is a sworn corporate admission that is binding on the corporation."). If any credence is to be ascribed to Defendants' arguments, then it has violated Rule 30(b)(6) by tendering witnesses who cannot provide testimony binding on Iraq.

Defendants have also explained that their witnesses will not prepare for the examination by interviewing former officials or by seeking information from other Ministries. Both Iraq and MOD said that their 30(b)(6) representative would only be ready "to testify as to matters stated in the Amended Complaint and Iraq[/MOD's] Answer. . . ." *E.g.,* Ex. R, Def.'s Object. to 30(b)(6) Topics, at 3, 29. MOD, noted that its representative could not testify as to any other ministry or the government of Iraq, and could not testify as to the knowledge of former officials.

Ex. R, Def.'s Object. to 30(b)(6) Topics, at 29.  Further, the 30(b)(6) witnesses would also only

testify "as to knowledge attainable though MoD's [or Iraq's] reasonable inquiry and

investigation."  *E.g.¸*Ex. R, Def.'s Object. to 30(b)(6) Topics, Matter No. 13.  As to the

"reasonable inquiry and investigation," both Defendants have already asserted that they have no

documents and have no access to documents in the hands of separate "juridical persons."

Such statements are starkly at odds with Iraq's Rule 26 disclosure, which identified the

following current or former Iraqi government witnesses to support their defense: Dr. Bruska

Noori Shaways, General Bashar M. Ayoub, Former and Current Director Generals, Finance

Department Ministry of Defense, the Custodian of Records of the Iraqi Ministries of Defense,

Finance (Public Commission on Customs), and Interior.  Ex. A, Iraq's R. 26 Disclosure, at 2–4,

6.  Defendants' initial witness list, transmitted on February 5, 2018, included the following

current and former Iraqi government officials and the subjects of their testimony:

- Custodian of Records, Ministry of Defense Baghdad, Iraq;
  - To the extent necessary under the Federal Rules of Evidence, authentication of MoD records.
- Custodian of Records, Council of Ministers;
  - To the extent necessary under the Federal Rules of Evidence, authentication of Council of Minister records.
- Custodian of Records, Ministry of Industry and Minerals;
  - To the extent necessary under the Federal Rules of Evidence, authentication of Ministry of Industry and Minerals (MIM) records.
- Dr. Sawsan Jasim Mohamed, Director General, MoD Budget and Planning Department;
  - Confirmation of the following actions taken [sic] MoD:--MoD paid Wye Oak in full in late October 2004, by issuing three checks drawn upon the MoD checking account at Rafidain Bank, the three Wye Oak invoices appended to the Amended Complaint (the "Wye Oak Invoices") that Wye Oak alleges MoD did not pay.
- Aumer Abdel Rahman,  Director General MoD Balance and Programs Department;
  - Confirmation of the following actions taken [sic] MoD:--MoD paid Wye Oak in full in late October 2004, by issuing three checks drawn upon the MoD checking account at Rafidain Bank, the three Wye Oak invoices appended to the Amended Complaint (the "Wye Oak Invoices") that Wye Oak alleges MoD did not pay.

- Saif Al-Den Malik, Internal Accountant, MoD Department of Financial Affairs;
  - Confirmation of the following actions taken [sic] MoD:--MoD paid Wye Oak in full in late October 2004, by issuing three checks drawn upon the MoD checking account at Rafidain Bank, the three Wye Oak invoices appended to the Amended Complaint (the "Wye Oak Invoices") that Wye Oak alleges MoD did not pay.
- General Bashar M. Ayoub (now retired), formerly Commander 9th Mechanized Division, Iraqi Army;
  - Confirmation of the following:--That for reasons including Iraq national security, time was of the essence for the performance of the Work.
  - --That in light Wye Oak's abandonment of the Work, MoD required Raymond Zayna/GIG to be responsible for the Work pursuant to the terms of the Financial Services Agreement dated October 2004 between MoD and Raymond Zayna/GIG.
  - --That Raymond Zayna/GIG, and not Wye Oak, then completed the Work, at GIG's risk and expense.
  - --That subsequent to Mr. Stoffel's death in December 2004, Wye Oak abandoned the Work [sic], that Raymond Zayna/GIG was performing the Work, and Wye Oak was not performing the Work.

Ex. O, Defendants Witness List, at 4–5.

As another example, Defendants have contended in this case as a defense that Wye Oak failed to secure needed permissions of various organs of the Iraqi government.  *See, e.g.*, MOD Answer at 6, ECF 129 (noting that "Wye Oak is charged with knowledge of published Iraqi law and published Iraqi regulations with the force and effect of law, including but not limited to the laws and regulations of the Ministry of Trade. . . .").  Now, when called upon to provide information regarding that defense, Defendants contend that they cannot do so.

It is insufficient for Defendants to take the position that their 30(b)(6) witnesses would be unable to provide testimony outside of the documents and interrogatory responses produced during discovery, particularly in this case where essentially no documents have been produced and interrogatory responses were wholly lacking.  "Discovery by means of a Rule 30(b)(6) deposition differs from discovery obtained through other means, e.g. interrogatories and requests for production."  *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009) (citing *In re*

*Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) (Hogan, J.)).  In a Rule 30(b)(6) deposition, the requesting party can obtain "'more complete information and is, therefore favored.'" *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (quoting *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)). "[I]n responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position." *Id.* (additional citation omitted). "Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Great American Ins. Co. of New York*, 251 F.R.D. at 541; *see also National Life Ins. Co. v. Hartford Accident and Indemnity Co.,* 615 F.2d 595, 600 n. 5 (3d Cir. 1980) ("[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses.").

Defendants' refusal to have their 30(b)(6) designees prepare for their testimony by interviewing the witnesses and reviewing their records is willful violation of Rule 30.  These objections also indicate that, even if Defendants provided 30(b)(6) witnesses, such witnesses would not be prepared to testify to the relevant issues in this litigation.  More importantly, in this case, Defendants have produced essentially no documents at all, and their interrogatory answers suffer from the same willful blindness objections found in the belated response to the Rule 30(b)(6) notices.

## VI.   DEFENDANTS SHOULD BE SANCTIONED FOR NOT PARTICIPATING IN DISCOVERY IN GOOD FAITH AND THE COURT SHOULD DEEM CERTAIN FACTS AS ESTABLISHED.

Defendants' objections to Wye Oak's deposition topics make clear that their witnesses would not have been fully prepared to testify had they actually appeared.  Defendants objected to matters covered by their own Rule 26 disclosure and matters they claim in their Witness List that their witnesses would testify to.  Defense counsel even objected to the 30(b)(6) designees

discussing matters related to their communications with Mr. Mills after he had been granted

leave to withdraw—matters which cannot be privileged. By failing to appear without a pending

motion for protective order, Defendants have already violated Federal Rules 30 and 37.

Because Defendants failed to appear for the deposition, sanctions are available under

Rule 37. Sanctions may include "(1) striking pleadings; (2) treating certain matters as conceded;

(3) staying proceedings until the offending party complies with the Court's order; (4) dismissing

the party's claims in whole or in part; and (5) entering a default judgment against the party."

*Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 29 (D.D.C. 2015) (citing Fed. R. 37(d)(3),

37(b)(2)(A)(i)-(vi)).

There is no substantial justification for Defendants' near wholesale failure to participate

in discovery, particularly after so many years of delay. Defendants' failure to appear for their

Rule 30(b)(6) depositions and their objections to the discovery topics are just another chapter in

the long story of Iraq's refusal to participate in discovery. The Court has previously threatened

to enter a default judgment against Iraq for its contemptuous behavior. Defendants have not

heeded the Court's warnings and have continued to refuse to participate in discovery. When

coupled with discovery abuses described in other motions, a default judgment in in order. At a

minimum, the following matters must be treated as conceded by Iraq in this case:

1. Iraq owed Wye Oak the sum of $24,714,697.15 upon presentation of the invoices in
   October 2004;

2. Iraq breached the Agreement by failing to pay Wye Oak the sum owed;

3. The Broker Services Agreement and the First Amendment to the Broker Services
   Agreement are valid and binding;

4. The August 16, 2004 document appointing Wye Oak as the "sole and exclusive agent" for the Ministry of Defense was properly executed by Bruska N. Shaways is valid and binding;

5. Zayna and GIG were not Wye Oak's agents, but were agents of Iraq;

6. Wye Oak did not abandon the contract;

7. Iraq did not ban the sale of scrap or, if it did, such a ban did not apply to Wye Oak because Wye Oak was the Government's agent;

8. Iraq had significant quantities of scrap available for sale;

9. Wye Oak would have successfully brokered sales for this scrap but for Iraq's breach;

10. Wye Oak would have performed the contract in full but for Iraq's breach; and

11. The funds Wye Oak received from performance of the Agreement would be held in Wye Oak's bank accounts in the United States.

The Court must also "require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). Defendants' failure is part of a long-established pattern of disregarding their discovery obligations. The Court has repeatedly warned Defendants that their continued failure will result in sanction. Defendants' actions here were not substantially justified and the award of expenses is more than just.

## CONCLUSION

For the foregoing reasons, Wye Oak requests the Motion be granted.

Date: May 9, 2018

Respectfully submitted,

_____/s/ Eric C. Rowe_____
Eric C. Rowe (D.C. Bar No. 466182)
C. Allen Foster (D.C. Bar No. 411662)
Whiteford, Taylor & Preston LLP
1800 M St., NW, Suite 450N
Washington, DC 20036
cafoster@wtplaw.com
erowe@wtplaw.com
Telephone: (202) 659-6800
Facsimile: (202) 331-0573

Robert J. Pavich, Pro Hac Vice
John J. Pavich, Pro Hac Vice
PAVICH LAW GROUP, P.C.
30 West Monroe 13th Floor
Chicago, Illinois 60603
rpavich@pavichlawgroup.com
jpavich@pavichlawgroup.com
(312) 690-8400 (Telephone)
(312) 853-8401 (Facsimile)

John H. Quinn, Jr. (D.C. Bar No. 34959)
Quinn, Racusin & Gazzola Chartered
888 17th Street, N.W., Suite 640
Washington, D.C. 20006-3325
(202) 842-9300 (telephone)
(202) 682-0148 (facsimile)
jhq@qrglawfirm.com