# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WYE OAK TECHNOLOGY, INC., **Plaintiff,** ) ) ) ) | |
| v. ) ) | Civil No. 1:10-cv-01182-RCL |
| REPUBLIC OF IRAQ *et al.*, **Defendants.** ) ) ) ) ) | |

## <u>MEMORANDUM OPINION</u>

Wye Oak and the Republic of Iraq (Iraq) and the Ministry of Defense of the Republic of Iraq (MoD) have been engaged in this litigation based on an alleged breach of contract for nearly a decade. The Court now examines plaintiff Wye Oak's motion for summary judgment, defendants Iraq and MoD's cross-motion for summary judgment, Wye Oak's motion to strike Iraq and MoD's cross-motion for summary judgment, various motions to strike filings related to Wye Oak's motion for summary judgment and Iraq and MoD' cross-motion for summary judgment, and multiple motions for extension of time. Pl.'s Mot. Summ. J., ECF No. 234 [hereinafter ECF No. 234]; Defs.' Opp'n & Cross-Mot. Summ J., ECF No. 242 [hereinafter ECF No. 242]; Defs.' Cross-Mot. Summ J., ECF No. 244 [hereinafter ECF No. 244]; Pl.'s Mot. Strike Defs.' Cross-Mot. Summ J., ECF No. 252 [hereinafter ECF No. 252]; Defs.' Mot. Strike Pl.'s Two Statements Additional Facts, ECF No. 290 [hereinafter ECF No. 290]; Defs.' Mot. Extension of Time, ECF No. 282 [hereinafter ECF No. 282]; Defs.' Mot. Extension of Time, ECF No. 284 [hereinafter ECF No. 284]; Defs.' Mot. Extension of Time, ECF No. 288 [hereinafter ECF No. 288]; Def. Iraq's Am. Mot. Extension of Time, ECF No. 294 [hereinafter ECF No. 294]; Pl.'s Mot. Strike Decls., ECF No. 327 [hereinafter ECF No. 327]. The Court will **GRANT IN PART** and **DENY IN PART** Wye Oak's

motion for summary judgment. ECF No. 234. The Court will **DENY** Iraq and MoD's cross-motion for summary judgment, ECF No. 244, and **GRANT IN PART** and **DENY IN PART** Wye Oak's motion to strike Iraq and MoD's cross-motion for summary judgment, ECF No. 252, because Iraq and MoD filed this motion after the deadline for filing dispositive motions set by this Court in its scheduling order. Omnibus Order, ECF No. 191 [hereinafter ECF No. 191]. The Court will only treat Iraq and MoD's cross-motion for summary judgment as an opposition to Wye Oak's motion for summary judgment. The Court will **DISMISS AS MOOT** the motions to strike various filings related to Iraq and MoD's cross-motion for summary judgment and **DISMISS AS MOOT** Iraq and MoD's motions for extension of time to file their reply regarding Iraq and MoD's cross-motion for summary judgment because the Court will **GRANT IN PART** plaintiff's motion to strike defendants' cross-motion for summary judgment. ECF No. 290; ECF No. 282; ECF No. 284; ECF No. 288; ECF No. 294; ECF No. 327.

## I.    Background

### A.    Factual Background

The parties dispute a significant portion of the relevant facts in this case. Wye Oak, entered into the Broker Services Agreement (BSA) with MoD on August 16, 2004. Under the BSA, MoD was required to "work exclusively with [Wye Oak] regarding furnishing of Military Refurbishment Services, Scrap Sales and the sale of Refurbished Military Equipment with respect to all Military Equipment." Broker Services Agreement, ECF No. 122-2. The BSA contained a compensation provision, which stated that "[MoD] shall pay [Wye Oak] a commission of minimum of ten percent (10%) based on the Contract Value set out in each Sales Contract entered into by the Ministry, pursuant to this Agreement. With respect to Refurbished Military Equipment, the Ministry will pay [Wye Oak] ten percent (10%) of such equipment's refurbishment cost." *Id.* The BSA declared

that the "Agreement shall not be amended or supplemented except in writing, signed by both parties." *Id.* The parties dispute whether the BSA was validly amended and supplemented by a document signed by both parties.

On September 28, 2004, Wye Oak granted Mr. Raymond Zayna of General Investment Group sal (GIG) a "limited power of attorney to arrange financing and the [sic] request banking guarantees for and on behalf of the Wye Oak Iraqi Military Equipment Recovery Program ('IMERP Contract')" signed between Wye Oak and MoD. Letter from Dale C. Stoffel (Sept. 28, 2004), ECF No. 122-5. In October 2004, Wye Oak presented three invoices to MoD regarding the construction of military vehicle repair facilities, purchasing parts for repairing military vehicles, hiring and training maintenance workers, and repairing military vehicles. ECF No. 122-7. On October 19, 2004, there was a meeting between Dale Stoffel (Wye Oak's president), Mr. Zayna of GIG, and representatives of MoD. Talib Certificate Authenticity Business Records, Memorandum from Mr. Patrick Marr, at Attachment B, ECF No. 242-5 [hereinafter Memorandum from Mr. Patrick Marr, ECF No. 242-5]. The parties vigorously dispute what occurred at this meeting and whether an agreement was reached to determine how MoD would pay Wye Oak for the three invoices. MoD subsequently paid Mr. Zayna amounts mirroring the invoiced totals.

Dale Stoffel was killed while traveling in Iraq on December 8, 2004. Following Mr. Stoffel's death, Wye Oak at least temporarily recalled American personnel from Iraq, at least temporarily. The invoiced work for repair and refurbishment of a sufficient number of armored vehicles to be effective leading up to the Iraqi election was completed in January 2005. The parties dispute whether it was Wye Oak or GIG who completed this work.

B.   Procedural Background

3

Wye Oak filed its motion for summary judgment regarding selected affirmative defenses proffered by Iraq and MoD on July 2, 2018. ECF No. 234. July 2, 2018 was the due date for dispositive motions as set by this Court in its scheduling order. ECF No. 191. Iraq and MoD subsequently filed a single document styled as an opposition to Wye Oak's motion for summary judgment and a cross-motion for summary judgment as to certain defenses raised by Iraq and MoD on July 16, 2018. ECF No. 242; ECF No. 244. This cross-motion for summary judgment was therefore filed after the Court's due date for dispositive motions. Wye Oak filed a motion to strike Iraq and MoD's cross-motion for summary judgment based on the fact that Iraq and MoD did not file this motion until after the July 2, 2018 deadline. Iraq and MoD filed a motion to strike Wye Oak's statements of additional material facts, which were filed in opposition to Iraq and MoD's cross-motion for summary judgment. ECF No. 290. Iraq and MoD also filed several motions for extensions of time to file their reply to Wye Oak's opposition to their cross-motion for summary judgment. ECF. No. 282; ECF No. 284; ECF No. 288; ECF No. 294. Finally, Wye Oak filed a motion to strike four declarations that accompany Iraq and MoD's reply in support of defendants' cross-motion for summary judgment. ECF No. 327.

## II.    Legal Standard for Summary Judgment

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In making a summary judgment determination, the court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. However, "the mere existence of a scintilla of evidence in support of the non-moving party" is insufficient to create a genuine dispute of material fact. *Id.* at 252. Instead, evidence must exist on which the decision-maker could reasonably find for the non-moving party. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III.  Discussion

A.  <u>Defendants' untimely filed cross-motion for summary judgment will not be considered as a motion for summary judgment, but will be considered as an opposition to plaintiff's motion for summary judgment.</u>

Iraq and MoD filed their cross-motion for summary judgment on July 16, 2018, which was two weeks after this Court's July 2, 2018 deadline for filing dispositive motions as set forth in the scheduling order. ECF No. 191. District courts have broad discretion in deciding whether to consider summary judgment filings that have been submitted in an untimely manner. Federal Rule of Civil Procedure 6 provides that

> when an act may or must be done within a specified time, the court may, for good cause, extend the time:
> > (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> > (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

5

Fed. R. Civ. P. 6(b)(1). Iraq and MoD did not seek leave to file their cross-motion for summary judgment late, and they have not demonstrated good cause or excusable neglect to justify the untimely filing of this motion. Federal Rule of Civil Procedure 16 permits a court to issue "any just orders . . . if a party . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). The Court will not consider Iraq and MoD's untimely filing as a cross-motion for summary judgment. *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424–25 (D.C. Cir. 2005) (finding that a district court did not abuse its discretion in denying a motion to allow plaintiff to file a motion for summary judgment more than nine months after the district court's scheduling order deadline for filing dispositive motions had passed); *see also B & J Enterprises, Ltd. v. Giordano*, 329 F. App'x 411, 415 (4th Cir. 2009) ("Although a district court possesses broad discretion on whether to consider a tardy filing of summary judgment materials, *see* Fed. R. Civ. P. 6, a late filing should be authorized 'only if cause or excusable neglect has been shown by the party failing to comply with the time provisions.'") (quoting *Orsi v. Kirkwood,* 999 F.2d 86, 91 (4th Cir.1993)); *Dedge v. Kendrick*, 849 F.2d 1398, 1398 (11th Cir. 1988) (holding that a district court properly denied a motion for summary judgment as untimely because the motion was filed after the deadline set in the scheduling order); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (holding that a district court properly denied a motion as untimely where it was filed after the applicable scheduling order deadline and the movant "never requested a modification" of the scheduling order), *superseded by statute on other grounds as recognized in Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996).

The Court will not strike Iraq and MoD's filing completely. Instead, the Court will consider the arguments raised in this filing as part of an opposition to Wye Oak's summary judgment motion. Iraq and MoD's opposition and cross-motion for summary judgment was filed in a timely

manner as an opposition to Wye Oak's motion for summary judgment. L.Cv.R. 7(b) (opposing points and authorities must be filed within 14 days of service of a motion). Iraq and MoD's filing also complied with the page limitation requirements for opposition filings. *Id.* 7(e). Therefore, the Court will consider this filing as an opposition to Wye Oak's motion for summary judgment even though the Court will not consider the untimely filing as a cross-motion for summary judgment. *See, e.g., Glenn v. Moss*, No. 15-cv-165, 2017 WL 8950429, at *1 (D. Utah Mar. 1, 2017) (striking a cross-motion for summary judgment as untimely, but still considering the arguments raised in the cross-motion as part of an opposition to summary judgment); *Fin. Res. Network, Inc. v. Brown & Brown, Inc.*, 867 F. Supp. 2d 153, 176 (D. Mass. 2012) (same); *Falk v. Wells Fargo Bank*, No. 09-cv-678, 2011 WL 3702666, at *3 (N.D. Tex. Aug. 19, 2011), *aff'd sub nom. Estate of Falk v. Wells Fargo Bank, N.A.*, 541 F. App'x 481 (5th Cir. 2013) (same).

B. Defendants' motions for extensions of time to file reply to plaintiff's opposition to defendants' cross-motion for summary judgment will be dismissed as moot.

Iraq and MoD filed multiple motions requesting extensions of time to file replies to Wye Oak's opposition to their cross-motion for summary judgment. ECF No. 282; ECF No. 284; ECF No. 288; ECF No. 294. But, as discussed *supra*, the Court will not consider Iraq and MoD's cross-motion for summary judgment as a motion for summary judgment because it was filed after the deadline set by this Court's scheduling order for filing dispositive motions. *See* ECF No. 191. The Court will only consider Iraq and MoD's cross-motion for summary judgment as an opposition to Wye Oak's motion for summary judgment. Therefore, the Court will not consider any of Iraq and MoD's reply filings that were made in response to Wye Oak's opposition to their cross-motion for summary judgment because the Court has struck their cross-motion for summary judgment and such filings are not applicable to Wye Oak's motion for summary judgment. Accordingly, Iraq

and MoD's motions for extensions of time to make reply filings in response to Wye Oak's opposition to their cross-motion for summary judgment will be dismissed as moot.

    C.    <u>Motions to strike various filings related to defendants' cross-motion for summary judgment will be dismissed as moot.</u>

Both sides have filed motions to strike various opposition and reply filings related to Iraq and MoD's cross-motion for summary judgment. ECF No. 290; ECF No. 327. But, as discussed *supra*, the Court will not consider Iraq and MoD's cross-motion for summary judgment as a motion for summary judgment because it was filed after the deadline set by this Court's scheduling order for filing dispositive motions. *See* ECF No. 191. The Court will only consider Iraq and MoD's cross-motion for summary judgment as an opposition to Wye Oak's motion for summary judgment. Therefore, the Court will not consider any of Wye Oak's filings made in opposition to Iraq and MoD's cross-motion for summary judgment; the Court will obviously still consider Wye Oak's reply, Pl's Reply, ECF No. 249, in support of its own motion for summary judgment. The Court will also not consider any of Iraq and MoD's reply filings that were made in response to Wye Oak's opposition to their cross-motion for summary judgment because the Court has struck their cross-motion for summary judgment and such filings are not applicable to Wye Oak's motion for summary judgment. Accordingly, the Court will dismiss as moot Iraq and MoD's motion to strike Wye Oak's statements of material facts filed as part of Wye Oak's opposition to Iraq and MoD's cross-motion for summary judgment. Further, the Court will dismiss as moot Wye Oak's motion to strike certain declarations submitted with Iraq and MoD's reply in support of their cross-motion for summary judgment.

    D.    <u>Plaintiff's motion for summary judgment is granted in part and denied in part.</u>

Wye Oak moved for summary judgment on a number of Iraq and MoD's affirmative defenses. ECF No. 234. Wye Oak argues that Iraq and MoD have not provided evidence to support

most of their proffered affirmative defenses. This argument is primarily based on Wye Oak's belief that Iraq and MoD provided insufficient Rule 26 disclosures. Wye Oak alleges that Iraq and MoD are precluded from calling any witnesses and offering any evidence under Federal Rule of Civil Procedure 37 because their failure to provide sufficient information or identify witnesses as required by Rule 26 was not harmless or substantially justified.

Iraq and MoD answer that summary judgment is not an appropriate remedy for alleged discovery failures. Iraq and MoD contend that the appropriate means to remedy the alleged discovery failure would have been for Wye Oak to make a motion to compel during the discovery period. They also point out that Wye Oak did not submit "a statement of material fact as to which the moving party contends there is no genuine issue," as called for in the local rules. L.Cv.R. 7(h). Further, Iraq and MoD argue that their Rule 26 disclosures were adequate and that evidence supporting their affirmative defenses actually warrants summary judgment in their favor. As discussed *supra*, although the Court will not treat Iraq and MoD's cross-motion for summary judgment as a motion for summary judgment, the Court will consider the arguments raised in this filing as an opposition to Wye Oak's motion for summary judgment.

Wye Oak is correct that it was not required to produce evidence to support its motion for summary judgment because this motion was based on the argument that Iraq and MoD had not provided sufficient evidence in support of their proffered affirmative defenses to avoid summary judgment determinations. The Supreme Court in *Celotex* explained that

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a

> sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp.*, 477 U.S. at 322–23. The Supreme Court did acknowledge that a party seeking summary judgment still bears the responsibility of informing the district court of the basis for its motion and identifying the materials that the party believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. This "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Rule 56(c) specifically states that a "party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). Wye Oak has met this requirement by alleging that the inadequacy of Iraq and MoD's Rule 26 disclosures prevents them from supporting their affirmative defenses with any evidence. ECF No. 234; Def. Iraq Rule 26 Disclosures, ECF No. 234-2.

Wye Oak is not asking for a discovery sanction; instead, Wye Oak is arguing that there is an absence of admissible evidence by which Iraq and MoD can prove their affirmative defenses. The Court is not overly troubled by Wye Oak's lack of a statement of material facts because Wye Oak's motion for summary judgment is solely premised on the argument that Iraq and MoD cannot present admissible evidence to support their affirmative defenses, on which they bear the burden of proof at trial. Therefore, the Court does not agree with Iraq and MoD's argument that Wye Oak did not adequately support its motion for summary judgment. *Cf. Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994) (approvingly citing Wright and Miller's Federal Practice & Procedure treatise's conclusion that under *Celotex*, "the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case") (quoting Wright et al., 10A Fed.

Prac. & Proc. Civ. § 2720.1 (4th ed.)). Further, the D.C. Circuit in *Grimes* recognized that "'a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment' . . . When such independent scrutiny confirms fatal shortfalls in the evidence necessary to support a verdict in a nonmoving [party]'s favor, the motion may be granted." *Grimes v. D.C.*, 794 F.3d 83, 94–95 (D.C. Cir. 2015) (internal citations omitted). Thus, the Court will fully analyze Wye Oak's motion for summary judgment on numerous affirmative defenses proffered by Iraq and MoD.

The Court addresses whether the evidence submitted by Iraq and MoD is sufficient to be considered at the summary judgment stage and whether summary judgment should be granted in Wye Oak's favor in regards to each challenged affirmative defense below.

> 1. *The evidence submitted by Iraq and MoD is sufficient to be considered at the summary judgment stage.*
>
>> a. The Court will not prohibit Iraq and MoD from calling any witnesses or offering any evidence under Rule 37.

Wye Oak argues that Iraq and MoD provided insufficient Rule 26 disclosures and should therefore be prohibited from calling any witnesses and offering any evidence. ECF No. 234. Specifically, Wye Oak alleges that Iraq provided inadequate Rule 26 disclosures and MoD did not provide any Rule 26 disclosures. *Id.* Under Rule 37, a party is not allowed to use information or witnesses to supply evidence on a motion, at a hearing, or at trial if the party fails to provide the information or identity of the witness as required by Rule 26(a) or (e), unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c). A court may also impose an alternative sanction upon a motion for a party's failure to disclose or supplement disclosure under Rule 26.

Iraq provided its Rule 26 disclosures on September 16, 2013. Def. Iraq Rule 26 Disclosures, ECF No. 234-2. Wye Oak has described this disclosure as "bare bones," but has not

described to the Court with particularity why this disclosure is insufficient warranting that Iraq be "precluded from calling any witnesses and from offering any evidence." ECF No. 234. Upon examining Iraq's disclosures, the Court does not believe that the disclosures were deficient. Iraq named individuals that were likely to have discoverable information and disclosed the subject matter of that information that Iraq thought it might use to support its defenses. Further, the Court believes that Iraq adequately described the categories of documents that it had in its possession, custody, or control and may use to support its defenses. Although Wye Oak appears to take issue with the fact that Iraq did not provide documents in their initial disclosures, a party is not required to provide documents under Rule 26—a party is solely required to describe the documents it has in its possession, custody, or control that it may use to support its defenses by category and location. Fed. R. Civ. P. 26(ii). Thus, the Court finds that Iraq submitted adequate Rule 26 disclosures and will not prohibit Iraq from calling any witnesses or offering any evidence.

MoD was not added as a defendant until Wye Oak's First Amended Complaint on March 5, 2015. MoD did not file Rule 26 disclosures and adopted Iraq's Rule 26 disclosures on July 23, 2018 *nunc pro tunc* to April 29, 2015. Notice Def. MoD Joinder in Iraq Rule 26 Disclosures, ECF No. 267-1. The Court must express its displeasure that MoD did not either file its own Rule 26 disclosures or expressly adopt Iraq's disclosures at an earlier time. Iraq and MoD have both missed various deadlines during this litigation and have skirted the Federal Rules of Civil Procedure's requirements. However, the Court finds that any potential failure on the part of MoD to serve Rule 26 disclosures was harmless. The individuals likely to have discoverable information known to MoD and documents in MoD's possession that may be used to support its defenses are the same as those put forward by Iraq in its Rule 26 disclosures. Therefore, the Court finds that any deficiency on the part of MoD was harmless because Wye Oak had already been alerted to the

relevant individuals, subject matter, and documents that defendants may use to support their defenses. Accordingly, the Court will not prohibit MoD from calling any witness or offering any evidence.

        b.     The declarations submitted by Iraq and MoD from Mr. Ali Talib and Ms. Wafaa Muneer are sufficient to be considered at the summary judgment stage.

Rule 56 sets out the rules for summary judgment. Specifically, Rule 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Wye Oak argues that Iraq and MoD submitted declarations from Mr. Ali Talib and Ms. Wafaa Muneer that do not satisfy Rule 56 and should therefore be disregarded. Iraq and MoD rely heavily on the Talib and Muneer declarations to authenticate documents and to qualify the documents as business records. The documents submitted with these declarations are extremely important to many of Iraq and MoD's affirmative defenses at issue in Wye Oak's summary judgment motion. Although these declarations may not be sufficient to admit these documents as evidence at trial, the Court finds that these declarations are sufficient to be considered at the summary judgment stage.

        i.     The Talib and Muneer declarations satisfy the low bar set forth in Rule 56's personal knowledge requirement.

The D.C. Circuit has been clear that the personal knowledge requirement of Rule 56 "is unequivocal, and cannot be circumvented." *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). The D.C. Circuit in *Londrigan* elaborated that an "affidavit based merely on information and belief is unacceptable." *Id.* The Court in *Londrigan* found that a portion of a Federal Bureau of Investigation (FBI) special agent's affidavit that discussed "assumptions made by persons interviewed by other FBI agents" could not possibly have been based on personal

knowledge. *Id.* at 1175. This led the D.C. Circuit to order the district court to disregard the impugned part of the affidavit upon remand. *Id.*

This Court has previously examined instances in which declarations did not establish that they were based on adequate personal knowledge to satisfy Rule 56. In *Govplace*, one declaration stated that the facts in the declaration were "true and correct to the best of [the declarant's] knowledge," and did not state that the declarant had personal knowledge of the facts in the declaration. *U.S. ex rel. Folliard v. Govplace*, 930 F. Supp. 2d 123, 128 (D.D.C. 2013), *aff'd sub nom. U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19 (D.C. Cir. 2014). This Court determined that this declaration did not satisfy Rule 56's personal knowledge requirement and therefore could not be considered at summary judgment. In *Judicial Watch*, this Court held that portions of a declaration that were opinion statements based on another person's notes and admittedly concerned procedures the declarant was unaware of must be struck for lack of personal knowledge. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264 (D.D.C. 2004).

Here, neither Mr. Talib nor Ms. Muneer specifically state that their declarations are based on personal knowledge. *See* Talib Certificate Authenticity Business Records, ECF No. 242-5; Muneer Certificate Authenticity Business Records, ECF No. 242-12. Instead, Mr. Talib states that he is the Senior Legal Advisor in the MoD and that he is authorized and qualified to make the declaration based on his position. Talib Certificate Authenticity Business Records, ECF No. 242-5. Similarly, Ms. Muneer states that she is the Senior Manager of Foreign Litigation in the Ministry of Justice (MoJ) and is authorized and qualified to make the declaration based on her position. Muneer Certificate Authenticity Business Records, ECF No. 242-12. Further, they both declare the documents included in their declarations

are true copies of original records which:

A. Were made at or near the time of the occurrence of the matters set forth therein, by (or from information transmitted by) a person with knowledge of those matters;
B. Were kept in the course of regularly conducted business activity of the Ministry of Defense;
C. Were made by the said business activity as a regular practice; and
D. if not original records, are duplicates of original records.

Talib Certificate Authenticity Business Records, ECF No. 242-5; Muneer Certificate Authenticity Business Records, ECF No. 242-12. Finally, Mr. Talib and Ms. Muneer both declare that everything stated in their declaration is "true and correct" under the penalty of perjury under the laws of Iraq and the U.S. Talib Certificate Authenticity Business Records, ECF No. 242-5; Muneer Certificate Authenticity Business Records, ECF No. 242-12.

Although the Talib and Muneer declarations are very sparse, these declarations are not as deficient as the declarations that were held to not satisfy Rule 56's personal knowledge requirement in *Londrigan*, *Govplace*, and *Judicial Watch*. Mr. Talib and Ms. Muneer do not speculate about the beliefs of others, caveat that their declarations were only true and correct to the best of their knowledge, or give any type of opinion statements in their declarations. Their declarations do not readily demonstrate that they are not based on personal knowledge as was the case in *Lonfrigan*, *Govplace*, and *Judicial Watch*. Therefore, even though the declarations do not contain the specific phrase that they are based on personal knowledge, the Court believes that the declarations satisfy the low bar set forth in Rule 56's personal knowledge requirement.

The Court also recognizes that Iraq and MoD submitted supplemental declarations from Mr. Talib and Ms. Muneer as exhibits accompanying Iraq and MoD's reply in support of its cross-motion for summary judgment. *See* Talib Supplemental Certificate Authenticity Business Records, ECF No. 287-14; Muneer Supplemental Certificate Authenticity Business Records, ECF No. 287-15. Although the Court has struck Iraq and MoD's cross-motion for summary judgment and will

not consider the reply filings made in support of that motion in making the present summary judgment determinations, the Court will briefly comment on these declarations for the benefit of the parties moving forward with this litigation. The supplemental Talib and Muneer declarations contain much more robust explanations as to these individuals' personal knowledge of the documents attached to their original declarations. *See id.* These supplemental declarations also explicitly state that they are based on the declarants' personal knowledge. *Id.*

      ii.    The evidence offered by Iraq and MoD is capable of being admitted under the business records exception to the rule against hearsay and will therefore be considered at the summary judgment stage.

Rule 56's directive about the admissibility of an affidavit's contents has been liberally construed. Rule 56 requires that affidavits "set out facts that *would* be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). The word 'would' in this provision indicates that the key question in analyzing the admissibility of evidence at the summary judgment stage is whether the evidence would be capable of being admitted at trial—not whether the evidence presented would be admissible in the exact same form as presented at the summary judgment stage. The D.C. Circuit has declared that "[w]hile a nonmovant is not required to produce evidence in a *form* that would be admissible at trial, the evidence still must be capable of being converted into admissible evidence." *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (emphasis in original). In *Gleklen*, a former employee alleging employment discrimination testified during deposition that someone informed her about a conversation that occurred between two people and testified about the supposed contents of the alleged conversation. *Id.* This deposition testimony was the only evidence of the conversation in the record. *Id.* The D.C. Circuit determined that the evidence about the conversation was "sheer hearsay" and was not

capable of being admitted at trial. *Id.* Therefore, the Court concluded that this evidence could not be used at summary judgment. *Id.*

In this case, Wye Oak argues that the evidence provided by Iraq and MoD in support of their opposition to Wye Oak's summary judgment motion do not meet the requirements of the business records exception to the rule against hearsay. Pl.'s Reply, ECF No. 249. Under Federal Rule of Evidence 803, a "record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay, regardless of whether the declarant is an available witness if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Under Federal Rule of Evidence 902, the foreign documents that Iraq and MoD attempt to authenticate must be shown by "a certification of the custodian or another qualified person" that is "signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed" to meet the requirements of Rule 803(6)(A)–(C). Fed. R. Evid. 902(11)–(12). Wye Oak alleges that the Talib and Muneer declarations, which are used to authenticate numerous documents, do not establish that Mr. Talib and Ms. Muneer would be qualified to introduce the records as evidence at trial. ECF No. 249. Wye Oak contends that these declarations do not adequately demonstrate that Mr. Talib and Ms. Muneer "have any knowledge regarding the record-keeping procedures of either Ministry, that they are the custodians of the documents, or even that they are familiar with the files." *Id.*

The D.C. Circuit has held that a custodian or qualified witness "need not have personal knowledge of the actual creation of the document." *United States v. Adefehinti*, 510 F.3d 319, 325 (D.C. Cir. 2007). A "qualified witness" is solely someone who is familiar with the record-keeping procedures of the organization and can explain the record-keeping system of the organization. *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008); *Nadir v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008); *Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999); *United States v. Wables*, 731 F.2d 440, 449 (7th Cir.1984); *NLRB v. First Termite Control Co.*, 646 F.2d 424, 427 (9th Cir.1981).

Mr. Talib and Ms. Muneer each state that they are authorized and qualified to make the declarations based on their positions, which are Senior Legal Advisor in the MoD and Senior Manager of Foreign Litigation in the MoJ, respectively. Talib Certificate Authenticity Business Records, ECF No. 242-5; Muneer Certificate Authenticity Business Records, ECF No. 242-12. They both declare the documents included in their declarations

> are true copies of original records which:
> A. Were made at or near the time of the occurrence of the matters set forth therein, by (or from information transmitted by) a person with knowledge of those matters;
> B. Were kept in the course of regularly conducted business activity of the Ministry of Defense;
> C. Were made by the said business activity as a regular practice; and
> D. if not original records, are duplicates of original records.

Talib Certificate Authenticity Business Records, ECF No. 242-5; Muneer Certificate Authenticity Business Records, ECF No. 242-12. Also, Mr. Talib and Ms. Muneer both assert that they declare that everything stated in their declaration is "true and correct" under the penalty of perjury under the laws of Iraq and the U.S., which meets Rule 902(12)'s requirements. Talib Certificate Authenticity Business Records, ECF No. 242-5; Muneer Certificate Authenticity Business Records, ECF No. 242-12; Fed. R. Evid. 902(12).

These bare-bones declarations do not detail the declarant's familiarity with the record-keeping procedures of their respective ministries, the Office of the Prime Minister of Iraq, and the Council of Ministries. Nonetheless, the primary concern at the summary judgment stage is whether the evidence is capable of being converted into admissible evidence. *See Gleklen*, 199 F.3d at 1369. Accordingly, the Court finds that the evidence offered by Iraq and MoD is capable of being admitted under the business records exception to the rule against hearsay. Iraq and MoD will be able to elicit testimony from Mr. Talib and Ms. Muneer to explain the record-keeping systems of their organizations and their own familiarity with the record-keeping procedures of their organizations. The Court notes that if Iraq and MoD cannot sufficiently establish that Mr. Talib and Ms. Muneer are truly qualified witnesses to authenticate these records or that these documents were truly records of a regularly conducted activity, the Court will not admit these records as evidence at trial.

Finally, the Court again recognizes that Iraq and MoD submitted supplemental declarations from Mr. Talib and Ms. Muneer as exhibits accompanying Iraq and MoD's reply in support of their cross-motion for summary judgment. Although the Court has struck their cross-motion for summary judgment and will not consider these reply filings made in support of the cross-motion for summary judgment in making the present summary judgment determinations, the Court will offer comments on these declarations for the benefit of the parties moving forward with this litigation. The supplemental Talib and Muneer declarations contain more detailed statements as to these individuals' familiarity with the record-keeping systems of the respective organizations. However, these supplemental declarations still rely on largely conclusory statements that Mr. Talib and Ms. Muneer are knowledgeable about the record-keeping systems of their respective ministries, the Office of the Prime Minister of Iraq, and the Council of Ministries. The Court is

especially troubled by whether Muneer will be able to serve as a qualified witness to adequately authenticate the documents attached to her declaration as she is not employed by the relevant offices that created and likely maintain those documents.

Iraq and MoD will have to elicit more detailed explanations from these individuals to show that they are qualified witnesses to authenticate these documents, or they will need to rely on custodians of these records. Iraq and MoD will also have to demonstrate that these documents meet the requirements of the business records exception. To ensure that Iraq and MoD can indeed fulfill these requirements to present admissible evidence at trial, the Court will **ORDER** that Iraq and MoD must present these documents in admissible form at the pretrial hearing scheduled for December 7, 2018.

        2.     *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 4 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "General Investment Group s.a.l. ('GIG') is a necessary party which should be joined to this action and in whose absence complete relief cannot be afforded between the parties. Accordingly, this action should be dismissed and judgment should not be entered against [Iraq or MoD], because Wye Oak has not joined all necessary parties." ECF No. 129; ECF No. 139. Iraq and MoD stated in their opposition to Wye Oak's motion for summary judgment that they are no longer pursuing this affirmative defense. ECF No. 242 (Iraq and MoD mis-numbered this affirmative defense as affirmative defense 1 in their opposition). Therefore, the Court will grant Wye Oak summary judgment on this affirmative defense.

        3.     *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 5 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense

that "Wye Oak has brought this action in an inconvenient forum in the United States instead of an

adequate alternative forum in the courts of [Iraq or MoD]. Accordingly, this action should be

dismissed by this Court in favor of the action being brought by Wye Oak before an Iraqi Court."

Def. MoD Answer & Affirmative Defenses, ECF No. 129 [hereinafter ECF No. 129]; Def. Iraq

Answer & Affirmative Defenses, ECF No. 139 [hereinafter ECF No. 139]. Iraq and MoD stated

in their opposition to Wye Oak's motion for summary judgment that they are no longer pursing

this forum *non conveniens* affirmative defense. ECF No. 242. Therefore, the Court will grant Wye

Oak's summary judgment motion on this affirmative defense.

4.    *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 6(c) will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense

that

> Any obligation [Iraq or MoD] may have owed Wye Oak is barred and/or excused
> by Wye Oak's material breach and violation of its obligations under purported
> contract between Wye Oak and the MoD, including but not limited to, Wye Oak's
> breach and/or violation of Wye Oak obligations . . . (c) to fully and satisfactorily
> perform all of Wye Oak's obligations under the alleged purported contract between
> Wye Oak and the MoD, inclusive of recovery and rehabilitation of a sufficient
> number of armored vehicles in sufficient time for such armored vehicles to be
> deployed as part of the ISF supporting the January 2005 national legislative
> elections.

ECF No. 129; ECF No. 139. Iraq and MoD have established that a genuine issue of material fact

exists regarding this affirmative defense.

Wye Oak presented MoD with three invoices in October 2004. MoD contends that these

invoices constituted Wye Oak's proposal and offer to perform the items listed in the invoices. ECF

No. 242; *see* Wye Oak Invoices Nos. MUQ001, TAJI001, MUQ002, ECF No. 122-7. MoD alleges

that it accepted Wye Oak's offer to perform the services listed on the invoices. However, MoD

contends that Wye Oak did not perform the invoiced work, which needed to be completed by January 2005 for the Iraqi elections, because Wye Oak recalled its American employees and contractors from Iraq after Wye Oak's president, Dale Stoffel, was killed on December 8, 2004. Iraq and MoD support their assertion that Wye Oak recalled its American employees and contractors from Iraq by pointing to an email from Bill Felix, who took over as president and CEO of Wye Oak, sent on January 25, 2005 that explained "given the tragic and very suspicious circumstances during the week of December 6, 2004, management of Wye Oak recalled all American employees and contractors from the Iraqi theater for the obvious reasons of personal safety. We are now prepared to resume direct management of IMERP [Iraqi Military Equipment Recovery Program]." E-mail from William J. Felix & E-mail from LTG David Petraeus, ECF No. 242-17. General David Petraeus responded to this email by stating he hoped to see Wye Oak back in operation soon. *Id.* Iraq and MoD contend that these emails demonstrate that Wye Oak has admitted it abandoned the invoiced work, which constituted a material breach of the contract between Wye Oak and MoD and excused any further MoD performance. ECF No. 242.

As discussed *supra*, the Court must believe the evidence of the non-moving party and draw all justifiable inferences in the non-moving party's favor in making a summary judgment determination. *Anderson*, 477 U.S. at 255. Although the evidence presented by Iraq and MoD is not substantial, a decision-maker could reasonably find for Iraq and MoD that Wye Oak indeed abandoned Iraq and breached its contract obligations, which excused any obligation MoD may have owed Wye Oak. This is especially the case because the Court must draw all inferences in Iraq and MoD's favor at this stage, and Wye Oak has not presented any evidence accompanying its motion for summary judgment that it did not abandon Iraq and was responsible for the completion

of the invoiced work. Therefore, the Court will deny Wye Oak's motion for summary judgment on this issue.

      5.    *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 7 will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "[e]ach and every of Wye Oak's alleged rights, claims and obligations that Wye Oak seeks to enforce against [Iraq or MoD] are, by Wye Oak's conduct, agreement or otherwise, barred by the doctrine of estoppel." ECF No. 129; ECF No. 139. Iraq and MoD present evidence that they allege shows Wye Oak is deemed to have accepted a financial arrangement in which MoD paid Raymond Zayna of GIG for the three invoices. This evidence is sufficient to defeat Wye Oak's summary judgment motion on this issue.

Iraq and MoD argue that the three invoices submitted by Wye Oak to MoD fall outside of the compensation provision of the BSA. Section 5(a) of the BSA states: "The Ministry shall pay Broker [Wye Oak] a commission of minimum of ten percent (10%) based on the Contract Value set out in each Sales Contract entered into by the Ministry, pursuant to this Agreement. With respect to Refurbished Military Equipment, the Ministry will pay Broker ten percent (10%) of such equipment's refurbishment cost." Broker Services Agreement, § 5(a), ECF No. 122-2. Iraq and MoD interpret this provision as only applying to Wye Oak's invoices for 10% commissions on Sales Contracts. ECF No. 242. This interpretation is bolstered by Wye Oak's own statement in its First Amended Complaint regarding the negotiations leading up to the BSA that "Stoffel's proposal was accepted, namely that the cost of refurbishing the producing Iraqi military equipment for use by the new Iraqi security forces would be financed entirely by salvaging and selling abroad as scrap metal the unusable Iraqi military equipment and infrastructure." ECF No. 122 at ¶ 15. At the summary judgment stage, the Court must draw all justifiable inferences in Iraq and MoD's

favor and therefore finds that evidence exists for a reasonable decision-maker to determine that the BSA's compensation provision only covered invoices regarding commission on sales contracts. The three invoices submitted by Wye Oak to MoD are not for sales contracts and therefore could reasonably be found to fall outside of the BSA. Wye Oak Invoices, ECF No. 122-7.

Iraq and MoD allege that MoD was therefore allowed to demand a different payment arrangement from the one set forth in the BSA. Iraq and MoD allege that an arrangement was reached at a meeting on October 19, 2004, in which MoD would receive a bank guarantee from a third party, GIG, to protect MoD from the possibility that Wye Oak could accept the payment and then not adequately perform the work. To support these assertions, Iraq and MoD present the Court with a report from Patrick Marr, then-Counselor to MoD, documenting that a meeting was held on October 19, 2004 between Dale Stoffel (Wye Oak's president), Raymond Zayna of GIG, and representatives of MoD. Memorandum from Mr. Patrick Marr, ECF No. 242-5. Marr stated that "[i]n summary of the meeting, Mr. Bruska [Shaways] [the Secretary General of MoD] ratified the three invoices and the financial plan." *Id.* Iraq and MoD contend that Marr was referring to a payment mechanism in which GIG presented MoD with a bank guarantee to secure payment to Wye Oak, which occurred via three MoD checks made payable to Raymond Zayna. This contention appears to be supported by the "Contract of Financial Agreement" that was reached between MoD and GIG on October 19, 2004. Talib Certificate Authenticity Business Records, Contract of Financial Agreement, at Attachment A, ECF No. 242-5 [hereinafter Contract of Financial Agreement, ECF No. 242-5]. The Contract of Financial Agreement declared that MoD had "signed contract with Wye Oak Technology Inc. to implement the program of rehabilitation and repair of military equipment" and GIG had "committed to funding this program of (Wye Oak

Technology Inc.)." *Id.* The Contract of Financial Agreement stated that "[MoD] gives to [GIG] several payments under the bank guarantees as far as the amount of such payments for purposes of implementation of the contract." *Id.* Iraq and MoD appear to be making a circumstantial connection based on the fact that the Contract of Financial Agreement was reached on the same day as the meeting referred to in Marr's memorandum to allege that this Contract of Financial Agreement was the "financial plan" that Marr reported was ratified during the meeting.

Further, Iraq and MoD state that Mr. Stoffel did not object to this financial arrangement. Iraq and MoD argue that under Iraqi law, Mr. Stoffel's presence at the October 19, 2004 meeting and failure to express disagreement with the financial arrangement that was allegedly agreed to constitutes acceptance on his part. Article 81 of the Iraqi Civil Code declares: "No statement will be attributed to a silent person but silence in the course of need for expression will be deemed to be an acceptance." Iraqi Civil Code (Law No. 40 of 1951), ECF No. 242-7. Iraq and MoD's Iraqi law expert, Fakhri Kadhum, contends that

> there was need for Wye Oak expression to MoD of any disagreement with payment by MoD of the Three Wye Oak Pro Forma Invoices to GIG because the MoD payment was being made (in accordance with the Financial Services Agreement) to a person other than Wye Oak. A party who is present when an agreement is being made to pay the party's money to a third person, without the party's consent, is need of immediate expression of disagreement. Thus, under Article 81(1), Mr. Stoffel's silence is deemed to be Wye Oak's acceptance of the Financial Services Agreement and MoD's payment of the Three Wye Oak Pro Forma Invoices to GIG/Raymond Zayna in accordance with the Financial Services Agreement.

Expert Report of Fakhri Abdul Hussain Kadhum, at III-9, ECF No. 242-9. Iraq and MoD also cite Supreme Court precedents for the proposition that a party is estopped by silence when there is an obligation to speak and such duty to speak arises when "the party maintaining silence knew that someone else was relying upon that silence, and either acting or about to act as he would not have done, had the truth been told." *Wiser v. Lawler*, 189 U.S. 260, 270–72 (1903) (citation omitted).

Iraq and MoD therefore posit that Wye Oak should be estopped from refuting that it approved the financial arrangement allegedly reached at the October 19, 2004 meeting because MoD relied on Mr. Stoffel's silence during the meeting and Mr. Stoffel knew that if he did not object to the financial arrangement that MoD and GIG would finalize the agreement.

The Court finds that Iraq and MoD have presented enough evidence to avoid summary judgment on this affirmative defense because the Court must draw all reasonable inferences in their favor at this stage. The evidence presented by Iraq and MoD indeed raises a genuine issue of material fact such that a reasonable decision-maker could determine that Mr. Stoffel's failure to express disagreement with the financial arrangement allegedly reached at the October 19, 2004 meeting estopped Wye Oak from refuting that it approved the agreement. Therefore, the Court will deny Wye Oak's motion for summary judgment on this affirmative defense.

6. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 9 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "The claims asserted in the FAC are barred, in whole or in part, because, at all times, Wye Oak failed to take reasonable efforts to mitigate its damages, if any." ECF No. 129; ECF No. 139. Iraq and MoD have not presented any evidence regarding this affirmative defense in their opposition to Wye Oak's motion for summary judgment. This means that Iraq and MoD are inherently unable to raise a genuine issue of material fact on this issue. Therefore, the Court will grant Wye Oak's motion for summary judgment on this affirmative defense.

7. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 10 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "Wye Oak is precluded from obtaining the asserted remedies because Wye Oak has come

before the Court with unclean hands." ECF No. 129; ECF No. 139. Iraq and MoD have not presented any evidence regarding this affirmative defense in their opposition to Wye Oak's motion for summary judgment. This means that Iraq and MoD are unable to raise a genuine issue of material fact on this issue. Therefore, Wye Oak is entitled to judgment as a matter of law on this issue as Iraq and MoD have failed to make any showing to establish the existence of any element of this affirmative defense, which is a claim that Iraq and MoD bear the burden of proof on at trial. *See Celotex Corp.*, 477 at 322–23. Accordingly, the Court will grant Wye Oak's motion for summary judgment on this affirmative defense.

8. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 11 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "Any claims for damages that Wye Oak has against [Iraq or MoD], if valid, are offset by claims against Wye Oak." ECF No. 129; ECF No. 139. Iraq and MoD stated in their opposition to Wye Oak's motion for summary judgment that they are no longer pursing this offset affirmative defense. Therefore, the Court will grant Wye Oak's summary judgment motion on this affirmative defense.

9. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 12 will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "The claims asserted in the FAC [First Amended Complaint] are barred, in whole or in part, by the doctrines of release and payment." ECF No. 129; ECF No. 139. Iraq and MoD have put forward sufficient evidence to defeat Wye Oak's summary judgment motion on this issue.

As discussed *supra* in the Court's analysis of affirmative defense 7, evidence exists for a reasonable decision-maker to determine the three invoices submitted by Wye Oak to MoD fall

outside of the BSA. Further, Iraq and MoD have presented evidence that creates a genuine issue of material fact as to whether a financial arrangement—the Contract of Financial Agreement—was reached at the meeting on October 19, 2004, in which MoD would receive a bank guarantee from a third party, GIG, to protect MoD from the possibility Wye Oak could accept the payment and then not adequately perform the work stated in the three invoices. The Contract of Financial Agreement declared MoD had "signed contract with Wye Oak Technology Inc. to implement the program of rehabilitation and repair of military equipment" and GIG had "committed to funding this program of (Wye Oak Technology Inc.)." Contract of Financial Agreement, ECF No. 242-5. This contract stated "[MoD] gives to [GIG] several payments under the bank guarantees as far as the amount of such payments for purposes of implementation of the contract." *Id.* Finally, Iraq and MoD present MoD's internal check issuance authorizations for amounts that are equivalent to the amounts in the three invoices submitted by Wye Oak paid to Mr. Zayna. Talib Certificate Authenticity Business Records, at Attachments C–H, ECF No. 245-5.

Iraq and MoD argue that this demonstrates MoD fulfilled its obligations by paying Mr. Zayna and is therefore released from any further obligations that may be owed to Wye Oak. Given that the Court must believe the evidence of the non-moving parties and draw all justifiable inferences in their favor at the summary judgment stage, the Court finds that Iraq and MoD have indeed presented sufficient evidence to demonstrate there is a genuine dispute as to material facts such that a reasonable decision-maker could find for Iraq and MoD regarding this affirmative defense. Therefore, the Court will deny Wye Oak's motion for summary judgment on this issue.

        10.    *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 13 will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "Any damage Wye Oak suffered was a direct and proximate result of its own misconduct and

actions." ECF No. 129; ECF No. 139. Iraq and MoD have put forward several theories regarding this affirmative defense that apply differently to the two types of damages that Wye Oak seeks.

Wye Oak seeks damages of "payment of all amounts due under the invoices submitted to the Defendants in October 2004 and repeatedly thereafter, plus accrued interest." Pl.'s First Am. Compl., ECF No. 122 [hereinafter ECF No. 122]. In response to this requested relief, Iraq and MoD present two theories as to why they have an affirmative defense.

First, Iraq and MoD posit that Wye Oak materially breached its obligations to MoD to continue performance of invoiced work when Wye Oak abandoned the invoiced work, which permitted MoD to substitute GIG for Wye Oak. The evidence that supports this argument has already been analyzed *supra* regarding affirmative defense 6(C). As with affirmative defense 6(c), although the evidence presented by Iraq and MoD is not substantial, a decision-maker could reasonably find for Iraq and MoD that Wye Oak indeed abandoned Iraq and breached its contract obligations, which excused any obligation MoD may have owed Wye Oak.

Second, Iraq and MoD argue that Wye Oak failed to receive permission from the Ministry of Trade to act as a broker and therefore could not have consummated sales contracts. Iraq and MoD present evidence under Iraq's Law of Trade, "A non-Iraqi person can exercise a commercial activity in accordance with the requirements of the national plan by permission from the Concerned Entity." Article 8 of the Law of Trade (Law No. 30 of 1984), ECF No. 253-2. They allege that even if Wye Oak is correct that the invoices fall under the BSA, the compensation provision of the BSA consists of a commission of at least ten percent of any sales contract brokered by Wye Oak and entered into by MoD and ten percent of equipment refurbishment cost. Broker Services Agreement, § 5(a), ECF No. 122-2. Iraq and MoD conclude that Wye Oak's damage claims stemming from the three invoices are "broker fees" that Wye Oak claims are due from MoD

for MoD's alleged breach of the BSA, but that Wye Oak has failed to produce any evidence it ever applied for and received permission to act as a broker from the Ministry of Trade. Iraq and MoD therefore argue that Wye Oak cannot claim any damages because Wye Oak failed to obtain permission to act as a broker from the Iraqi government. They cite several Iraqi court cases in which a plaintiff's failure to prove the plaintiff applied for and received the required permission necessitated that the court deny any claims for broker fees and dismiss the lawsuit. ECF No. 242-11; ECF No. 253-3. Thus, Iraq and MoD contend that Wye Oak is unable to obtain relief on this claim as a result of its omission to obtain the required permission. Because the Court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor at this stage, the Court that finds that Iraq and MoD have raised a genuine issue of material fact regarding this affirmative defense.

Also, Wye Oak seeks damages of "the loss of profits and fees, plus accrued interest, which the Plaintiff reasonably expected to earn through full performance of the Contract by refurbishment work and the sale of military scrap materials." ECF No. 122. Iraq and MoD argue that any "lost commission" on potential future sales contracts are a result of Wye Oak's own failure to perform. Iraq and MoD rely on David Stoffel's, Wye Oak's president, deposition testimony that indicated Wye Oak did not consummate any sales contracts. ECF No. 242-15. Wye Oak has not produced any evidence that it ever entered into any sales contracts. Iraq and MoD contend that this shows that Wye Oak cannot reasonably expect to have earned profits and fees and should not be able to recover such damages because Wye Oak did not actually have any sales contracts from which it could have earned such profits and fees. Because the Court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor at this stage, the Court that finds that Iraq and MoD have raised a genuine issue of material fact regarding this affirmative defense to

Wye Oak's claim for damages of the loss of profits and fees that Wye Oak expected to earn through performance of the contract.

Accordingly, the Court will deny Wye Oak's motion for summary judgment regarding this affirmative defense.

11.     *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 14 will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "[Iraq and MoD] did not breach any lawful duty owed to Plaintiff for the transaction and events that are the subject matter of the FAC [First Amended Complaint]." ECF No. 129; ECF No. 139. Wye Oak argues that this is actually a denial and not an affirmative defense. However, Iraq's argument on this issue is that Iraq was not a party to any contract between MoD and Wye Oak. This is an affirmative defense. Separately, MoD's argument on this issue is that the Iraqi Prime Minister prohibited the export of scrap from Iraq and thus MoD lacked the legal authority to enter into any sales contracts for scrap sales after December 2004. This is an affirmative defense that the contents of the BSA were legally prohibited. The Court will address Iraq and MoD's separate arguments on these issues.

a.      The Court will deny Wye Oak's motion for summary judgment regarding Iraq's affirmative defense that it was not a party to any contract with Wye Oak.

Iraq was not a signatory to any contract with Wye Oak. Iraq argues that MoD was not Iraq's agent and therefore Iraq was not a party to the BSA or any contract with Wye Oak that MoD entered into. Iraq alleges that MoD entered into all contracts with Wye Oak on its own authority as a separate juridical person from Iraq. Accordingly, Iraq contends that any breach of contract by MoD cannot be attributable to Iraq.

This Court has previously held in this case that MoD and Iraq are separate juridicial entities as a matter of Iraqi law. *Wye Oak Tech, Inc. v. Republic of Iraq*, 72 F. Supp. 3d 356, 360 (D.D.C. 2014). The Supreme Court has held that the FSIA does not "affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983) (*Bancec*). This conclusion is rooted in the FSIA's provision that a foreign state against which suit is brought under the statute "shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. Thus, "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *Bancec*, 462 U.S. at 622 n.11.

A wrinkle in this general rule that state substantive law governs FSIA claims arises in the context of attribution of liability among state entities with separate juridical status. The Court observed in *Bancec* that the FSIA is silent "concerning the rule governing the attribution of liability *among* entities of a foreign state." *Id.* (emphasis in original). The Court was considering whether a juridical entity separate from Cuba under Cuban law could be held liable for actions taken by the state. *Id.* at 621–22. After concluding that the FSIA did not govern the matter, the Court held that "principles . . . common to both international law and federal common law" should be applied to determine the instrumentality's liability for the state's actions. *Id.* at 621, 623. Thus, under FSIA causes of action arising out of state substantive law, federal courts apply federal common law to the attribution of liability among state entities. Courts of appeals, including the D.C. Circuit, have interpreted the Supreme Court's opinion in *Bancec* similarly. *See, e.g., GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 814 (D.C. Cir. 2012) ("*Bancec* addressed the liability of a foreign, state-owned firm for the acts of its sovereign parent."); *Frontera Res. Azerbaijan Corp. v. State Oil Co.*

*of the Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) (describing *Bancec* as "ask[ing] when a state instrumentality can be treated like its state for 'the attribution of liability'").

Under *Bancec*, "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Bancec*, 462 U.S. at 626–28 (describing this as a "presumption" of respect for separate legal status). This presumption may be triggered by an "unequivocal statement in [an entity's] enabling law establishing its independent juridical identity." *DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 212 (D.D.C. 2014); *see also Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed'n*, 361 F.3d 676, 686 (2d Cir. 2004) (holding that, under Russian law, the Russian Government was not a separate party from the Russian Federation, in part, because the Federation had not shown that the "Government is a separate juridical entity that can sue and be sued in Russian courts . . . for any legal obligations").

Ultimately, this Court held that MoD and Iraq are separate juridical entities as a matter of Iraqi law. According to an expert opinion provided to the Court, the Law of Executive Authority (Law Number 50 of 1964) establishes the "legal structure of the State of Iraq and the Ministries of the Government of Iraq." Dr. Ali Kadhum Aziz Decl. ¶ 9, ECF No. 103-1. That law states that "[t]he Cabinet and each Ministry of the Ministries has a legal personality to exercise the rights stipulated in the Civil Code and other Laws and each of them shall be regarded as the meaning of the word 'Government.'" *Id.*, Ex. 1 at 17. The Civil Code at Article 47 states that "juristic persons" include the State—i.e., Iraq—and the "administrations and the public institutions which by virtue of the law are granted a juristic personality independent of the State's personality in accordance with the conditions laid down herein." 1 *Law in Iraq: A Document Companion* 267 (Chibli Mallat & Hiram Chodosh eds., 2012). Article 48 of the Civil Code sets forth the rights of juristic persons,

including that each such person has its own patrimonium[1] and the right of litigation. *Id.* at 268. These provisions demonstrated to the Court that MoD is a separate juridical entity from Iraq, by operation of the Law of Executive Authority, and that this law sets out that MoD has the right to exercise rights accruing to juridical persons under the Civil Code. Civil Code Article 47 confirms the effect of the Law of Executive Authority—it states that juridical persons include "public institutions which by virtue of the law [the Law of Executive Authority] are granted a juristic personality independent of the State's personality." *Id.*

Although MoD is presumed to be a legally separate entity from Iraq for purposes of determining liability in this case, the separate status accorded by the foreign state's own laws is not the last word on the matter. The presumption of separate status—and therefore the presumption of non-attribution of liability—will yield "if a foreign 'corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created' . . . or when 'broader equitable principle[s]' dictate that separate treatment 'would work fraud or injustice.'" *GSS Grp. Ltd.*, 680 F.3d at 814 (quoting *Bancec*, 462 U.S. at 629). In general, the test for determining when the presumption of separateness will give way is not a "mechanical formula;" instead, it involves an "equitable" determination in light of the facts presented by the particular case. *See Bancec*, 462 U.S. at 632–34.

Under the agency exception to the presumption of separate status, a sovereign may assert "complete domination of the subsidiary" such that the entities are not distinct in reality, but instead act as one. *DRC, Inc.*, 71 F. Supp. 3d at 214–15 (quoting *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000)). The exception can also be met when

---

[1] Black's Law Dictionary defines patrimony—identified as a synonym of patrimonium—as, within civil law systems, "All of a person's assets and liabilities that are capable of monetary valuation and subject to execution for a creditor's benefit." *Black's Law Dictionary* (10th ed. 2014).

the sovereign exercises sufficient control over the other entity to allow it to be held liable under ordinary principles of agency law. *Id.* (quoting *Transamerica Leasing, Inc.*, 200 F.3d at 849). Circumstances that might warrant a disregard for the separate juridical status of an entity under the exception for instances of fraud or injustice include, for example, instances where the "foreign sovereign intentionally seeks to gain a benefit while using the legally separate status of its instrumentality as a shield to guard against concomitant costs or risks;" situations where the "sovereign otherwise unjustly enriches itself through the instrumentality;" or cases where the "instrumentality has been cloaked with the apparent authority of the sovereign, and the complaining party reasonably relies upon that manifestation of authority." *Id.* at 217–18 (citing *Transamerica Leasing, Inc.*, 200 F.3d at 850, 854 and *Bancec*, 462 U.S. at 630–33).

The inquiry into whether the presumption of separate status has been overcome is necessarily fact dependent. Although Iraq has presented this affirmative defense, Wye Oak bears the burden of presenting sufficient evidence to establish that the agency exception or exception for instances of fraud or injustice to the presumption of separate status exists. Wye Oak has not presented sufficient evidence at this stage for the Court to be able to make the determination as a matter of law that the presumption should yield. As discussed *supra*, Wye Oak did not produce evidence to support its motion for summary judgment and the record at the time Wye Oak filed its motion for summary judgment did not contain evidence to show there is no genuine dispute regarding the factual circumstances of the relationship between MoD and Iraq.[2] Therefore, the Court will deny Wye Oak's motion for summary judgment regarding this affirmative defense.

---

[2] The Court notes that Wye Oak presented evidence to support its claim that the agency exception and exception for instances of fraud or injustice to the presumption of separate status applies in its opposition to Iraq and MoD's cross-motion for summary judgment and Wye Oak's accompanying statements of facts to that opposition filing. *See* ECF No. 262; ECF No. 263; ECF No. 264; ECF No. 265; ECF No. 266. As discussed previously in this opinion, the Court will not consider these filings for the purposes of deciding the issues in this opinion because the Court has struck Iraq and MoD's cross-motion for summary judgment as untimely. Wye Oak's response and accompanying statements of

b.    The Court will deny Wye Oak's summary judgment motion regarding MoD's affirmative defense that the contents of the BSA were legally prohibited.

Iraq and MoD argue that Wye Oak failed to receive permission from the Ministry of Trade to act as a broker and therefore could not have consummated sales contracts. Iraq and MoD present evidence that under Iraq's Law of Trade, "A non-Iraqi person can exercise a commercial activity in accordance with the requirements of the national plan by permission from the Concerned Entity." Article 8 of the Law of Trade (Law No. 30 of 1984), ECF No. 253-2. They allege that even if Wye Oak is correct that the invoices fall under the BSA, the compensation provision of the BSA consists of a commission of at least ten percent of any sales contract brokered by Wye Oak and entered into by MoD and ten percent of equipment refurbishment cost. Broker Services Agreement, § 5(a), ECF No. 122-2. Iraq and MoD conclude that Wye Oak's damage claims stemming from the three invoices are "broker fees" that Wye Oak claims are due from MoD for MoD's alleged breach of the BSA, but that Wye Oak has failed to produce any evidence that it ever applied for and received permission to act as a broker from the Ministry of Trade. Iraq and MoD therefore argue that Wye Oak cannot claim any damages because Wye Oak failed to obtain permission to act as a broker from the Iraqi government. They cite several Iraqi court cases in which a plaintiff's failure to prove the plaintiff applied for and received the required permission necessitated that the court deny any claims for broker fees and dismiss the lawsuit. ECF No. 242-11; ECF No. 253-3. Thus, Iraq and MoD contend that Wye Oak is unable to obtain relief on this claim as a result of its omission to obtain the required permission. Because the Court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor at this stage, the Court that finds that Iraq and MoD have raised a genuine issue of material fact regarding this

---

facts were not filed as part of Wye Oak's original motion for summary judgment and were not part of the record at the time that Wye Oak's motion for summary judgment was filed.

affirmative defense. Accordingly, the Court will deny Wye Oak's motion for summary judgment regarding this affirmative defense.

> 12. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 15 will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "During the period for performance of the alleged contract, Wye Oak failed to perform; accordingly, any claim for payment by Wye Oak constitutes a claim for unjust enrichment and payment in whole or in part on any Wye Oak claim in this action would constitute unjust enrichment of Wye Oak." ECF No. 129; ECF No. 139. Iraq and MoD rely on the same evidence for this affirmative defense that has been presented to support other affirmative defenses previously analyzed in this opinion. Iraq and MoD use the same evidence presented in support of affirmative defense 6(c) to allege that Wye Oak abandoned Iraq and did not perform the invoiced work that needed to be completed by January 2005 for the Iraqi elections. Bill Felix, Wye Oak's president and CEO, sent an email on January 25, 2005, that indicated Wye Oak recalled its American employees and contractors from Iraq after Dale Stoffel was killed in December 2004. E-mail from William J. Felix & E-mail from LTG David Petraeus, ECF No. 242-17. General Petraeus responded by saying he hoped to see Wye Oak back in operations soon, which Iraq and MoD argue further indicates Wye Oak had abandoned its obligations to perform the invoiced work in Iraq. *Id.* Iraq and MoD also rely on David Stoffel's deposition testimony as evidence Wye Oak did not consummate any sales contracts, just as Iraq and MoD did to support their affirmative defense 13. David Stoffel Dep., ECF 242-15.

In addition, Iraq and MoD contend that MoD already fulfilled any obligations owed to Wye Oak by paying Raymond Zayna under the Contract of Financial Agreement. The evidence presented to support this argument was analyzed *supra* in discussing affirmative defense 12. Iraq

and MoD therefore posit that because any obligations were already fulfilled by paying Mr. Zayna, any further award to Wye Oak would constitute unjust enrichment.

Given that the Court must believe the evidence of the non-moving parties and draw all justifiable inferences in their favor in making a summary judgment determination, the Court finds that Iraq and MoD have indeed presented sufficient evidence to demonstrate there is a genuine dispute as to material facts regarding this affirmative defense. Iraq and MoD have presented sufficient evidence to show that a decision-maker could reasonably find that Wye Oak abandoned Iraq and did not perform the invoiced work. This would mean that any award to Wye Oak for the invoiced work would constitute unjust enrichment. Also, Iraq and MoD have presented sufficient evidence that a decision-maker could reasonably find that Iraq and MoD already fulfilled any obligations owed to Wye Oak by paying Mr. Zayna under the Contract of Financial Agreement. This would mean that any further award to Wye Oak would constitute unjust enrichment. Thus, the Court will deny Wye Oak's motion for summary judgment regarding this affirmative defense.

13.  *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 16 will be denied.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "During the period for performance of the alleged contract, Wye Oak failed to perform; accordingly, Wye Oak: failed to provide consideration for any payment Wye Oak claims." ECF No. 129; ECF No. 139. Iraq and MoD rely on the same evidence for this affirmative defense that has been presented to support other affirmative defenses previously analyzed in this opinion. Iraq and MoD use the same evidence presented in support of affirmative defense 6(c) to allege that Wye Oak abandoned Iraq and did not perform the invoiced work that needed to be completed by January 2005 for the Iraqi elections. Bill Felix, Wye Oak's president and CEO, sent an email on January 25, 2005, that indicated Wye Oak recalled its American employees and contractors from

Iraq after Dale Stoffel was killed in December 2004. E-mail from William J. Felix & E-mail from LTG David Petraeus, ECF No. 242-17. General Petraeus responded to this email by saying he hoped to see Wye Oak back in operation soon, which Iraq and MoD argue further indicates Wye Oak had abandoned its obligations to perform the invoiced work in Iraq. *Id.* The Court examined this evidence when analyzing affirmative defense 6(c). Iraq and MoD also rely on David Stoffel's deposition testimony as evidence that Wye Oak did not consummate any sales contracts. David Stoffel Dep., ECF 242-15. Iraq and MoD used this evidence to support its affirmative defense 13, and the Court analyzed this evidence when discussing that affirmative defense. Ultimately, the Court finds that Iraq and MoD have presented sufficient evidence at this stage to create a genuine dispute of material fact as to whether Wye Oak performed the work in the contract and therefore provided consideration. Thus, the Court will deny Wye Oak's motion for summary judgment regarding affirmative defense 16.

14. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 17 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that:

Each Wye Oak claim for payment is fraudulent, and, therefore, can provide no basis whatsoever for any recovery in this action, by virtue of each of the following:
A. Wye Oak failed to perform during the period for performance of the alleged contract;
B. Wye Oak thereby failed to satisfy all conditions precedent for each payment Wye Oak claims;
C. Wye Oak failed to provide consideration for each payment Wye Oak claims;
D. In making the claims for payments in this action, Wye Oak knowingly and intentionally made the following materially false statements and materially false representations of fact:
(i) Wye Oak had performed during the period of performance of the alleged contract;
(ii) Wye Oak had satisfied all conditions precedent for each payment Wye Oak claims;

> (iii) Wye Oak had provided consideration for each payment Wye
> Oak claims; and
>
> E. Wye Oak premised its claims for payment on each of the foregoing
> materially false statements and materially false representations of fact.

ECF No. 129; ECF No. 139. Iraq and MoD have not presented sufficient evidence such that a reasonable decision-maker could return a verdict for them on this issue. As previously discussed *supra* when analyzing affirmative defenses 6(c), 13, 14, 16, Iraq and MoD have presented evidence to create a genuine dispute of material fact as to whether Wye Oak failed to perform, Wye Oak failed to satisfy all conditions precedent, and Wye Oak failed to provide consideration for the payments Wye Oak claims. However, Iraq and MoD have not presented any evidence to support their allegation that Wye Oak knowingly and intentionally made materially false statements and made any materially false representations of the facts in this case. Iraq and MoD have simply not provided any reason for the Court to believe Wye Oak's claim is fraudulent. Therefore, the Court will grant Wye Oak's motion for summary judgment regarding this affirmative defense.

15. *Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 18 will be granted.*

Wye Oak moved for summary judgment regarding Iraq and MoD's affirmative defense that "[Iraq and MoD] hereby gives notice that [Iraq or MoD] intends to rely upon any other defense that may become available or appear during the discovery proceedings in this case." Iraq and MoD do not identify any other affirmative defenses that they intend to rely upon. Therefore, the Court will grant Wye Oak's motion for summary judgment on affirmative defense 18.

## IV. Conclusion

Accordingly, the Court will **DENY** defendants' cross-motion for summary judgment and **GRANT IN PART** and **DENY IN PART** plaintiff's motion to strike defendants' cross-motion for summary judgment because defendants filed this motion after the deadline for filing dispositive

motions set by this Court in its scheduling order. Iraq and MoD's untimely filed cross-motion for summary judgment will not be considered as a motion for summary judgment, but will be considered as an opposition to Wye Oak's motion for summary judgment. The Court will **DISMISS AS MOOT** Iraq and MoD's motion to strike Wye Oak's statements of material facts filed as part of Wye Oak's opposition to Iraq and MoD's cross-motion for summary judgment. The Court will **DISMISS AS MOOT** Wye Oak's motion to strike certain declarations submitted with Iraq and MoD's reply in support of their cross-motion for summary judgment. The Court will **DISMISS AS MOOT** Iraq and MoD's motions for extension of time to file their reply regarding their cross-motion for summary judgment. This is because the Court will not consider Iraq and MoD's untimely filed cross-motion for summary judgment as a motion for summary judgment. The Court will **GRANT IN PART** and **DENY IN PART** plaintiff's motion for summary judgment. The Court will:

- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 4;
- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 5;
- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 6(c) will not be granted
- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 7;
- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 9;
- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 10;
- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 11;
- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 12;
- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 13;
- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 14;
- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 15;

- **DENY** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 16;
- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 17; and
- **GRANT** Wye Oak's summary judgment motion regarding Iraq and MoD's affirmative defense 18.

Finally, to ensure that Iraq and MoD can indeed fulfill the requirements to present admissible evidence at trial, the Court **ORDERS** that Iraq and MoD must present the documents attached to Mr. Talib and Ms. Muneer's declarations in admissible form at the pretrial hearing scheduled for December 7, 2018. A separate order will issue on this date.

SIGNED this _14th_ day of November, 2018.

Royce C. Lamberth

United States District Judge