UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WYE OAK TECHNOLOGY, INC.,<br>Plaintiff,<br><br>v.<br><br>REPUBLIC OF IRAQ *et al.*,<br>Defendants. | Civil No. 1:10-cv-01182-RCL |

## MEMORANDUM OPINION

At the close of trial, the Court ordered defendants Republic of Iraq and the Iraqi Ministry of Defense (MoD) to file a statement of points and authorities on the admissibility of documents marked DX 53 and DX 58, and related documents. Documents marked DX 55–57 are related to DX 53 and DX 58. Iraq and MoD have sought to admit these documents as business records. Defs.' Mot. to Admit Trial Exs., ECF No. 392. Plaintiff Wye Oak contends that these exhibits are not admissible because they are not properly authenticated records of a regularly conducted activity, and therefore cannot be admitted under the business records exception to the rule against hearsay. Pl.'s Mem. in Opp'n, ECF No. 395. Wye Oak further argues that DX 53 and DX 58 are incomplete. *Id.* The Court finds that DX 53 and DX 58, along with related documents DX 55–57, are business records and shall be admitted as evidence.

**I.  Background**

DX 53 and DX 55–58 all deal with the alleged ban on exporting scrap metal from Iraq. DX 53 is a letter from July 2004 from the then-General Secretary of the Council of Ministers, Dr. Zuheir Abulghani Humadi, communicating the Prime Minister's approval of the Ministry of Industry and Minerals' proposal to stop exporting scrap materials, with the exception of

1

exporting some materials of a military nature, conditioned upon the Prime Minister and Supreme Economic Committee's approval. ECF No. 392-1. DX 55 is a letter from June 2004 from the then-Minister of Trade, Mohamed Mustafa Al Jubory, to the Council of Ministers regarding exporting scrap. Muneer Second Suppl. Certificate of Authenticity of Business Rs. Attach. A, ECF No. 359-1 [hereinafter Muneer Second Suppl. Certificate, ECF No. 359-1]. DX 56 is a letter from June 2004 from the then-Secretary General of the Council of Ministers, Muhy Kadhum Al-Khateeb, to the Ministry of Industry, Ministry of Trade, and Ministry of Finance regarding the Prime Minister's decision to form a committee of representatives from these ministries to study the issue of exporting scrap and to provide recommendations to the Council of Ministers. *Id.* at Attach. B. DX 57 is a committee report from July 2004 signed by the committee chairman and representatives from the Ministry of Finance, Ministry of Trade, Ministry of Industry and Minerals, and General Commission of Customs regarding the committee's findings about exporting scrap and recommendations on the subject. *Id.* at Attach. C. This committee report was sent to the Minister of Trade. DX 58 is a letter from the then-General Secretary of the Council of Ministers, Dr. Humadi, from December 2004 emphasizing that scrap materials are prohibited from being sold to private entities and ordering ministries to deliver excess scrap free of charge to state-owned companies belonging to the Ministry of Industry and Minerals. ECF No. 392-2. Ms. Wafaa Muneer, the Senior Manager of Foreign Litigation of the Ministry of Justice's Legal Department, obtained copies of DX 53 and DX 55–58 from the Ministry of Trade's archives.

## II. DX 53 and DX 55–58 Constitute Business Records

DX 53 and DX 55–58 are business records and are therefore admitted as evidence. The Federal Rules of Evidence permit the admission of:

> A record of an act, event, condition, opinion, or diagnosis if:

2

> (A) the record was made at or near the time—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these condition are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The certification option of Rule 902(12) applies to these documents because they are foreign records of a regularly conducted activity. Under Rule 902(12), the original or copy of a foreign records is self-authenticating if it meets the requirements of Rule 803(A)–(C), as shown by a certification of the custodian or another qualified person that is signed in a manner that subjects the maker to a criminal penalty in the country where the certificate was signed, if the certificate was false. Fed. R. Evid. 902(12). The proponent of the evidence must also give the adverse party reasonable notice of the intent to offer the record and make the record and certification available for inspection so that the adverse party has a fair opportunity to challenge the record. *Id.*

These documents are the business records of the Ministry of Trade. DX 55 was a letter from the Minister of Trade and DX 57 was a committee report that included a representative from the Ministry of Trade as a committee member and was sent to the Minister of Trade. These documents were therefore both clearly made by officials serving in the Ministry of Trade, and DX 57 was sent specifically to the Minister of Trade. DX 55 and DX 57 constitute business records of the Ministry of Trade. Although documents DX 53, DX 56, and DX 58 were from the General Secretary of the Council of Ministers, the copies produced by defendants came from the Ministry of Trade's archives. The D.C. Circuit has determined that "a record of which a firm takes custody is thereby 'made' by the firm within the meaning of the [business records

3

exception to the rule against hearsay] (and thus is admissible if all the other requirements are satisfied)." *United States v. Adefehinti*, 510 F. 3d 319, 326 (D.C. Cir. 2007). Ms. Muneer testified that under the standard record-keeping system of the Government of Iraq, decisions and directives of the Office of the Prime Minister and the Council of Ministers to the ministries are recorded in written documents, which are transmitted to the relevant ministries. Muneer Second Suppl. Certificate 3, ECF No. 359-1; Muneer Tr. at 19:8–25:9; 93:15–96:7; 126:12–127:13; 128:9–15; 137:17–140:21. Here, the letters concerned the Ministry of Trade and were therefore transmitted to that ministry and stored in the ministry's archives as a document governing Iraq's policy on the export of scrap. Accordingly, DX 53, DX 56, and DX 58 were adopted and relied upon by the Ministry of Trade such that the documents were business records of that ministry. *See id.* (approvingly citing decisions in which documents were deemed business records even though the business in custody of the documents did not create the records as long as the documents were adopted and relied upon).

Ms. Muneer is a "qualified person" under Rules 803(6) and 902(12) who can testify to the record-keeping system of Iraq's ministries. The D.C. Circuit has stated that a custodian or qualified witness does not need to have personal knowledge of the creation of a document. *Adefehinti*, 510 F. 3d at 325–26. The custodian or other qualified witness only needs to be "familiar with the record-keeping procedures of the organization." *United States v. Baker*, 458 F.3d 513, 18 (6th Cir. 2006); *see also United States v. Khatallah*, 278 F. Supp. 3d 1, 6–7 (D.D.C. 2017). Ms. Muneer has extensive experience as a lawyer in the Iraqi government managing foreign litigation. She was an attorney in the Legal Department of Iraq's Council of Ministers from 1993–2003 and has worked in the Legal Department of Iraq's Ministry of Justice since 2003 as the Senior Manager of Foreign Litigation. Ms. Muneer is responsible for managing the

production of documents, including managing the search and retrieval of documents maintained in the files of the Office of the Prime Minister, the Council of Minsters, and Iraq's various ministries. In her roles, Ms. Muneer has searched for and produced files from the Office of the Prime Minister, the Council of Ministers, and the Ministry of Trade on more than fifty occasions. Muneer Second Suppl. Certificate 4, ECF No. 359-1. As a result of her experience, Ms. Muneer has developed a familiarity with the record-keeping systems of these offices, including how, when, and under what circumstances documents are created, maintained, and stored by the Office of the Prime Minister, the Council of Ministers, and the Ministry of Trade. Although Ms. Muneer has not been employed by the Ministry of Trade and did not find the documents herself, this does not preclude her from being a qualified person as Wye Oak contends. The business records exception plainly allows individuals other than records custodians to certify that a record meets Rule 803(6)'s requirements, as the rule lists qualified person as an alternative to custodian. Such individuals do not have to be the ones to retrieve the records. And while it be more routine for qualified persons to be employed by the business whose records are being introduced as evidence, Ms. Muneer's role at the Ministry of Justice managing foreign litigation has provided her with significant knowledge of the record-keeping practices of the ministries across the Iraqi government. Ultimately, Ms. Muneer's familiarity with the Ministry of Trade's record-keeping system is sufficient to make her a qualified person under Rules 803(6) and 902(12).

Ms. Muneer's certification also meets Rule 902(12)'s requirement that it be signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed. The certification was made under the penalty of perjury under the laws of Iraq and the U.S. Muneer Second Suppl. Certificate 8, ECF No. 359-1.

Having established that Ms. Muneer is a qualified person and that her certification complied with Rule 902(12), the Court proceeds to examine whether Ms. Muneer's certification and *de bene esse* deposition testimony establish that DX 53 and DX 55–58 meet the remaining requirements of Rule 803(6). Ms. Muneer's declaration attests that DX 53, DX 56, and DX 58 were made at the time by the Council of Ministers, were kept in the regular course of activity by the relevant ministries, and were created as part of the regular activity of the Council of Ministers making policy decisions for the Iraqi government. *Id.* at 5–7. Also, Ms. Muneer's certification states that DX 55 was made at the time by the Minister of Trade, was kept in the regular course of activity by the Ministry of Trade, and was created as part of the regular activity of the Ministry of Trade discussing its role in carrying out Iraqi government policies and offering suggestions to improve the implementation of Iraq's policy on the export of scrap. Finally, Ms. Muneer's certification states that DX 57 was made at the time by the Ministry of Trade and Council of Ministers (presumably because a representative from the Ministry of Trade served on the committee that drafted this report and the committee was formed by the Council of Ministers), was kept in the regular course of activity by the Ministry of Trade, and was created as part of the regular activity of the Ministry of Trade and Council of Ministers crafting Iraq's policy on scrap material.

Ms. Muneer's *de bene esse* deposition testimony also evidences that DX 53 and DX 55–58 meet the requirements of Rule 803(6)(A)–(C). She described the Iraqi government's standard process of record-keeping, which applies to the creation, distribution, and maintenance of official records. Most official records are signed and dated when the documents are issued and contain unique serial numbers. Muneer Tr. at 19:8–22:1. Here, DX 53, DX 55, DX 56, and DX 58 have handwritten serial numbers, handwritten dates, and are signed by the respective authors.

6

Although DX 57 does not contain a unique serial number, this report was signed by all of the committee members and contains the date the report was signed. This committee was the group formed pursuant to DX 56. This indicates DX 57 was also produced pursuant to a standard record-keeping process. Decisions and directives of the Office of the Prime Minister and the Council of Ministers are transmitted to the relevant ministries, and the documents are maintained in the relevant ministries' files as records documenting the decisions. Muneer Tr. at 19:8–25:9; 93:15–95:4; 126:12–128:15; 137:17–139:15. Here, DX 53, DX 56, and DX 58 were stored in the Ministry of Trade's archives, as the Ministry of Trade was one of the ministries affected by these decision documents. Further, the Ministry of Trade receives and transmits reports as part of its regularly conducted activity. Muneer Second Suppl. Certificate 4, ECF No. 359-1. DX 55 was stored in the Ministry of Trade's archives, as it was a letter from the Minister of Trade, and DX 57 was stored in the Ministry of Trade's archives, as the committee that drafted DX 57 had a representative from the Ministry of Trade and the committee's report was specifically addressed to the Minister of Trade. Accordingly, DX 53 and DX 55–58 meet the requirements set forth in Rule 803(A)–(C).

Wye Oak contends that the documents are not records of regularly conducted activity because they were created in the months following the Coalition Provisional Authority's transfer of sovereignty to the Iraqi people and to Iraq's interim government. Wye Oak argues that the post-war chaos of Iraq in 2004 provides significant reason to doubt the "regularity" of any process that occurred during this time and diminishes the trustworthiness of the records. Wye Oak further alleges that there is not evidence that decrees other than the ones related to the scrap ban were issued by Iraq's interim government, which casts doubt on whether DX 53 and DX 55–58 can truly be viewed as being part of a regularly conducted activity. The Court finds these

arguments unconvincing. The instability that existed in Iraq in 2004 and nature of the transitional government does not preclude Iraqi ministries from being able to maintain business records. Ms. Muneer's certification and testimony sufficiently demonstrated that the Iraqi government did have a record-keeping process in place, which was followed with these documents. There is also no reason to doubt that Iraq's interim government also produced other decision documents during the period in which it was in power. Defendants do not need to present such documents—which have no bearing on this case—to establish that the interim government issued decrees as part of its regular activity. Ms. Muneer's certification and *de bene esse* deposition testimony demonstrate that such activity was regularly conducted. Therefore, the Court finds that Wye Oak has not shown that there is reason to view the documents as untrustworthy.

For all of these reasons, the Court concludes that DX 53 and DX 55–58 are business records and are admitted as evidence.

### III. Wye Oak's Completeness Objection Does Not Make DX 53 and DX 58 Inadmissible

Wye Oak also objects to DX 53 and DX 58 on the grounds that there are incomplete. DX 53 and DX 58 both reference other documents that are not in evidence. Under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at same time." Fed. R. Evid. 106. The rule of completeness, codified in Rule 106, "does not provide grounds to exclude evidence." *Cousins v. Hathaway*, No. 12-CV-01058, 2015 WL 13659633, at *3 (D.D.C. July 9, 2015). Instead, Rule 106 enables Wye Oak to introduce the other referenced documents, if Wye Oak possesses them or can obtain them, that ought to be considered alongside DX 53 and DX 58. Wye Oak vigorously rejects the proposition that its remedy is to introduce the document

referenced in DX 53, which was never provided by defendants, and documents referenced in DX 58, which were only produced in February 2019 (well after the discovery period closed). However, Wye Oak's allegations that defendants committed discovery violations shall be addressed as part of the Court's analysis of Wye Oak's motion for sanctions, ECF No. 390, rather than as part of an objection to the admissibility of DX 53 and DX 58 on completeness grounds. Thus, the Court rejects Wye Oak's objection to DX 53 and DX 58 on the grounds that they are incomplete.

### IV. Conclusion

DX 53 and DX 55–58 are business records and are not excluded by the rule against hearsay. DX 53 and DX 58's lack of completeness does not render them inadmissible. Accordingly, DX 53 and DX 55–58 will be admitted as evidence. A separate order shall issue.

SIGNED this 18th day of April, 2019.

_____
Royce C. Lamberth
United States District Judge