## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WYE OAK TECHNOLOGY, INC.** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Civil No. 10-cv-1182 (RCL)** |
| ) | |
| **REPUBLIC OF IRAQ, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### DEFENDANTS' REPUBLIC OF IRAQ AND MINISTRY OF DEFENSE RESPONSE AND OPPOSITION TO PLAINTIFF'S PLAINTIFF'S MOTION TO REOPEN THE RECORD AND FOR RELATED RELIEF [ECF #438]

COME NOW Defendants Republic of Iraq ("Iraq") and Ministry of Defense ("MoD") (collectively, "Defendants") in response to Plaintiff's Motion to re-open the record and in opposition to the Court granting Wye Oak *any* of the relief sought by Wye Oak in the instant motion [ECF #438] (the "Opposition")

This Opposition consists of the following papers, which are incorporated by reference as though fully set out herein:

Exhibit A:

Defendants' Response to Plaintiff's Proposed Supplemental Findings of Fact and Conclusions of Law

Exhibit B:

Certificate of Authenticity of Raad Khalil Ghajy

Note:  Defendants counsel is informed that Mr. Ghajy has signed the certificate, but because of communications difficulties from Iraq, transmittal of the signed certificate has

1

been delayed.  Defendants, through counsel, will submit the signed declaration upon

receipt.

Exhibit C:

Declaration of Ali Talib

Exhibit D:

Declaration of Raad Khalil Ghajy

Exhibit E

Second Declaration of Raad Khalil Ghajy.

Note:  Defendants counsel is informed that Mr. Ghajy has signed the declaration, but

because of communications difficulties from Iraq, transmittal of the signed declaration

has been delayed.  Defendants, through counsel, will submit the signed declaration upon

receipt.

Exhibit F

Certificate of Translation.  The certificate will be filed forthwith upon being provided by

the translator tomorrow.

## REQUEST FOR ADDITION OF EVIDENCE TO THE TRIAL RECORD

Defendants do not oppose the Court re-opening the record, subject, however to the

principle and rule of completeness.  Plaintiff has moved the summary of Case No. 34/C/2011

into evidence.  However, the summary, standing on its own, is incomplete and misleading –

particularly for the purposes of the Court deciding Plaintiff's motion.

Defendants have submitted to the Court documents concerning Case No. 34/C/2011 that

are necessary to complete the record.  *See* ECF #441-1, #441-2, #443-1 and #443-2.  Defendants

have provided as part of this Opposition a Certificate of Authenticity that serves to authenticate each such document.  Each such document is admissible under the doctrine of completeness.

According, Defendants respectfully request the Court, as part of re-opening the record, to admit each such document into evidence.

## I.   <u>INTRODUCTION</u>

Wye Oak's contentions upon which it premises its claims for the extraordinary relief of over a billion dollars sought in the motion are stunning – not just for Wye Oak's overreach to justify the amount now being sought from the Defendants, but also for the inflammatory and overheated rhetoric as to Defendants' purported participation in acts of fraud, coverup, and even murder, which, in light of the evidence now at hand, turn out to be massively in error.

Based solely on the Iraqi Integrity Commission  half page *summary* of Case No. 34/C/2011 (the case in which former MoD official Ziad Cattan and others were charged and convicted in absentia), Wye Oak has inferred and argued as fact things that never existed:

>>That the reputed "heist of the century" – theft of hundreds of millions of dollars from MoD mainly by then-MoD officials taking bribes and receiving kickbacks – infected MoD's dealings with Wye Oak and was the cause of: (1) MoD requiring a bank guaranty before MoD would make any payment of the Three Wye Oak Invoices in advance of work being completed; (2) Raymond Zayna and GIG having a rule in paying those invoices; and (3) former MoD officials acting in their own self interest – and not in MoD's interests – to "defraud" Wye Oak of MoD direct advance payments, without Wye Oak providing MoD with any measure of security.

>>That, solely based on the half page summary, it must be true that the charges brought and the *in absentia* convictions in Case No. 34/C/2011 conclusively prove that the structure of

the payment transaction – namely, payment made to Raymond Zayna of GIG instead of directly to Wye Oak – was itself corrupt.

>>That for 10 years, Defendants and their counsel lied to the Court about, *inter alia*, Wye Oak's "corruption" suspicions and allusions of conspiracies, bribes and kickback having no merit, and, again, based solely upon the summary, that Case No. 34/C/2011 stands as proof of those lies.

>>That in light of these inferences about what never existed, the Court can be persuaded to ignore or override well settled Iraqi law embodied in the Iraqi Civil Code concerning awards of interest, as well as awards of "complementary damages" under Civil Code Article 173(2), to enter a windfall judgment of interest, beginning in the millions of dollars and climbing super-stratospherically to over $1 billion, which is absolutely prohibited by the applicable Articles of the Iraqi Civil Code.

The evidence concerning the scope and legal effects of Case No. 34/C/2011 is in. *See* ECF #441-1, #441-2, #443-1, #443-2.  The evidence consists of the contemporaneous (circa 2005-2006) written investigative reports of highly-skilled and independent Iraqi investigative agencies, including an investigative auditing team from outside MoD, the MoD Inspector General, the Iraqi Integrity Commission as well as evidence taken by an Iraqi investigative criminal court.

**That evidence conclusively establishes that Wye Oak's claims and allegations are devoid of any merit.  There is *none* of the "corruption" alleged and argued by Wye Oak.**

Instead, the charges and convictions *in absentia* of violating Article 340 of the Iraqi Penal Code were brought solely because the former MoD officials:

A.    Did not obtain detailed written descriptions of the work covered by the Three Wye Oak Invoices as required by then-applicable Iraqi public procurement regulations.

This is exactly the type of documentation that MoD required from Wye Oak at the December 5, 2004 meeting as a condition to MoD approving the work to be performed and signing off on money to be paid from GIG to Wye Oak out of the $24.7 million advance payment.

And, this is exactly the documentation that Wye Oak never delivered to MoD through GIG.

B.    Did not obtain a required technical report as to the completed work, and then did not formally accept the work in a manner that created a paper trail that the work had been completed.  Thus, from an audit perspective, MoD could not prove that it received the benefit of work that MoD contractedfor.

*See* Second Declaration of Raad Khalil Ghajy (Exhibit E to this opposition). yy, and the evidence set forth therein.

C.    In Case No. 34/C/2011:  None of the former MoD officials were charged with or convicted *in absentia* of any other misconduct; and neither GIG nor Raymond Zayna were charged with any misconduct.  A finding was made that the Iraqi Stamp Act duties of 2/1000 of the value of the CFA should have been, but were not, paid by GIG as to the CFA and the recommendation was made that MoD initiate a civil lawsuit against GIG to recover that amount. No other allegations were made against GIG.  *Id.*. and the evidence set forth therein.

D.    The investigative reports evidence that, consistent with the CFA, GIG provided a bank guaranty to MoD from Mawarid Bank. [ECF 441-1 (Arabic)] at p.xx; [ECF #443-1 (English translation] at p.xx.

E.    The investigative reports also evidence that the work to rehabilitate the armored vehicles involving GIG continued until the end of 2005 – more than a year after Wye Oak withdrew its American workforce and subcontractors from Iraq and long after then-Army Captain Kevin Neal (who claimed at trial to be the one supervising the work for Wye Oak) had departed Iraq.  *See* [ECF 441-1 (Arabic)] at p.xx; [ECF #443-1 (English translation] at p.xx.

F.    Thus, the evidentiary record of Case No. 34/C/2011 controverts Wye Oak's allegation that Ziad Cattan was "criminally convicted for entering into the CFA and paying $24.7 million to Raymond Zayna".  There is no such evidence in the record of Case No. 34/C/2011.  Furthermore, the structure of the transaction – whereby MoD received a bank guaranty from Raymond Zayna/GIG – was expressly recognized by the investigative authorities as required when MoD made advance payments to a contractor.  *See* [ECF 441-1 (Arabic)] at p.xx; [ECF #443-1 (English translation] at p.xx.

Additionally, as a matter of Iraqi law, charges and convictions in absentia – by virtue of occurring without an adversarial process – cannot be used in any proceeding as proof of any fact.  *See* Ghajy Second.  Also, a conviction in absentia is vacated as soon as the charged person appears before the court, in favor of starting from the beginning and then proceeding throughout in an adversarial context.  *Id.*.  Finally, the charges against Ziad Cattan in Case No.

34/C/2011 were dismissed (*see* ECF #441-2; ECF #443-2), although for the time

being (until Bruska Shaways and Dr. Sawsan Jassim surrender) the charges

against each of them persist because they remain *in absentia*.  For these reasons,

Case No. 34/C/2011 cannot be used by Wye Oak or by this Court as proof of any

fact whatsoever.

G.     There has been no concealment.  There is no support whatsoever for Wye Oak's

outrageous accusation that case No. 34/C/2011 was previously provided to

Defendants' counsel during the discovery process and then withheld from Wye

Oak and the Court. *See* Talib Declaration (Exhibit xx to this Opposition); *see also*

Ghajy Declaration (Exhibit D to this Opposition).

Wye Oak's theory for concealment is that Defendants actively attempted to

conceal Case No. 34/C/2011 and the evidentiary documents therein because the

disclosure of those documents in this lawsuit would benefit Wye Oak more than

Defendants.

That theory is belied by the evidence in the documents themselves, which is

consistent with and supportive of Defendants' defense case-in-chief, and either

neutral to negative to Wye Oak.  *See* points immediately above. Thus, no purpose

would be served by Defendants concealing Case No. 34/C/2011 and its

documents.

**Wye Oak's Iraqi Legal Expert Interpretation and Application of Iraqi Law is
Clearly Erroneous, and, if Adopted, Would Violate the Iraqi Civil Code's
Restrictions on the Power of a Court to Depart from Civil Code Mandates
Concerning:**
**(1)     The Date on Which Pre-judgment Interest Begins to Run (which is the date
          of filing the lawsuit stating a claim in an amount certain on which
          prejudgment interest would be permitted to be awarded);**

(2)   **The claims on which the Civil Code empowers a court (including this Court) to award pre-judgment interest;**

(3)   **The maximum rate of interest (5%) and the prohibition against a court awarding any interest on interest (compound interest);**

(4)   **The effect of the complementary damages provision of Civil Code Article 173(2) as empowering any court to depart from any of the foregoing Civil Code mandates and restrictions on the power of a court to award interest (Article 173(2) has never had any such effect, and there is no case or authority that proves otherwise); and**

(5)   **The prerequisites that must be met before a court may award complementary damages on any claim – namely, the showing of an *undisputed* debt that was not paid by the debtor out of bad faith.**

For the reasons set forth in the legal materials provided as part of the Second Ghajy Declaration, Mr. Chibli Mallat is wrong in his damages analysis.  Mr. Mallat is arguing, in effect, that this Court should act legislatively to alter the very well-settled substance of the Civil Code Articles that limit the power of courts to award interest under Iraqi law. Specifically, Mr. Chibli claims that the purported "fraud" toward Wye Oak related to the events charged in Case No. 34/C/2011 (which did not harm Wye Oak), coupled with the alleged concealment of Case No. 34/C/2011, empower the Court to award "complementary damages" in an amount equivalent to: (1) interest at a rate of more than 17% per annum (as claimed in the Gale Report) – far in excess of the 5% maximum rate allowed by the Civil Code; plus (2) interest running from the date of the purported breach (30 October 2004) – contrary to the Civil Code mandate that interest is capped at 5% in this circumstance, and then only when the claim on which interest is to accrue is established as an amount certain by the date the lawsuit is filed; and (3) interest-upon-interest (compounded interest) in violation of the Civil Code's proscription of a court's power to make any such award.  *See* Ghajy Second Declaration (Exhibit 1 to this Oppositon).

The effect of all of these errors is to boost Wye Oak's interest "entitlement" into the stratosphere of more than $1 billion.  Whereas, Wye Oak's maximum allowable interest claim under proper application of *all* Civil Code Articles is no more than 5 percent per year on the claimed sum of $5.17 million on the Three Wye Oak Inovices. *See* Ghajy Second Declaration.

**For the reasons stated above, and in Defendants' opposition to Wye Oak's spoliation sanctions motion, no "specific action" is needed to render full justice on the merits." The Court should decide this case on the merits, and on the record.  There has been no conduct on the part of Defendants that merits any of the extraordinary relief sought by Wye Oak.  Nor does Defendants' conduct challenged by Wye Oak merit adverse application of any *Bancec* factors.**

Defendants refer the court to the declarations of Ali Talib and the first Ghajy Declaration.

There has been no concealment, no willful violations of any discovery obligations, and no other misconduct that would merit the Court imposing any sanctions or penalty under Rule 37 or the inherent powers of the Court.  *Id.*

**For the reasons stated in Defendants' Proposed Findings of Fact and Conclusions of Law, BSA Paragraph 15 does not accord to Wye Oak any entitlement to attorneys fees.  Moreover, in denying Wye Oak's motion for leave to file a Second Amended Complaint, the Court expressly stated that the Court would reserve the question of attorneys fees until after the Court enters the trial verdict.**

**The evidence in Case No. 34/C/2011 clearly establishes that Wye Oak has no claim against MoD for any commissions or any other amount of money attributable to the reported $4 million tank rehabilitation contract referenced in the Integrity Commission's summary.  Wye Oak presumed that GIG was paid the $4 million.  In fact, as the Case No. 34/C/2011 evidence establishes, the monies were paid to Defense Solutions to rehabilitate tanks in Hungary that had been donated to MoD by the Hungarian government.**

See Ghajy Second Declaration and evidence cited therein.

Moreover, Wye Oak knew about the Hungarian tank transaction contemporaneously (in 2005 when Captain Neal wrote to Wye Oak about the transaction and unsuccessfully

attempted to interject Wye Oak into the middle of the negotiations.  Wye Oak thereafter

did not make any claim in the Complaint or Amended Complaint that MoD breached the

BSA's exclusivity provision by accepting the donated Hungarian tanks and contracting

for their rehabilitation.  The DC statute of limitations for breach of contract claims has

run on this claim (*i.e.*, 3 years from date that a party either knew or ought to have known

of a breach  time for that claim).

**The Court should not make any referral to the U.S. Attorneys Office**

Wye Oak's premise for the Court making a referral to the U.S. Attorneys Office is that

MoD has been complicit in a cover-up, including, according to Wye Oak, covering up the

possible involvement of former MoD officials in the murders of Dale Stoffel and Joe

Wempel.

No credible evidence exists to support any conclusion or belief that MoD is engaging in

any coverup, or that MoD was involved in those murders.

II.     <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully urge the Court to find that the

instant Wye Oak motion is without merit and to deny the motion and all of the requested relief

accordingly.

August 1, 2019                                  Respectfully submitted,

**MILLS LAW GROUP LLP**                    By:    /s/ Jonathan Mook
By:/s/ Timothy B. Mills                        Bernard J. DiMuro (D.C. Bar No. 393020)
Timothy B. Mills                               Stacey Rose Harris (D.C. Bar No. 486358)
D.C. Bar No. 425209                            Jonathan R. Mook (D.C. Bar No. 929406)
910 17th Street, N.W.                          DiMuroGinsberg, P.C.
Washington, DC  20006                          1101 King Street, Suite 610
Telephone:  (202) 457-8090                     Alexandria, VA 22314
Fax: (202) 478-5081                            703-684-4333
TimothyBMills@aol.com                          703-548-3181 (Fax)
*Lead Counsel for Defendant*                   bdimuro@dimuro.com

*Ministry of Defense of the Republic of Iraq*   sharris@dimuro.com
jmook@dimuro.com
*Co-Lead Counsel for Defendants*
*Republic of Iraq and Ministry of Defense*

## CERTIFICATE OF SERVICE

I certify that on this, the 1st day of August 2019, I electronically filed the foregoing pleading with the Clerk of Court using the ECF filing system, which will transmit a Notice of Filing to the following ECF registrant counsel for the parties.

John H. Quinn Jr.
jhq@qrglawfirm.com
Quinn, Racusin & Gazzola Chartered
888 17th Street N.W., Suite 640
P.O. Box 65778
Washington , D.C. 20006-3325
Telephone: (202) 842-9300
Facsimile: (202) 682-0148
*Counsel for Plaintiff*

Robert J. Pavich, *Pro Hac Vice*
John J. Pavich, *Pro Hac Vice*
Jeff Leon, *Pro Hac Vice*
PAVICH LAW GROUP, P.C.
20 S. Clark Street
Suite 700
Chicago, IL 6063
Telephone: (312) 782-8500
Facsimile: (312) 853-2187
rpavich@pavichlawgroup.com
jpavich@pavichlawgroup.com
*Co-Counsel for Plaintiff*

Charles Allen Foster
Erik Bolog
Whiteford Taylor & Preston LLP
1800 M Street, N.W.
Suite 450N
Washington, D.C. 20036
Telephone: (202) 689-3153
Facsimile: (202) 331-0573
Email: cafoster@wtplaw.com
*Counsel for Plaintiff*

Eric C. Rowe
Adrian Sneed
Whiteford Taylor & Preston LLP
1800 M Street, N.W.
Suite 450N
Washington, D.C. 20036
(202) 659-6787
Fax: (202) 689-3164
Email: erowe@wtplaw.com
*Counsel for Plaintiff*

SCHERTLER & ONORATO, LLP
David H. Dickieson  (DC Bar #321778)
David Schertler  (Bar #367203)
Schertler & Onorato, LLP
901 New York Avenue, NW Suite 500 West
Washington, DC  20001
Telephone:  202-628-4199
Facsimile:  202-628-4177
EMAIL:  ddickieson@schertlerlaw.com
dschertler@schertlerlaw.com
*Counsel for Mills Law Group LLP and Attorney
Timothy Mills*

_____/s/ *Timothy B. Mills*_____