UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WYE OAK TECHNOLOGY, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE REPUBLIC OF IRAQ and MINISTRY OF DEFENSE OF THE REPUBLIC OF IRAQ,**<br><br>*Defendants.* | Case No. 1:10-cv-1182-RCL |

## MEMORANDUM OPINION

This case presents the all too familiar story of defendants losing in Foreign Sovereign Immunities Act ("FSIA") litigation and then dragging their feet to compensate a plaintiff. Wye Oak Technology, Inc. ("Wye Oak") is a U.S. corporation holding a judgment for breach of contract under the FSIA, 28 U.S.C. § 1602 *et seq.*, against the Republic of Iraq ("Iraq") and Ministry of Defense of the Republic of Iraq ("MoD") (collectively "Defendants"). Nearly ten months ago, this Court entered judgment for Wye Oak, thereby requiring Defendants to pay over $120 million. *See* ECF No. 553. To date, Defendants have not paid a single dime.

Wye Oak now moves for an order pursuant to 28 U.S.C. § 1610(c) holding that a reasonable amount of time has elapsed since the entry of judgment such that it may seek to attach Defendants' assets to aid in the execution of the judgment. Wye Oak also seeks permission, pursuant to 28 U.S.C. § 1963, to register the judgment in other judicial districts for good cause. Defendants raise several theories in opposition to the requested relief. Holding that ten months is a reasonable time and that Wye Oak has shown good cause, the Court will grant Wye Oak's requested relief under § 1610(c) and § 1963.

1

### I.  BACKGROUND

As is common in FSIA cases, the full story of this case is equal parts intricate and astonishing—involving complex issues of international politics and the unsolved murder of an owner of Wye Oak on his way to coordinate a payment that would have prevented this suit. However, the entire background of the underlying action has already been set forth in several opinions of this Court and of the Circuit. *See Wye Oak Tech. v. Republic of Iraq*, No. 10-cv-1182 (RCL), 2019 WL 4044046, *1 (D.D.C. Aug. 27, 2019) ("*Wye Oak I*"); *Wye Oak Tech. v. Republic of Iraq*, 24 F.4th 686, 704 (D.C. Cir. 2022) ("*Wye Oak II*"); *Wye Oak Tech. v. Republic of Iraq*, No. 10-cv-1182 (RCL), 2022 WL 17820569, *1 (D.D.C. Dec. 20, 2022) ("*Wye Oak III*"). For the sake of brevity, only the basic facts and the procedural history most pertinent to deciding Wye Oak's motion are outlined in this Memorandum Opinion.

In the aftermath of Saddam Hussein's regime, U.S.-led coalition forces, working closely with Iraq's newly constituted transitional government, sought to rebuild Iraq's armed forces. *Wye Oak III*, 2022 WL 17820569, at *1. In pursuit of that objective, in 2004, the MoD contracted with Wye Oak to inventory, assess, and refurbish Iraq's existing military equipment. *Id.* at *2. Wye Oak fulfilled its end of the contract and submitted invoices for payment. *Id.* However, despite many attempts by Wye Oak to obtain compensation for its work, Iraq and MoD never paid Wye Oak. *Id.* As a result, Wye Oak sued Iraq and MoD for breach of contract under the FSIA in the Eastern District of Virginia. *Wye Oak Tech., Inc. v. Republic of Iraq*, No. 09-cv-793, 2010 WL 2613323, at *1 (E.D. Va. June 29, 2010). Iraq moved to dismiss, arguing that no exception to sovereign immunity applied under the FSIA, and thus, the court lacked subject matter jurisdiction. *See id.* at 8.

The Eastern District of Virginia transferred the case to this Court and, in the same opinion, held that the "commercial activities" exception to sovereign immunity provided the court with

subject matter jurisdiction. *Id.* at 9–11. Iraq appealed that holding to the Fourth Circuit, and this Court subsequently stayed the case. *Wye Oak II*, 24 F.4th at 694. The Fourth Circuit affirmed the Eastern District of Virginia's jurisdictional determination, and this Court lifted the stay, allowing the case to proceed. *Id.* This Court held an eight-day bench trial in December 2018. *Id.* In August 2019, this Court issued its findings of fact and conclusions of law, holding both that the Fourth Circuit's jurisdictional analysis was binding on this Court and that, even if it were not, the facts supported an independent determination of subject matter jurisdiction based on a particular clause of the FSIA's commercial activities exception. *Wye Oak I*, 2019 WL 4044046, at *23-24. This Court subsequently concluded that MoD had breached its contract with Wye Oak and entered judgment for Wye Oak.[1] J., ECF No. 466. Both parties appealed. ECF Nos. 579, 578.

On appeal, the D.C. Circuit vacated the judgment and remanded the case. *Wye Oak II*, 24 F.4th at 704. The D.C. Circuit determined that the Fourth Circuit's jurisdictional holding was in fact nonbinding, and disagreed with this Court and the Fourth Circuit's analyses of which clause of the commercial activities exception could obviate Defendants' sovereign immunity. *Id.* The D.C. Circuit then directed this Court to reconsider its jurisdictional analysis under a separate clause of the FSIA's commercial activities exception. *Id.* This Court did so, holding that the clause of the FSIA's commercial activities exception identified by the D.C. Circuit provides subject matter jurisdiction in this case. *Wye Oak III*, 2022 WL 17820569, at *37. Thus, this Court re-entered judgment for Wye Oak on December 20, 2022. *Id.* Once again, both parties appealed. ECF Nos. 579, 580.

---

[1] In the same opinion the Court concluded that "MoD is not separate from the Republic of Iraq" as they are "legally one and the same." *Wye Oak I*, 2019 WL 4044046, at *19.

3

On May 16 2023, Wye Oak brought the instant Motion before this Court, seeking relief. *See* Plaintiff's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, ECF No. 575 [hereinafter Pl.'s Mot.] Defendants opposed that motion. *See* Defendants' Opposition to Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, ECF No. 583 [hereinafter Defs.' Opp.]. Wye Oak replied in support of its motion. Plaintiff's Reply in Support of Its Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, ECF No. 584 [hereinafter Pl.'s Reply]. This issue is now ripe for the Court's consideration.[2]

## II. LEGAL STANDARDS

When a FSIA plaintiff prevails in court and seeks enforcement of a judgment that a defendant refuses to pay, the plaintiff can request to have that judgment satisfied with the foreign state's property located in the United States. This occurs through a—usually heavily litigated—process of property seizure and transfer referred to as "attachment" and "execution." *See, e.g., Bank Markazi v. Peterson*, 578 U.S. 212 (2016). The attachment and execution process can involve several practical and legal difficulties. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 274 (D.D.C. 2011) (Lamberth, J.) (reflecting on the "difficult trail that lies ahead [for a plaintiff] attempting to enforce a FSIA judgment"). However, before this Court can begin to grapple with attachment and execution issues, it must first determine *when* that process may begin pursuant to 28 U.S.C. § 1610(c) and, in this case, *where* that process may take place pursuant to 28 U.S.C. § 1963.

---

[2] On October 20 2023, Defendants filed a motion for a protective order related to Wye Oak's post-judgment document requests. Defendants' Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c), ECF No. 586. That motion is not yet ripe and has no bearing on the resolution of Wye Oak's Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963. Thus, the motion is not addressed in this Opinion.

4

### A. 28 U.S.C. § 1610(c)

Nested within a section of the FSIA dealing with exceptions to the immunity from attachment or execution, § 1610(c) provides the statutory framework for assessing when a plaintiff may begin the process of attachment and execution. In particular, § 1610(c) requires that:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). Plainly put, a court may not permit attachment or execution until *after* the court has made a determination that a "reasonable period of time of time has elapsed" and any required notice has been given. *Id.* Further buttressing the plain text are cases from this Court and others confirming that this temporal determination is a prerequisite to attachment and execution analysis. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 271 (D.D.C. 2011) (Lamberth, J); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 16-0661 (RC), 2017 WL 6349729, at *1 (D.D.C. June 9, 2017).

Given the distinct analyses involved in each inquiry, courts in this Circuit routinely make § 1610(c) decisions in an order that precedes any assessment of attachment and execution issues. Indeed, this Court explained the practical utility of doing so more than a decade ago:

> The purpose of obtaining an order finding compliance with § 1610(c), then, is to permit a FSIA plaintiff to establish that one of the prerequisites is satisfied so that the plaintiff may pursue specific attachments without worry over any lingering § 1610(c) requirements. In light of the severe hurdles to enforcement of judgments that often face FSIA plaintiffs, a 1610(c) order makes practical sense. But such orders say nothing about the remaining jurisdictional immunities that must be overcome before an order granting the attachment or execution of particular property may issue.

*Agudas*, 798 F. Supp. 2d 260, 271. Thus, a § 1610(c) order "does not authorize the attachment or execution of particular property—or any property at all." *Id.* In sum, an assessment of whether a

5

reasonable time has passed under § 1610(c) comes *before* the assessment of whether attachment or execution against any particular property is appropriate.

The text of § 1610(c) is also clear as to what point the clock begins to run. More precisely, § 1610(c) requires that, before attachment and execution, "a reasonable period of time has elapsed following *the entry of judgment*." 28 U.S.C. § 1610(c) (emphasis added). This, of course, refers to the district court's judgment without reference to any pending appeals. *See Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 9 (D.D.C. 2015) ("§ 1610 does not forbid execution within some proximity of 'final judgment'—it doesn't say 'final' at all."). As a general matter, the filing of an appeal does not stay a judgment. *See, e.g., BASF v. Old World Trading Co.*, 979 F.2d 615, 616 (7th Cir. 1992) ("An appeal by the loser does not eliminate the winner's entitlement to immediate payment."). Further, the point at which a judgment becomes nonappealably final is immaterial as "[s]ection 1610 speaks in terms of 'time,' not procedural milestones." *Owens*, 141 F. Supp. 3d at 10. Thus, it is wholly irrelevant to a § 1610(c) analysis whether a party elects to appeal the district court's judgment because "the passage of a reasonable time [is] specifically tethered to the event of the entry of judgment." *Id.* at 9.

Notwithstanding the aforementioned textual clarity of § 1610(c), "[t]he statute does not specify *how* courts should assess a reasonable time." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 16-0661 (RC), 2017 WL 6349729, at *1 (D.D.C. June 9, 2017) (emphasis added). Courts have held that the precise amount of time "will of course vary according to the nuances of each case." *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001). Courts in this Circuit have generally assessed the reasonable-period-of-time requirement with reference to the legislative history of § 1610(c), examining "the procedures necessary for the foreign state to pay the judgment (such as the passage of legislation), evidence

that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of the judgment." *See Ned Chartering*, 130 F. Supp. 2d at 67 (citing H.R.Rep. 1487, 94th Cong., 2d Sess. 1, 30 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News 6604, 6629). In evaluating the requirements of § 1610(c), courts have held that periods as short as six weeks were satisfactory. *See Ned Chartering*, 130 F. Supp. at 67; *Crystallex*, No. CV 16-0661 (RC), 2017 WL 6349729, at *1 (holding 60 days is a reasonable period of time); Order, *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 1:14–cv–2014-JEB (D.D.C. Jan. 20, 2016) (finding that two months was a reasonable period of time).

## B. 28 U.S.C. § 1963

Section 1963 governs where a party is entitled to register a judgment. In particular, it provides that a party may register a judgment in another judicial district "when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment *for good cause* shown." 28 U.S.C. § 1963 (emphasis added). Thus, when an appeal is pending, leave to register the judgment outside of the district in which it was issued requires "good cause shown." Of course, this means that an appeal itself is not a factor in the "good cause" analysis. *Saint Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, No. CV 20-129 (RC), 2021 WL 6644369, at *4 (D.D.C. July 13, 2021) (describing how a defendant's appeal "has no bearing on the Court's determination of good cause"). The whole point of § 1963's "good cause" exception is to provide an avenue for registration *before* judgment has become final by appeal or expiration of time to appeal. If a defendant wants to preclude registration in other districts on the basis of a pending appeal, that defendant may post a supersedeas bond pursuant to Rule 62 of the Federal Rules of Procedure. *See Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82, 84 (D.D.C. 2013); Fed. R. Civ. P. 62.

7

"Good cause" can be established in various ways including by demonstrating that the defendant has the following: (1) "an absence of assets in the judgment forum," and (2) "substantial assets in the registration forum." *Spray Drift Task Force v. Burlington Bio–Med. Corp.*, 429 F. Supp. 2d 49, 51 (D.D.C. 2006) (quoting *Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68, 80 (D.D.C. 2002)). At this stage of the analysis, it is immaterial whether those assets will ultimately be attachable by the plaintiff, as a "[c]ourt's determination that good cause exists to register the judgment has no bearing on whether any assets will ultimately be leviable to satisfy the judgment." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 16-0661 (RC), 2017 WL 6349729, at *2 (D.D.C. June 9, 2017) (internal quotations omitted). Instead, "courts have found sufficient declarations containing no more than counsel's assertion, on information and belief, that attachable assets exist in other districts." *Mwila v. Islamic Republic of Iran*, No. CV 08-1377 (JDB), 2019 WL 13134796, at *2 (D.D.C. May 15, 2019).

Courts are divided as to whether a plaintiff must provide an individualized showing of substantial assets in each district it seeks to register in or whether simply demonstrating substantial assets in some other forum is sufficient for registration "in *any* other district," 28 U.S.C. § 1963 (emphasis added); *compare Funai Elec. Co. v. Daewoo Electronics Corp.*, No. 04–1830, 2009 WL 605840 (N.D. Cal. Mar. 9, 2009) (adopting the former, more restrictive, view), *with Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82, 85 (D.D.C. 2013) (adopting the more permissive— and textually supported—view). However, courts have determined that in cases where an applicant has identified "potentially mobile assets," it is particularly important to permit national registration because merely allowing registration in specific districts would permit a defendant to anticipatorily move assets elsewhere and thereby "remain one step ahead of its judgment creditors." *See Mwila*, 2019 WL 13134796, at *2 (internal quotations omitted).

8

## III. DISCUSSION

### A. Wye Oak is Entitled to Relief Pursuant to § 1610(c).

This Court re-entered judgment for Wye Oak on December 20, 2022.[3] It has been ten months since then. This Court holds that, on the facts of this case, ten months constitutes a reasonable period of time.

As a preliminary matter, this Court rejects Defendants' argument that an independent § 1610(c) order is inappropriate per se. Defs.' Opp. at 12. Defendants argue that § 1610(c) only contemplates one order—ordering attachment or execution. Defs' Opp. at 12. Essentially, Defendants suggest that the attachment and execution inquiry is inextricably linked with the question of whether a reasonable amount of time has elapsed. Defs' Opp. at 12–14. However, this argument is misaligned with the text of § 1610, which is separated into logically distinct subsections. Subsection 1610(a) outlines which U.S. property of a foreign state is not immune from attachment or execution. 28 U.S.C. § 1610(a). Subsection 1610(b) does the same but with "an agency or instrumentality of a foreign state." 28 U.S.C. § 1610(b). Subsection 1610(c) is fundamentally different. Subsection 1610(c) states that any attachment or execution authorized by subsections (a) and (b) is impermissible until *after* a court determines that a reasonable period of time has elapsed since the entry of judgment. 28 U.S.C. § 1610(c). In short, Defendants' argument is squarely foreclosed by the text of 1610(c).

Further, Defendants offer no binding authority for their atextual assertion that a § 1610(c) order must also prognosticate issues of attachment and execution. To be sure, none exists. Courts in this Circuit, including this Court, have routinely issued § 1610(c) orders expressly reserving

---

[3] Because this Court's prior judgment was vacated by the Circuit on appeal, the Court will use the more recent judgment entry date for its § 1610(c) analysis.

9

judgment on issues of attachment and execution. *See, e.g., Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 271 (D.D.C. 2011) (Lamberth, J.) ("[1610(c)] orders say nothing about the remaining jurisdictional immunities that must be overcome before an order granting the attachment or execution of particular property may issue."). Defendants even recognize as much, citing multiple cases in which courts in this Circuit have done just that. Defs' Opp. at 15–16. This Court declines Defendants' invitation to deviate from this clear line of precedent on the basis of nonbinding, disanalogous authority.[4] Defs' Opp. at 13. There is no logical or textual necessity for § 1610(c)'s temporal analysis to be tangled with issues of attachment and execution which invariably arrive later in FSIA litigation. This Court once again emphasizes that a § 1610(c) order offers no opinion on the merits of subsequent attachment or execution issues. Put simply, the question of *when* you may seize a defendant's property, and *which exact* properties you may seize are functionally distinct. Subsection 1610(c), by its express text, only concerns the former.

Having determined that it is proper to consider a motion for relief under § 1610(c), the Court now evaluates the requirements of that subsection. Because the Court's judgment in this case was not entered in default, § 1608(e) is not implicated and § 1610(c)'s notice requirement does not prevent the Court from granting relief in this case. *See* Defs. Opp. at 16 n.10. Thus, the Court need only determine whether the ten months that have passed since this Court entered judgment constitute a "reasonable period of time."[5] 29 U.S.C. § 1610(c).

---

[4] Most notably, Defendants reference some ostensibly supportive language in a Fifth Circuit opinion, *Connecticut Bank of Commerce v. Republic of the Congo*, 309 F.3d 240 (5th Cir. 2002). Defs' Opp. at 13. However, as another Court in this district has already explained, that language "was about whether the § 1610(c) order at issue there was entitled to res judicata effect, not a holding about which court has authority to issue a § 1610(c) order." *LLC SPC Stileks v. Republic of Moldova*, No. 14-CV-1921 (CRC), 2023 WL 2610501, at *3 (D.D.C. Mar. 23, 2023).

[5] Whether this Court conducts its reasonable-period-of-time analysis from today, or from May 16, 2023—the date that plaintiff filed its motion, is immaterial. Pl.'s Mot. The result is the same. Five months is also a reasonable period of time since the entry of judgment in this case.

10

Ten months will suffice. Iraq and MoD cannot credibly argue that ten months has not been enough time for "procedures necessary to pay the judgment." *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001). Defendants have not argued that they are taking any steps to pay the judgment. To the contrary, Defendants seem keen to avoid their obligation to pay the judgment. *See* Pl.'s Reply at 11 (arguing that Defendants have provided no assurances that they intend to pay). Precedent is also fatal to Defendants' position. As noted above, courts in this Circuit have held that periods as short as six weeks satisfied § 1610(c)'s reasonable time requirement. *See Ned Chartering*, 130 F. Supp. at 67; *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 16-0661 (RC), 2017 WL 6349729, at *1 (D.D.C. June 9, 2017) (finding 60 days is a reasonable time), Order, *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 1:14–cv–2014-JEB (D.D.C. Jan. 20, 2016), ECF No. 48 (finding that two months was a reasonable time).

Defendants provide no convincing argument that a reasonable period of time has yet to pass. Instead, Defendants advance the puzzling and conclusory argument that "the strength of Defendants' case in the Second Merits Appeal . . . constitutes sufficient reason to find that Wye Oak's motion is premature." Defs.' Opp. at 17. Of course, Defendants' beliefs about the strength of their appeal have no bearing on this Court's analysis. Defendants similarly argue that it is implausible that Wye Oak will be able to attach or execute upon any of Defendants' U.S. property, and thus a § 1610(c) order is useless. Defs.' Opp. at 20. Here too, Defendants' confidence in post-judgment litigation is statutorily irrelevant. In accordance with § 1610(c), this Court holds that a reasonable period of time has passed since the entry of judgment and Wye Oak may proceed to the next steps of securing its payment for Defendants' breach.

### B. Wye Oak is Entitled to Relief Pursuant to § 1963.

Under 28 U.S.C. § 1963, Wye Oak is entitled to an order permitting registration of this Court's judgment outside of the District of Columbia. Both Wye Oak and Defendants have appealed aspects of this Court's December 20, 2022 judgment. ECF Nos. 579, 580. Defendants have failed to post a supersedeas bond to preclude enforcement of this Court's judgment until after appeal. Pl.'s Mot. at 3; Fed. R. Civ. P. 62. Still, Defendants argue that the pending appeals render Wye Oak's request for relief pursuant to § 1963 "premature." Defs.' Opp. at 7. Defendants further argue that Wye Oak should "simply wait[] until the Second Merits Appeal is resolved.[6] Defs.' Opp. at 23. But that is not the law. Defendants argument ignores the text of § 1963. Section 1963 includes an express carve out for situations in which an appeal is pending. 28 U.S.C. § 1963. In particular, it provides for registration of a judgment in other districts "when the judgment has become final by appeal . . . *or when ordered by the court that entered the judgment for good cause shown.*" *Id.* (emphasis added). In other words, notwithstanding any pending appeals the Court can determine whether Wye Oak has shown "good cause" to allow registration outside this district.

Wye Oak can meet the good cause standard by demonstrating (1) "an absence of assets in the judgment forum," and (2) "substantial assets in the registration forum." *Spray Drift Task Force v. Burlington Bio–Med. Corp.*, 429 F. Supp. 2d 49, 51 (D.D.C. 2006) (quoting *Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68, 80 (D.D.C. 2002)).[7] It is undisputed that Defendants do not

---

[6] Defendants' argument that Wye Oak should "simply wait" ignores that this case concerns Defendants' breach of an agreement that is now nearly twenty years old. Pl.'s Mot. at 2 (describing how "Wye Oak has been waiting nearly 19 years to be paid").

[7] Of course, this is not the only method of showing "good cause." One factor relevant to the good cause analysis is a defendant's failure to post a supersedeas bond. *See Spray Drift Task Force v. Burlington Bio-Med. Corp.*, 429 F. Supp. 2d 49, 51 (D.D.C. 2006). As noted, Defendants did not post such a bond in this case. Additionally, other courts have found relevant to a good-cause determination a defendant's "pattern of fraudulent actions" and post-judgment "track record." *See Bavelis v. Doukas*, No. 2:17-CV-00327, 2021 WL 3508078, at *3 (S.D. Ohio Aug. 10, 2021). Wye Oak's briefing outlines Defendants' history of refusing to satisfy its judgments both in this case and in another case. Pl.'s

12

have sufficient assets in this district to satisfy the approximately $120 million judgment.[8] Indeed, Defendants do not contest Wye Oak's claim that they lack assets in this district. Further, Wye Oak's Motion, which included a declaration of its attorney, Robert L. Weigel, sufficiently demonstrates that Defendants have substantial assets elsewhere. *See* Declaration of Robert L. Weigel in Support of Plaintiff's Motion for Leave to Register Judgment Pursuant to 28 U.S.C. § 1963, ECF No. 575-1 [hereinafter Weigel Decl.]. For example, Wye Oak believes that Iraq may have attachable assets in the Southern District of New York, including commercial bank accounts that hold the proceeds of Iraq's U.S. denominated oil sales. Pl.'s Mot. at 8. In particular, the Declaration cites to a Wall Street Journal article that suggests that the New York Federal Reserve Bank may harbor Defendants' substantial assets including commercial bank accounts. Weigel Decl. ¶10. Wye Oak further argues that these assets are potentially mobile. Weigel Decl. ¶10. The same article reports that Iraq delivers pallets of U.S. currency to Baghdad every few months and that even more money flows electronically in transactions by Iraq's private banks, processed from Iraq's official accounts at the New York Fed. Weigel Decl. ¶10.

In opposition to Wye Oak's request for relief under § 1963, Defendants wheel out the now tired argument that Wye Oak has not fully proven that any of Defendants' assets will be subject to attachment and execution and thus this Court cannot issue a § 1963 order. Here again, Defendants incorrectly argue the attachment and execution inquiry is inexorably intertwined with the relief that Wye Oak request. And here again, that argument fails. Even if this court were convinced by

---

Mot. at 9. Even if the Court were not convinced by Wye Oak's arguments regarding the location and mobility of Defendants' assets, these considerations could independently satisfy § 1963's good-cause requirement.

[8] Wye Oak notes that there is a pending case in which Defendants seek enforcement of a large arbitral award in this district. Pl.'s Mot. at 8; *see Petition for Confirmation, Recognition, and Enforcement of Foreign Arbitration Award, Republic of Iraq v. Republic of Turkey*, No. 1:13-cv-00978 (D.D.C. Apr. 10, 2023), ECF No. 1. However, that pending case is irrelevant to resolving the present motion as neither party argues that the prospect of a favorable judgment for Iraq can currently constitute an asset for the purpose of § 1963.

13

Defendants' attachment analysis—which it is not—the ultimate attachability of the assets identified by Wye Oak does not control the resolution of this motion. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 16-0661 (RC), 2017 WL 6349729, at *2 (D.D.C. June 9, 2017) ("The Court declines the invitation to adjudicate whether or not those assets will ultimately be attachable by Petitioner because such a determination is unnecessary at this stage."). Whether a defendant has substantial assets in the registration forum, and whether those assets will ultimately be eligible to satisfy a judgment are distinct questions to be resolved at distinct periods in a case. Indeed, a "[c]ourt's determination that good cause exists to register the judgment has no bearing on whether any assets will ultimately be leviable to satisfy the judgment." *Crystallex*, No. CV 16-0661 (RC), 2017 WL 6349729, at *2 (D.D.C. June 9, 2017) (quotations omitted).

Defendants also argue that Wye Oak has not identified assets with enough specificity to satisfy the requirements of § 1963. *See* Defs'. Opp at 27. In doing so, Defendants dismiss the specific assets listed by Wye Oak and drastically overstate the showing that Wye Oak must make to obtain relief. Wye Oak has provided briefing and a declaration containing its assertions that assets exist in other districts. *See* Pl.'s Mot. at 8; Weigel Decl. ¶10. Similar evidence has been found to be sufficient for the limited purpose of obtaining relief under § 1963 in other cases in this Circuit. *Mwila v. Islamic Republic of Iran*, No. CV 08-1377 (JDB), 2019 WL 13134796, at *2 (D.D.C. May 15, 2019) ("[C]ourts have found sufficient declarations containing no more than counsel's assertion, on information and belief, that attachable assets exist in other districts."). The Court will not elect to require a higher showing in this case.

Further, the Court will permit national registration in this case, which is consistent with the decisions of other courts in this Circuit. As other courts have noted, this is particularly appropriate where, as here, the plaintiff has identified "potentially mobile assets." *See Mwila v. Islamic*

*Republic of Iran*, No. CV 08-1377 (JDB), 2019 WL 13134796, at *2 (D.D.C. May 15, 2019) (quoting Jan. 12, 2018 Order, *Onsongo v. Republic of Sudan*, Civ. No. 08-1380 (D.D.C. Jan. 12, 2018), ECF No. 276 at 2–3). Restricting registration to particular districts would permit Defendants to preemptively move assets to places where Wye Oak cannot register and thereby "remain one step ahead" of Wye Oak. *Id.*

In sum, Wye Oak is entitled to relief pursuant to § 1610(c) and § 1963. Defendants can continue to opine that "Iraq simply has not paid on a judgment it believes should not stand." ECF No. 583, at 22. But Iraq's beliefs about the wisdom of this Court's judgment are immaterial. This Court rejects Defendants attempts to ensnare Wye Oak's simple requests for relief with Defendants' self-serving predictions about their pending appeal or the eventual attachability of their U.S. assets. These are independent inquiries, which need not be intertwined. FSIA plaintiffs, like Wye Oak, already face several hurdles to obtain enforcement of their judgments—this Court will not stack those hurdles atop one another.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Plaintiff's Motion for Relief. A reasonable period of time has elapsed under 28 U.S.C. § 1610(c) following entry of the judgment in this case, and the Court holds that there is good cause under 28 U.S.C. § 1963 to permit Plaintiff to register the judgment in any other judicial district of the United States.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: 10/27/23

Royce C. Lamberth
United States District Judge

15