**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WYE OAK TECHNOLOGY, INC.,

*Plaintiff*,

v.

REPUBLIC OF IRAQ, *et al*.,

*Defendants*.

Civil Action No. 1:10-cv-01182-RCL

**PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

To enforce this Court's judgment, Wye Oak Technology, Inc. ("Wye Oak") requires the discovery sought in its August 30, 2023 Post-Judgment Document Requests ("Requests"), which the Defendants, the Republic of Iraq ("Iraq") and the Ministry of Defense of Iraq (the "Ministry of Defense") (collectively, the "Iraqi Defendants"), have flatly refused (ECF. No. 594), and should be compelled, to produce. *See* ECF No. 589 ("Motion to Compel"). This Court has already ruled that a reasonable amount of time has elapsed since the judgment was entered such that Wye Oak may seek to attach the Iraqi Defendants' assets. ECF No. 587 at 15. Wye Oak also has this Court's permission to register its judgment in other judicial districts of the United States in furtherance of its enforcement efforts. *Id.*

The Iraqi Defendants' pending appeal does not excuse them from discovery. They have expressly and repeatedly refused to post the supersedeas bond required for a stay pending appeal. They do not and cannot deny that they *could* post a bond, as Iraq reportedly sold more than $9 billion in oil in September alone, adding to a year-to-date total of approximately $70 billion (as

of September 2023).[1] Instead, as they readily admit, they do not want to post a bond because they do not want to create an asset that Wye Oak could use to "satisfy the judgment." ECF No. 594 at 6-7. If the Iraqi Defendants were truly confident about their chances on appeal, that concern would be moot. More importantly, the fact that the Iraqi Defendants do not intend to pay the judgment if they lose is all the more reason to proceed with post-judgment discovery.

Having failed to assert that they are unable to post a bond, the Iraqi Defendants are not entitled to equitable relief from this Court. They offer no legitimate reason for this Court to grant an unsecured stay. And they forfeited their belated attempt to invoke the traditional four-part test for a stay without a bond because their initial motion for a protective order failed to address that standard and instead relied on judicial economy alone, which is insufficient. Wye Oak's motion to compel does not afford them a second shot at a losing argument. And, even if the argument had not been forfeited (it was), all elements of the strict four-part test weigh decidedly against a stay.

The Iraqi Defendants' challenge to the relevancy of Wye Oak's Requests is equally flawed. The Requests are relevant because they are calculated to enable Wye Oak to identify the Iraqi Defendants' assets—the first step in determining whether such assets are attachable. The Iraqi Defendants' insistence that discovery requests are only relevant if they target a demonstrably attachable asset ignores the purpose of post-judgment discovery and seeks special treatment based on their status as sovereign debtors. Precedent is clear: the Foreign Sovereign Immunities Act ("FSIA") does not provide judgment debtors with any immunity from discovery. Wye Oak's Requests are relevant even if the assets they reveal are ultimately not attachable.

Intending to block Wye Oak from collecting the money they have long owed, the Iraqi Defendants argue that because they never paid Wye Oak they have no assets that Wye Oak can

---

[1] *See* Declaration of Robert. L. Weigel dated December 1, 2023 ("Weigel Decl.") ¶ 12.

potentially attach in aid of execution. But until Wye Oak obtains discovery into the Iraqi Defendants' assets, it is premature to require Wye Oak to identify specific assets and prove that they are subject to attachment. In any event, the Iraqi Defendants are wrong that their assets are categorically immune. The parties agree that 28 U.S.C. § 1610(a)(2) allows enforcement against property that is or was used for the commercial activity upon which the claim is based. Here, the Iraqi Defendants agreed to pay Wye Oak in U.S. dollars. As set forth in the accompanying Declaration of Nicholas Beadle dated December 1, 2023 ("Beadle Decl."), a British Civil Servant working as a Senior Advisor to the Iraqi Minister of Defense and Ministry of Defense who was involved in reviewing and approving the Broker Services Agreement ("BSA") between Wye Oak and the Ministry of Defense, it was understood that the money the Iraqi Defendants owed to Wye Oak under the BSA would be paid using proceeds from the sale of Iraqi oil in U.S. dollars. Iraq's source of U.S. dollars was then, and still is, oil sales. Weigel Decl. Ex. D. Iraqi oil sales proceeds pass through the U.S. banking system and into an account at the Federal Reserve Bank of New York, which is used to fund the Iraqi Defendants' obligations, including their commercial debts. This flow of Iraqi oil sale proceeds through the U.S. banking system was implemented following a United Nations Security Council Resolution adopted before the BSA was signed and remains Iraq's practice to this day. Weigel Decl. Ex. B.

The Iraqi Defendants do not and cannot dispute, and Mr. Beadle confirms, that it was always intended that Wye Oak would be paid with the U.S. dollar sales proceeds from Iraqi oil—proceeds that passed through the U.S. banking system. Beadle Decl. ¶ 23. That is why Wye Oak's Requests seek information as to, among other things, how that same "regular course of commercial conduct," 28 U.S.C. § 1603(d)—*i.e.*, Iraqi oil sales—is now being conducted. The Requests are calculated to lead to the discovery of relevant evidence. That is precisely why the Iraqi Defendants

seek to stonewall Wye Oak by failing to even serve the required objections and responses to the Requests, much less actually producing documents.

Wye Oak's motion to compel the Iraqi Defendants' responses to its Requests seeks to put an end to their attempt to prolong this discovery dispute. Wye Oak's motion is both proper and ripe for decision. The Iraqi Defendants' position that they are first "entitled" to the Court's decision on their "threshold" objections to discovery is contrary to the plain provisions of the Federal Rules of Civil Procedure. ECF No. 594 at 21-22. The Rules do not permit judgment debtors to bifurcate a discovery dispute on a single set of document requests into "threshold" and "specific" objections to in order to prolong their resolution and deprive judgment debtors of information they need. Judicial economy is not served by such bifurcation—it would double this Court's workload, delay Wye Oak's ability to collect its judgment and increase litigation costs.

Finally, if Wye Oak succeeds on its motion, the Iraqi Defendants should pay Wye Oak's costs and fees. Rule 37 of the Federal Rules of Civil Procedure mandates such an award unless the Iraqi Defendants demonstrate that their position is "substantially justified" or that "other circumstances" would render an award unjust. They have failed to do either.

## DISCUSSION

### I. The Iraqi Defendants' Pending Appeal Does Not Excuse Them From Discovery

The Iraqi Defendants' principal argument in opposing Wye Oak's Motion to Compel is that discovery is untimely and should be stayed. The Iraqi Defendants' current request, which they characterize as a one for a stay "of *post-judgment discovery* only," ECF No. 594 at 5, is nothing more than a coy attempt to reargue their failed opposition to Wye Oak's successful 28 USC § 1610(c) motion. The discretionary "discovery" stay they seek would have the practical effect of stymying enforcement without providing Wye Oak with any of the protections it is due as a judgment creditor. The Iraqi Defendants ask this Court to bar discovery while simultaneously

departing from the usual bond requirement because they allegedly believe (i) their status as sovereign judgment debtors presents "unusual circumstances" warranting a discretionary stay and renders posting a bond impracticable, and (ii) they satisfy the four-factor balancing test for a stay without a bond. ECF No. 594 at 6-7. But there is nothing unusual about the present circumstances. The Iraqi Defendants do not make any showing that posting a bond would be impracticable. They clearly have the funds to do so. This dispute is thus nothing more than the "all too familiar story of defendants losing in [FSIA] litigation and then dragging their feet to compensate a plaintiff." ECF No. 587 at 1. In these ordinary circumstances, a bond is required. The Iraqi Defendants have forfeited their current attempt to rely on the traditional four-part test for a stay—which they cannot meet, in any event—by failing to raise it in their motion. They cannot revive it by including it in their combined Reply and Opposition. ECF No. 586.

**A. This Case Presents Normal Circumstances That Require A Bond To Stay Proceedings Pending Appeal**

The Iraqi Defendants admit that they have not posted a bond, which is the standard requirement for a stay pending appeal. The purpose of that "full supersedeas bond" is to secure Wye Oak "from loss resulting from the stay of execution [b]ecause the stay operates for" the Iraqi Defendants' "benefit and deprives" Wye Oak "of the immediate benefits of [its] judgment." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980); ECF No. 589 at 7. Therefore, "in normal circumstances, such as where there is some reasonable likelihood of the judgment debtor's … unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable" a bond is required. *Fed. Prescription Serv.*, 636 F.2d at 760.

The Iraqi Defendants argue that the normal requirement of posting a bond is not practicable because "[r]equiring Defendants to post a bond here would create an attachable asset in the United

States." ECF No. 594 at 6. But that is precisely the point of a bond—to ensure that an appellant can only obtain a stay pending appeal if it assures the Court that the judgment will be satisfied should the appeal fail. The Iraqi Defendants tacitly admit that the reason they do not want to post a bond is that they hope to evade this Court's judgment entirely if they lose on appeal. But "[a] judgment debtor's" admitted "unwillingness to satisfy the judgment" has been long recognized as a reason to *adhere* to the usual rule of requiring a bond for a stay pending appeal. *Gates v. Syrian Arab Republic*, 2009 WL 10693489, at *2 (D.D.C. Oct. 21, 2009); *Klayman v. Jud. Watch, Inc.*, 2019 WL 4260380, at *2 (D.D.C. Sept. 9, 2019).

The Iraqi Defendants' acknowledgement that they have no intention of paying the judgment supports Wye Oak's motion to compel discovery to "identify assets from which the judgment may be satisfied," as a "broad inquiry to uncover any hidden or concealed assets of the judgment debtor" will very likely be necessary. *LLC SPC Stileks v. Republic of Moldova*, 2023 WL 2610501, at *6 (D.D.C. Mar. 23, 2023) (granting motion to compel sovereign judgment debtor's responses to discovery). And, the Iraqi Defendants' claim of some special immunity from discovery has been expressly rejected by the Supreme Court, which has held that sovereign judgment debtors are not entitled to *any* "penumbral 'discovery immunity' under the [FSIA]." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 144 (2014). The Iraqi Defendants are not entitled to special treatment simply because they intend to assert "execution immunity" in some instances. *Id*. at 143-44. The fact that posting a bond would allow Wye Oak to collect on its judgment if the Iraqi Defendants' appeal fails does not render this situation "unusual." That is the express purpose of a bond.

Nor is posting a bond rendered impracticable because it would prevent the Iraqi Defendants from evading this Court's judgment if they lose their appeal. Nothing in the FSIA provides

sovereign judgment debtors with special exemptions from the Federal Rules of Civil Procedure for the explicit purpose of avoiding judgments. Instead, courts assess impracticability by focusing on the debtor's financial condition or ability to obtain such financing—and even when a full bond is impracticable, those judgment debtors are required to post some security. *See, e.g.*, *Trans World Airlines, Inc. v. Hughes*, 314 F. Supp. 94, 98 (S.D.N.Y. 1970) (requiring a bond of nearly half of the amount of the judgment despite finding that a full supersedeas bond is not practicable because of judgment debtor's financial condition); *Petersen Energia Inversora S.A.U. v. Argentine Republic*, 2023 WL 8096928, at *4 (S.D.N.Y. Nov. 21, 2023) (accepting Argentina's arguments of financial difficulties, and requiring partial bonding of the judgment with assets valued at approximately a quarter of the judgment and an expedited appeal). The Iraqi Defendants have not and cannot make a showing of impracticability here.

Here, the Iraqi Defendants have not offered to post any alternative security. *See Howard Town Ctr. Developer, LLC v. Howard Univ.*, 288 F. Supp. 3d 11, 13 (D.D.C. 2017) (rejecting a request for alternative security where the judgment debtor failed to demonstrate a "present financial ability to facilely respond to the money judgment" and a "financially secure plan" for maintaining its same degree of solvency during the pendency of appeal). Nor have they made any showing that Wye Oak can be *assured of payment* in satisfaction of the judgment if no bond is posted, which is what courts have required in the rare instances where they have not required alternative security. *See, e.g.*, *Fed. Prescription Serv.*, 636 F.2d at 760-61 (dispensing with bond requirement where judgment debtor was a "long-time resident of the District of Columbia" and had assets worth 47 times the amount of the judgment). The Iraqi Defendants cannot evade the requirement to post a bond by arguing that the requirement for a bond comes only from "non-sovereign case[s]," ECF No. 594 at 7 n.5. They ignore *Gates*, which found that a foreign-sovereign

debtor (Syria) was "unwilling[ ] to satisfy the judgment" and therefore required a $60 million supersedeas bond to stay execution. ECF No. 589 at 9 (citing *Gates*, 2009 WL 10693489 at *2)[2]; *see also Peterson Energia Inversora S.A.U.*, 2023 WL 8096928, at *4 (requiring Argentina to pledge assets worth between $4 and $5 billion to obtain a stay of a $16.1 billion judgment). The same is true here: the Iraq Defendants' persistent and unabashed refusal to pay is a reason to require a bond, not to forgive this normal requirement.

Nor can the Iraqi Defendants avoid the bond requirement by purporting to limit the stay they now seek to discovery alone. Multiple courts have rejected identical attempts to parse a judgment debtor's post-judgment obligations, holding that a judgment debtor's obligation to participate in discovery should be stayed only if enforcement of the judgment is stayed. *See Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982) ("If a judgment may be executed upon after an appeal has been filed, certainly discovery in aid of its execution is not precluded by the filing of an appeal."); *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, 2000 WL 713057, at *6 (S.D.N.Y. June 2, 2000) (rejecting judgment debtor's request for "a stay" of "asset discovery during the pendency of the appeal").[3]

Indeed, because post-judgment discovery is less burdensome than actually satisfying the judgment, judgment debtors are *less* entitled to a stay of discovery than they are to stays of enforcement. *See* Mem. Op. and Order, *Doraleh Container Terminal SA v. Republic of Djibouti*,

---

[2] The Iraqi Defendants do not engage with the *Gates* opinion cited by Wye Oak. Instead they rely on an earlier decision in *Gates* where the bond requirement was excused because there was a pending question on appeal of whether Syria had been *served*. ECF No. 594 at 6 (citing *Gates v. Syrian Arab Republic*, WL 10693488, at *2 (D.D.C. Feb. 6, 2009)). After the question of service was resolved the Court imposed a $60 million bond. 2009 WL 10693489, at *2.

[3] *See also, e.g.*, *United States v. Stabl, Inc.*, 2019 WL 4747967, at *4 n.7 (D. Neb. Sept. 30, 2019) (quoting *Nat'l Serv. Indus.*, 694 F.3d at 250); *Smith v. Kansa Tech., L.L.C.*, 2019 WL 2122980, at *2 (E.D. La. May 15, 2019) (same); *Smith v. Curtis Int'l Ltd.*, 2016 WL 67771, at *2 (N.D. Tex. Jan. 6, 2016) (same).

No. 20-cv-2571 (BAH) (D.D.C. Apr. 24, 2023), ECF No. 57 at 6 (denying sovereign judgment debtor's "bald request" for stay of discovery pending its appeal given that "purpose" of discovery is to "'allow[ ] the judgment creditor to identify assets from which the judgment may be satisfied'"). The Iraqi Defendants' claims of injury from having to respond to ordinary post-judgment discovery requests ring false. They can stop discovery by posting a bond and have provided no assurance that they will not move assets during their appeal. Despite their rhetoric about intrusion on their sovereignty, "what's really going on is just a 'discovery dispute.'" *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 2020 WL 13611456, at *25, *29 (D.D.C. Nov. 6, 2020) (Lamberth, J.) (denying stay of discovery pending appeal and holding that sovereign judgment debtor is not injured by creditor's right to "determine" the extent of attachable assets through discovery). As Wye Oak has this Court's permission to enforce the judgment, *see* ECF No. 588, the Iraqi Defendants have no grounds for a limited stay of discovery sought "[i]n aid of" that judgment's "execution," Fed. R. Civ. P. 69(a)(2).

Having failed to assert that they are unable to post a bond, the Iraqi Defendants have forfeited any claim to equitable relief. *See Doraleh Container Terminal SA v. Republic of Djibouti*, 2023 WL 6160015, at *4 (D.D.C. Sept. 21, 2023) (holding that judgment debtor's attempt to "halt all proceedings" pending appeal "is a problem of [its] own creation" where pleadings are a "disguised attempt to [ ] stay discovery without posting a bond").

**B. The Iraqi Defendants Forfeited Reliance On The Traditional Four-Part Test For A Discretionary Stay—Which They Cannot Meet In Any Event**

There is no basis for a stay without a bond, as the Iraqi Defendants have not satisfied the relevant four-part test for a discretionary stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). In their initial filing objecting to the Requests and seeking a stay, the Iraqi Defendants ignored this test and instead argued that a test with a lower bar based on "judicial economy" alone applied.

ECF No. 586 at 8-12. They now abandon that argument and attempt for the time to satisfy the four-part test. ECF No. 594 at 7. But that argument comes too late and is thus forfeited. *See Mo. Dep't of Soc. Servs. v. U.S. Dep't of Health & Hum. Servs.*, 2019 WL 4709685, at *3-*4 (D.D.C. Sept. 26, 2019) (finding forfeiture where defendant failed to argue the applicable legal standard in initial filing).[4] "An argument is forfeited when it is not asserted in a timely manner." *Allen v. Dist. of Columbia*, 2021 WL 6065785, at *2 (D.D.C. Dec. 22, 2021) (Lamberth, J.) (citing *La. Pub. Serv. Comm'n v. Fed. Energy Reg. Comm'n*, 482 F.3d 510, 521 (D.C. Cir. 2007)). The Iraqi Defendants cannot use their combined opposition and reply to assert for the first time an argument that clearly would be forfeited if raised in reply alone, particularly where—as the "party objecting to discovery"—they bear the burden both in their motion for a protective order and in their opposition to Wye Oak's motion to compel to demonstrate why the discovery "should not be permitted." *Stileks*, 2023 WL 2610501, at *2.

Even if they had not waived their ability to rely on it, the traditional four-factor test precludes a stay here. Even in the rare instances where courts stay a judgment without a bond, the standard is stringent. The Iraqi Defendants must make a strong showing that: (1) they will likely succeed on the merits; (2) they will be "irreparably injured absent a stay"; (3) a stay will not "substantially injure" Wye Oak; and (4) that "the public interest" favors a stay. *Nken*, 556 U.S. at 426. Each factor weighs against a stay.

(1) The Iraqi Defendants' only basis for arguing that they are "likely to succeed on the merits" of their appeal, *Nken*, 556 U.S. at 434, is their own appellate brief, ECF No. 594 at 8,

[4] The Iraqi Defendants' belated attempt to link their prior "judicial economy" argument to the correct four-factor test, ECF No. 594 at 6, is meritless. "[J]udicial economy" alone is no reason to grant a stay, and it is relevant, at most, to the "pubic interest" factor of the established four-factor balancing test. *See* Section I(B) at (4), *infra*. And no judicial resources are being saved by their current attempt to bifurcate and prolong this discovery dispute.

which is replete with arguments this Court has already rejected. They make no effort, and marshal no support, to carry their burden to show that the Court of Appeals is likely to reverse this Court's judgment. Instead, they suggest only that Wye Oak's observation that the Iraqi Defendants' arguments have already failed on the merits "does not refute" their arguments on appeal. *Id*. But it is not Wye Oak's burden to refute the Iraqi Defendants' supposed entitlement to a stay—it is their burden to demonstrate the need for that exceptional remedy. *Nken*, 556 U.S. at 433-44.

(2) Nor do the Iraqi Defendants demonstrate that they "will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. The cases they rely on (at 8-9) suggest only that the "burden of defending against a lawsuit" is an irreparable harm for a sovereign that turns out to be immune from suit, such that it should never have been forced to litigate the merits of the claim. *Philipp v. Fed. Republic of Germany*, 436 F. Supp. 3d 61, 68 (D.D.C. 2020); *see EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 2022 WL 15138455, at *1 (D.D.C. Oct. 26, 2022) (staying proceedings pending appeal of denial of summary judgment). Those cases are inapposite because Wye Oak's *post-judgment* discovery requests do not force Defendants to litigate the merits of any claim. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (sovereign immunity is a defense "from trial and the attendant burdens of litigation"); *cf. Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (describing qualified immunity as an immunity from the "pretrial" burdens of litigation). It is therefore irrelevant that the pending appeal "will be the first appellate court examination" of Iraq's present challenges to the final judgment. ECF No. 594 at 9. What matters is that the final judgment has already occurred, because "[a] fully litigated case can no more be untried than the law's proverbial bell can be unrung." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994). And, if indeed there is a burden attendant to the post-judgment proceedings, it is entirely self-imposed—the Iraqi Defendants may avoid any claimed

burden by posting a supersedeas bond. "[T]his is a problem of" the Iraqi Defendants' "own creation." *Doraleh Container Terminal*, 2023 WL 6160015, at *4.

(3) The Iraqi Defendants offer a single sentence (at 9) suggesting that the "'magnitude'" of the Court of Appeals' *potential* decision in this case outweighs any injury to Wye Oak. But their argument merely parrots the self-serving exaggeration of their likelihood of success on the merits. It also ignores that a discovery stay "substantially injure[s]" Wye Oak's right to the discovery it needs to execute its judgment, *Nken*, 556 U.S. at 434, which is ripe for execution. As this Court recently recognized, Wye Oak has been attempting to recover what it is owed for nearly two decades. As of this month, Wye Oak has held a valid final judgment for a year (*See* ECF No. 587 at 9) and has this Court's permission to enforce that judgment, both in this District (to the extent assets can be found here) and elsewhere. The Iraqi Defendants' attempts to block valid post-judgment discovery prejudices Wye Oak's ability to identify and assess potentially attachable assets and gives the Iraqi Defendants an opportunity to move them. ECF No. 587 at 8, 15.

(4) Finally, the "public interest" does not lie in enabling judgment creditors—whether sovereign or otherwise—to evade valid judgments against them by obtaining unjustified delays to ordinary post-judgment discovery. *Nken*, 566 U.S. at 434. While the Iraqi Defendants yet again suggest that special rules for foreign sovereigns apply to this factor, ECF No. 594 at 9-10, precedent squarely forecloses applying special discovery rules to sovereign debtors, *NML Cap.*, 573 U.S. at 144. The Iraqi Defendants' suggestion that the public interest in judicial economy supports waiting until the appeal is resolved, ECF No. 594 at 9-10, is circular. Any request for a stay pending appeal requires an appeal to be pending and necessarily contemplates the possibility that the district court's judgment will be reversed. That possibility and its attendant risks are fully

captured in Federal Rule of Civil Procedure 62's requirement to post a supersedeas bond. *See* ECF No. 589 at 8.

## II. Wye Oak's Requests Are Relevant And Proper

The Parties agree that Federal Rules of Civil Procedure 26 and 69 govern Wye Oak's Requests and that the FSIA does not provide immunity from discovery. *NML Cap.*, 573 U.S. at 144. The difference between the Parties is their views of what constitutes "relevant" discovery. The Iraqi Defendants take the position that: (1) to be relevant under Rule 69, discovery requests must inquire only about attachable assets; (2) in this case, assets would be attachable only if they meet the requirements set forth in Section 1610(a)(2) of the FSIA; (3) there are no such assets, in part because the Iraqi Defendants never paid Wye Oak under the BSA; so therefore (4) the Requests (and indeed any post-judgment discovery requests) are irrelevant. That argument is wrong at each turn.

To start, discovery requests aimed at learning what assets the Iraqi Defendants possess are relevant, regardless of whether those assets ultimately turn out to be attachable in the United States. As explained in Wye Oak's Motion to Compel, because Wye Oak "does not yet know what property" the Iraqi Defendants have, discovery requests enabling Wye Oak in the first instance to identify the Iraqi Defendants' assets to determine if they are attachable under the FSIA or, if located abroad, under the relevant nation's laws, are relevant. *NML Cap.*, 573 U.S. at 144.

Even if that were not so, Wye Oak's Requests *are* aimed at potentially attachable assets. Weigel Decl., Ex. A. Wye Oak's Requests seek information about (1) the Iraqi Defendants' U.S. dollars in the U.S., which are attachable under Section 1610(a)(2) because the amounts to be paid under the BSA were undisputedly to be paid in U.S. dollars generated by Iraqi oil sales (Beadle Decl. ¶ 23); (2) commercial assets for which the Iraqi Defendants may have waived immunity under Section 1610(a)(1); and (3) "worldwide assets generally," which may be "subject to

execution" under a foreign state's laws. *NML Cap.*, 573 U.S. at 144-45. The Iraqi Defendant's argument otherwise assumes facts not yet tested by discovery and relies on a cramped reading of the FSIA's execution immunity in general and Section 1610(a)(2) in particular, and therefore should be rejected.

**A. The Requests Are Relevant Regardless of Whether They Reveal Attachable Assets**

The Iraqi Defendants suggest (at 11-13) that discovery requests are only relevant if targeted at a demonstrably attachable asset. But that argument conflates two distinct types of post-judgment discovery requests. The first type, like the Requests here, come when the judgment creditor "does not yet know what property" the defendant has and seek to uncover that information. *NML Cap.*, 573 U.S. at 144; *see, e.g.*, *Stileks*, 2023 WL 2610501, at *4-8 (analyzing such requests). The second type of requests identify particular assets and seek more information about those particular assets with the aim of uncovering information relevant to whether they are attachable. *See, e.g.*, *Stern v. Islamic Republic of Iran*, 73 F. Supp. 3d 46, 49 (D.D.C. 2014) (seeking discovery regarding domain names); *In re Ohntrup*, 628 F. App'x 809, 810-11 (3d Cir. 2015) (analyzing discovery requests regarding "munitions manufacturing components").

Wye Oak's current requests are aimed at discovering the Iraqi Defendants' assets. "[T]he purpose of discovery under Rule 69(a)(2) is to allow [Wye Oak] to identify assets from which the judgment may be satisfied and consequently, [Wye Oak] should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor." *Stileks*, 2023 WL 2610501, at *6. Wye Oak's Requests seek information that it needs to enforce its judgment, including documents relating to the source of any funds budgeted for or otherwise intended to pay Wye Oak (Request 1); documents sufficient to identify the Iraqi Defendants' bank accounts in the United States, which are likely to receive the proceeds of Iraqi oil sales used to pay the Iraqi Defendants' commercial creditors (Request 7); and documents relating to contracts between the

Iraqi Defendants and third parties located in the United States (Request 16). Moreover, Wye Oak's Requests regarding the Iraqi Defendants' bank accounts (Requests 6, 7, 31-33), are doubly relevant under Rule 69. As Wye Oak has explained (ECF No. 589 at 14), even information about accounts holding money that turns out not to be attachable could lead to the discovery of other accounts (in the U.S. or elsewhere) holding money that can be attached—and that is sufficient under Rule 69. *See* 12 C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 3014.

Wye Oak's carefully drafted Requests do not seek information concerning property that clearly would be statutorily immune. Wye Oak agrees with the Iraqi Defendants that discovery requests that "bizarrely … sought only 'information that could not lead to executable assets in the United States or abroad'" would be irrelevant. *NML Cap.*, 573 U.S. at 144. Wye Oak did not propound any such requests. Wye Oak's Requests do not seek any discovery concerning "diplomatic functions," property "not used for commercial activity in the United States," or property of the "Iraqi central bank held for its own account" in the United States such as those suggested by the Iraqi Defendants. *Compare* Weigel Decl. Ex. A. *with* ECF. 594 at 12.

Every case that the Iraqi Defendants rely on concerns a request for information about particular assets that are statutorily exempt and immune from execution. *Stern*, for example, held that discovery requests aimed at uncovering information about country-level domain names were irrelevant because they were not attachable assets in any context. 73 F. Supp. 3d at 51. And *Ohntrup*, affirmed the district court's ruling that discovery requests regarding "munitions manufacturing components" were irrelevant because those specific components were military assets that were categorically immune from attachment. 628 F. App'x at 811-12. Here, by contrast, because Wye Oak has not yet received discovery that would enable it to identify the Iraqi Defendants' assets this Court would not be able to make an informed decision as to whether any

specific assets can be attached. Neither this Court nor Wye Oak is obliged to accept the Iraqi Defendants' suggestion that no such assets exist.

**B. Wye Oak's Requests Are Aimed At Uncovering Potentially Attachable Assets**

Even if Rule 69 did require discovery requests to reveal attachable assts in order for those requests to be relevant (it does not), Wye Oak's Requests would pass muster because they are framed to identify potentially attachable property in the United States and elsewhere. The Iraqi Defendants take the position that Wye Oak's Requests do not seek relevant evidence because relevant evidence is limited only to assets that would be attachable under Section 1610(a)(2), and there are no such assets. The implication of the Iraqi Defendants' position is that there are no assets anywhere in the world that can be executed against in satisfaction of the judgment. That argument falls well short of meeting the Iraqi Defendants' burden, which they bear as the "the part[ies] objecting to discovery," to show Wye Oak's Requests "should not be permitted." *Stileks*, 2023 WL 2610501, at *2. First, even if Section 1610(a)(2) defined the entire universe of attachable assets, and it does not, Wye Oak believes that there are assets that are attachable under that test, and the Requests seek information about them. Second, Section 1610(a)(2) is not the only potential means of attaching assets in this case, and the Requests properly seek information about assets that may be attachable in other ways.

**1. The Requests Seek Information About Assets That Are Attachable Under Section 1610(a)(2)**

According to the Iraqi Defendants, only a defined pot of money that was used to pay Wye Oak in 2004 or 2005, could be subject to execution under Section 1610(a)(2). ECF No. 594 at 4, 14, 16. Of course, no such funds exist because Iraq made no payments to Wye Oak in the first place. The FSIA provides no support for the Iraqi Defendants' bizarre argument that their own failure to pay their obligations under the BSA means that they never have to pay Wye Oak at all,

and that this Court has been wasting its time for the past fourteen years because any enforcement is an impossibility. Wye Oak's Requests seek to uncover information about the Iraqi Defendants' commercial activity, which includes their "regular course of commercial conduct" and not just "a particular … transaction or act." *See* 28 U.S.C. § 1603(d). Where, as here, the Iraqi Defendants have a long (and undisputed) history of using their only material source of revenue—U.S. dollar proceeds from the sale of oil—to pay commercial contracts, those same proceeds are attachable under Section 1610(a)(2). Therefore, the Requests seeking information about the Iraqi Defendants' U.S.-dollar oil sales are relevant.

The Iraqi Defendants concede that 28 U.S.C. § 1610(a)(2) allows enforcement against property that is or was used for the commercial activity upon which the claim is based. ECF No. 594 at 4, 13. The Iraqi Defendants' argument that there are no assets that meet that requirement ignores the fact that it was always contemplated that Wye Oak would be paid through the sale of Iraqi oil in U.S. dollars that pass through the U.S. financial system. Beadle Decl. ¶ 23. Under the BSA, Wye Oak was to be paid in "United States Dollars in the form and manner as directed by" Wye Oak. *See* ECF No. 202-5, § 5(b). Thus, Iraq's U.S. dollars were intended to be used to fund its commercial obligations. Both then and now, the Iraqi Defendants had only one material source of U.S. dollars—oil sales. Weigel Decl. ¶ 10; Beadle Decl. ¶ 21. And both then and now, U.S. dollar oil sales proceeds are paid through the U.S. banking system and deposited in an account maintained by Iraq at the Federal Reserve Bank of New York. Weigel Decl. Ex. C. This method of payment was dictated by a United Nations Security Council Resolution enacted before the BSA was executed. *See* Weigel Decl. Ex. B (reopening Iraqi oil exports and establishing the Development Fund for Iraq); Beadle Decl. ¶ 22 (stating that the Fund deposited oil revenues into an account at the New York Federal Reserve Bank). In other words, the primary source of

payment for the Iraqi Defendants' commercial activities was and is U.S dollar denominated proceeds from the sale of Iraqi oil, which are processed through the U.S. financial system. This system has remained in continuous use since before the BSA was executed. And, to be clear, this is not simply some hypothetical generalized use of funds. It was always understood, and the Iraqi Defendants concede (ECF 594 at 16), that Wye Oak would be paid using "[un]earmarked"—*i.e.*, not designated for other, specific governmental purposes—proceeds of Iraqi oil sales in U.S. dollars. Beadle Decl. ¶ 23.

Because Iraqi oil sales in U.S. dollars were the agreed source of funds for payment, the generation of those funds is inextricably part of the "commercial activity" upon which the BSA was based. The Iraqi Defendants do not and cannot dispute that it was always intended that Wye Oak would be paid with the U.S. dollar proceeds of oil sales that passed through the U.S. banking system. Indeed, Iraq's budget for 2004 makes this plain, noting that over 93.4% of Iraq's revenue was expected to come from oil sales. Weigel Decl. ¶ 10. This singular role of oil sales in the Iraqi Defendants' funding for commercial activities remains true today. *Id.* ¶¶ 12-14. Iraq—which markets all Iraqi oil through the State Organization for the Marketing of Oil, itself an arm of the Iraqi Ministry of Oil—reportedly sold $115 billion in oil in 2022 and nearly $70 billion as of September 2023. Weigel Decl. ¶¶ 11-13. Because Iraq has had no other material sources of revenue since 2004, the Iraqi Defendants' "regular course of commercial conduct," 28 U.S.C. § 1603(d), for payment of commercial activities contracted for by the Iraqi Defendants is to tap oil sale proceeds. Beadle Decl. ¶ 21.

Put simply, Wye Oak's Requests, which seek information concerning Iraqi oil sales, are calculated to lead to the discovery of relevant evidence. To find otherwise would absolve foreign

sovereign debtors of their debts to U.S. commercial contractors like Wye Oak—which is not what the FSIA was enacted to do.[5]

**2. The Requests Seek Discovery Into Assets That May Be Otherwise Attachable**

Nor are the Iraqi Defendants correct that discovery can be limited to assets attachable pursuant to the "commercial activity" exception in Section 1610(a)(2). Wye Oak is also entitled to discovery of U.S. assets that may be attachable under other immunity exceptions and assets located abroad.

*First*, the fact that this Court found jurisdiction under Section 1605(a)(2) does not limit execution immunity to assets covered under Section 1610(a)(2). "[T]he FSIA's provisions governing jurisdictional immunity, on the one hand, and execution immunity, on the other, operate independently." *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 288 (2d Cir. 2011). Wye Oak is entitled to discovery of assets that may fall under other available exceptions to immunity, including the waiver of immunity exception in Section 1610(a)(1). The Iraqi Defendants (at 18) complain that the existence of any such assets is "speculative" at this time. But that is precisely why discovery is needed. After all, "[t]he purpose of discovery under Rule 69(a)(2) is to allow [Wye Oak] to identify assets from which the judgment may be satisfied"—not those with which it definitely will be satisfied. *Stileks*, 2023 WL 2610501, at *6.

*Second*, the FSIA does not "restrict[] Wye Oak to satisfying its judgment … from property of the Defendants … in the United States." *Contra* ECF No. 593 at 2. The FSIA does not speak

[5] The legislative history of the FSIA makes it clear that it was intended to help rather than hinder judgment debtors' collection efforts and what the Iraqi Defendants call the "limitation in § 1610(a)(2)" (ECF No. 594 at 14) was intended to assist judgment creditors when recalcitrant judgment debtors attempt to avoid the court process. *See* H.R. Rep. 94-1487, 94th Cong. 2nd Sess. 1976 at *28 (as to 1610(a)(2), indicating that "[t]he language 'is or was used' in paragraph (2) contemplates a situation where property may be transferred from the commercial activity which is the subject of the suit in an effort to avoid the process of the court.").

to extraterritorial assets at all. *See* 28 U.S.C. § 1609 (immunizing property "in the United States"); *NML Cap.*, 573 U.S. at 144. That does not mean that Wye Oak can only satisfy the judgment by attaching domestic assets. To the contrary, foreign countries allow parties to attach a judgment debtor's assets to satisfy a U.S. judgment as a matter of comity, even when an appeal is pending. *See, e.g.*, *Moss v. Martin*, [2022] EWHC (Comm) 3258 [12]-[13] (Eng.), available at https://www.bailii.org/ew/cases/EWHC/Comm/2022/3258.pdf.[6]

Therefore, contrary to the Iraqi Defendants' position (at 20), requests seeking information about extraterritorial assets are relevant under Rule 69 because they might uncover assets that are attachable outside of the United States, and thus are "in aid of the judgment or execution." *Stileks*, 2023 WL 2610501, at *2. The Iraqi Defendants assert that, unless Wye Oak identifies a country where they have assets that can be attached pending appeal, its Requests are irrelevant. But requiring Wye Oak to expend resources scouring the world for attachable assets would rob Wye Oak of the advantages of the broad post-judgment discovery to which it is entitled. *NML Cap.*, 573 U.S. at 144. The entire point of the post-judgment discovery is to allow judgement creditors to uncover the information necessary to enforce their judgments.

## III. Wye Oak's Motion to Compel Is Ripe And Necessary

The Court should grant Wye Oak's cross-motion to compel the Iraqi Defendants to produce responsive documents without further delay. Contrary to the Iraqi Defendants' assertion, Wye Oak did not bring its motion to obtain a sur-reply, or to deprive them of whatever future, additional objections to the Requests that they attempted, by footnote, to reserve. ECF No. 594 at 21. Instead,

[6] Although it has not yet come into force, the Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, July 2, 2019 ("Hague Recognition Convention"), which the United States signed on March 2, 2022, reflects an international consensus on enforcement of foreign judgments. It allows for the enforcement of judgments that are subject to appeal. *See* Hague Recognition Convention at Art. 4. And judgments against sovereigns are included within its scope. *See id*. art. 2(4).

Wye Oak brought its motion to prevent them from delaying discovery through interminable, seriatim objections to the same Requests.

As Wye Oak has explained, the Iraqi Defendants are not "entitled to first receive this Court's decision on the threshold issues" before lodging any "specific objections." ECF No. 594 at 22. Federal Rule of Civil Procedure 34(b) establishes when all objections and responses must be served—and that time has passed. The Iraqi Defendants' failure to provide specific "reasons" objecting to the Requests within the time allowed (Weigel Decl. ¶¶ 6), *DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (Lamberth, J.), means that (1) only their so-called "threshold" objections are properly before the Court, and (2) because the time to respond to the Requests has otherwise elapsed, Wye Oak's Motion to Compel is ripe for the Court's consideration, *see Nasreen v. Capitol Petroleum Grp., LLC*, 340 F.R.D. 489, 493 (D.D.C. 2022) ("[I]f a party does not respond to propounded discovery within the time allotted, the propounding party may move the court for an order compelling a response.").

It is well established that "untimely objections to discovery requests are waived." *Caudle v. Dist. of Columbia*, 263 F.R.D. 29, 32-33 (D.D.C. 2009) (finding privilege objections to discovery requests waived when not served "until several weeks after its already extended deadline for issuing responses"). Because only the Iraqi Defendants' "threshold" objections were timely raised, no basis exists for them to later raise their "specific" objections. As a result, the Court may deem their "untimely" specific objections forfeited and rule on the Motion to Compel their responses to the Requests as propounded. *See Nasreen*, 340 F.R.D. at 492-93.

The single case that the Iraqi Defendants cite in support of their attempted bifurcation does not support their position. ECF No. 594 at 22 (citing *Huerta v. Bioscrip Pharmacy Servs., Inc.*, 2010 WL 11523902, at *1 (D.N.M. Mar. 15, 2010)). In *Huerta*, the defendant filed a "blanket"

motion for a protective order objecting to "all of the discovery" sought by the plaintiff's "written discovery requests" on the grounds that her claims had no merit, such that the "burden and expense" of responding to the requests was unnecessary. 2010 WL 11523902, at *1. The court found this maneuver "improper" and held that the defendant "must either respond to the interrogatories served or, alternatively, state objections." *Id.* Accordingly, the court refused to adjudicate the so-called "blanket" objection and denied the defendant's request for a protective order. *Id.* at *2. In an apparent exercise of discretion, the court then allowed the defendant 20 days to respond to the requests or lodge "cognizable objections." *Id.*[7] Far from blessing the two-step maneuver the Iraqi Defendants now attempt, *Huerta* specifically rejected the judgment debtor's attempt to adjudicate only global objections first and held that they "must either provide specific answers or raise objections." *Id.*

Nor may the Iraqi Defendants preserve their purported "specific" objections with boilerplate reservations of nonspecific future objections to be lodged at a later date on the grounds that they "expressly have not waived" those objections. *See* ECF No. 594 at 21 & n.12 (now requesting "20 days to submit specific objections" "in the event the instant motion [for a protective order] is denied"). They *have* forfeited their objections by failing to raise them within the time specified by the Rules. *See Caudle*, 263 F.R.D. at 32-33; *see also Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 187 (N.D. Iowa 2017) ("Indeed, the idea that such general or 'boilerplate' objections preserve any objections is an 'urban legend.'"); *cf. Heller v. City of Dallas*,

[7] The Iraqi Defendants have not asked the Court to excuse the forfeiture of their purported specific objections, and the Court should not do so. A court may, in its discretion, forgive forfeiture of a discovery objection if the responding party demonstrates "good cause," or if no party will be prejudiced and the "delinquent party has not demonstrated a pattern of misconduct." *Caudle*, 263 F.R.D. at 33. None of these factors helps the Iraqi Defendants, given their refusal to respond to any discovery requests, their dilatory conduct prejudicing Wye Oak's ability to enforce the judgment, and their admitted intention never to satisfy the judgment.

303 F.R.D. 466, 487 (N.D. Tex. 2014) (holding that responding to a request "subject to" or "without waiving objections is not consistent with the federal rules" and only preserves privilege and work product objections). It is "well established that all grounds for objections to discovery must be stated with specificity in the initial response or the objection is waived." *Loften v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (cleaned up). Merely hinting in a footnote that they might wish to raise objections at a later date does not excuse their failure to raise those objections within the time period specified by the Rules or somehow entitle the Iraqi Defendants to an unauthorized further extension of their time to respond. Notably, at their request, Wye Oak already gave the Iraqi Defendants a two-week extension of their deadline to respond—an extension that passed without Wye Oak receiving any specific objections. Weigel Decl. ¶ 5. The Federal Rules of Civil Procedure require timely objections made with "sufficient specificity" for the "court to evaluate their merits," such that "'boilerplate' general objections to [Wye Oak's] discovery requests, without more, fail to satisfy [the Iraqi Defendants'] burdens under the Federal Rules of Civil Procedure to justify [their] objections to discovery." *DL*, 251 F.R.D. at 43.

Even if the Iraqi Defendants had not originally forfeited any purported "specific" objections to the Requests by failing to timely object, they forfeited them by failing to raise them in response to Wye Oak's Motion to Compel. When a motion to compel is filed, "the party objecting to discovery 'bears the burden of "show[ing] why discovery should not be permitted"' and must 'includ[e] the reasons' for any objection to a document request." *Stileks*, 2023 WL 2610501, at *2 (brackets in original). But even with this second opportunity to let Wye Oak and the Court know what their "specific" objections may be, the Iraqi Defendants again resorted to nothing more than a sentence of conclusory, boilerplate references to future "specific objections." ECF No. 586 at 1 n.1; ECF No. 594 at 21 & n.12. In short, they twice forfeited their objections.

Wye Oak's Motion to Compel is ripe for decision and should be granted. There is no merit to the Iraqi Defendants' suggestion that Wye Oak's proposed order supports their position that Wye Oak's Motion to Compel is premature. ECF No. 594 at 21. The proposed order's breadth is a result of the Iraqi Defendants' failure to lodge specific objections; by their own description, the present dispute concerns only objections suggesting that the Requests should be ignored "in toto." *Id.* If the Court disagrees with their argument, then the result is clear: the Iraqi Defendants should be required to produce documents in response to the Requests in toto. *See Stileks*, 2023 WL 2610501, at *8 (granting motion to compel); *DL*, 251 F.R.D. at 50 (granting motion to compel in part). The only unresolved issue would be the time that this Court would permit the Iraqi Defendants to respond. Although Wye Oak had left that to the Court's discretion, the Iraqi Defendants have since suggested that 20 days is an appropriate time to respond following the Court's resolution of the present dispute, *see* ECF No. 594 at 21 n.12, which is consistent with the time that some courts—including this one—have allowed when ordering responses to discovery, *see Alexander v. F.B.I.*, 194 F.R.D. 299, 305 (D.D.C. 2000) (Lamberth, J.) (ordering response within 20 days); *Huerta*, 2010 WL 11523902, at *2 (same). Wye Oak would not object to a similar deadline for responses here.

**IV. Wye Oak Is Entitled To Costs, Including Attorneys' Fees**

Despite their meritless attempt to stall Wye Oak's enforcement of its judgment, the Iraqi Defendants ask this Court to deny Wye Oak its costs because they claim their motion was "substantially justified" and that "other circumstances" make such an award unjust. ECF No. 594 at 23. As explained in Wye Oak's Motion to Compel, ECF No. 589 at 17, awarding costs and fees to Wye Oak is "mandatory" under Federal Rule of Civil Procedure 37 if this Court determines that Wye Oak is entitled to the discovery sought in the Requests, and none "of the specified bases for

refusing to make such an award is found to exist." *See Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005) (Lamberth, J.).

The Iraqi Defendants fail to show that (i) Wye Oak is not entitled to the discovery sought in its Requests, or (ii) that any exception applies. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Their failure to respond to the Requests is not "substantially justified" because "controlling precedent" interpreting the relevant Rules of Civil Procedure squarely forecloses their positions, and as a result "reasonable people" could not differ about that conclusion. *Cobell*, 226 F.R.D. at 91. The only other exception they claim applies is "other circumstances" that render a costs award "unjust," which they suggest is the case because Wye Oak's Motion to Compel is merely a procedural maneuver to obtain a sur-reply on their motion for a protective order. Wye Oak's Motion to Compel is ripe and procedurally proper. *Supra* []. It is not "unjust" to hold the Iraqi Defendants to the Rules, particularly where the entire purpose of the awarding costs and fees is to enforce compliance with them. *See DL v. Dist. of Columbia*, 256 F.R.D. 239, 241 (D.D.C. 2009) (Lamberth, J.) (awarding costs and fees where judgment debtor failed to comply with discovery rules); *Bonds v. Dist. of Columbia*, 93 F.3d 801, 807-08 (D.C. Cir. 1996) (stating that whether a discovery sanction is "just" is matter of district court's discretion as to whether the sanction is proportional to the violation).

## CONCLUSION

Wye Oak respectfully requests that the Court grant its Motion to Compel the Iraqi Defendants to respond to its Requests for Production within 20 days from the date of its decision and award Wye Oak attorneys' fees and associated costs.

Dated: December 1, 2023

Respectfully submitted,

/s/ *Matthew S. Rozen*
Matthew S. Rozen, D.C. Bar #1023209
mrozen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Robert Weigel, N.Y. Bar #1809284
rweigel@gibsondunn.com
Jason Myatt, N.Y. Bar #4450599
jmyatt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

C. Allen Foster (D.C. Bar No. 411662)
Eric C. Rowe (D.C. Bar No. 466182)
Whiteford, Taylor & Preston L.L.P.
1800 M St., NW, Suite 450N
Washington, DC 20036
cafoster@wtplaw.com
erowe@wtplaw.com
Telephone: (202) 659-6800
Facsimile: (202) 331-0573

*Attorneys for Wye Oak Technology, Inc.*